```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__6/1/2020__
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————————
                                                    :
MELINA N. JACOBS, On Behalf of Herself              :
and All Others Similarly Situated,                  :            16 Civ. 01082 (PGG) (RWL)
                                                    :
                            Plaintiff,              :
                                                    :
                                                    :       **REPORT AND RECOMMENDATION**
            - against -                             :        **TO HON. PAUL G. GARDEPHE:**
                                                    :        <u>**CLASS CERTIFICATION**</u>
VERIZON COMMUNICATIONS INC.;                        :
VERIZON INVESTMENT MANAGEMENT                       :
CORP.; THE VERIZON EMPLOYEE                         :
BENEFITS COMMITTEE; MARC C. REED;                   :
MARTHA DELEHANTY; ANDREW H.                         :
NEBENS; CONNIA NELSON; SHANE                        :
SANDERS; ROBERT J. BARISH; DONNA                    :
C. CHIFFRILLER,                                     :
                                                    :
                            Defendants.             :
———————————————————————————————:

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

Plaintiff Melina N. Jacobs ("Plaintiff" or "Jacobs") participated in a retirement savings plan called the Verizon Savings Plan for Management Employees (the "Plan"). She brings this putative class action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), claiming that the Defendants breached fiduciary duties they owed to the Plan by failing to properly monitor and take action with respect to a poorly performing investment fund called the Global Opportunity Fund. By the instant motion, Plaintiff seeks certification of a class and appointment of class counsel pursuant to Fed. R. Civ. P. 23. For the reasons set forth below, I recommend that Plaintiff's motion for class certification and appointment of counsel be GRANTED.

**Factual Background**[1]

## I.     The Plan

The Plan is an individual account defined contribution plan.  Participants in the Plan control the investments in their individual accounts by choosing among a variety of investment options.  (2007 Investment Guide, attached as Ex. J to Bloom Decl., at 2.[2]) Those options include Asset Class Investment Options and Target Date Funds ("TDFs").[3] (*Id.*)  Examples of Asset Class Investment Options are the "Conservative Fixed Income Fund" and the "U.S. Large Company Index Fund."  (*Id.*)  The fund at issue here is called the Global Opportunity Fund.

TDFs are professionally managed funds consisting of a diversified mix of the Asset Class Investment Options.  (*Id.* at 3-5.)  The asset mix changes over time, with conservative investments increasing in percentage of the mix as the target date approaches.  (*Id.* at 3-4.)  An example of a TDF is the Verizon 2040 Target Date Fund, which anticipates the participant's retiring in or around 2040.  (*Id.* at 2-3.)  All of the Verizon TDFs included the Global Opportunity Fund as one of the investment assets in their

---

[1] The facts are derived from the Complaint as well as the declarations and exhibits submitted by the parties as well as admissions in Defendants' Answer.  *See Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (a plaintiff must satisfy the requirements of Fed. R. Civ. P. 23 with "evidentiary proof"); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (Rule 23 "does not set forth a mere pleading standard").  For purposes of assessing threshold issues such as standing, however, all material allegations of the complaint are accepted as true, and reasonable inferences drawn in favor of the complaining party.  *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006) (citing *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

[2] "Bloom Decl." or "Bloom Declaration" refers to the Declaration of James A. Bloom dated Sept. 19, 2019 (Dkt. 144).

[3] Prior to January 1, 2007, the Plan included mutual fund options as a third category of investment.  (Bloom Decl. Ex. J at 2.)

portfolios.  (*Id.* at 5.)  The percentage of each TDF devoted to the Global Opportunity Fund ranged from six percent to fifteen percent, depending on the investment objective of the particular fund.  (*Id.*)  In the 2040 TDF, for example, the Global Opportunity Fund comprised fifteen percent of the portfolio as of 2007.  (*Id.*)

## II.   Defendants' Management of the Plan

The Plan's sponsor is Defendant Verizon Communications Inc. ("Verizon"). (Answer, Dkt. 75, ¶ 3(a).)  The Plan's administrator and named fiduciary is Defendant Verizon Employee Benefits Committee ("VEBC").  (2009 Plan Document, attached as Ex. A to Bloom Decl. §§ 10.01, 10.02(a), 10.07.)  Among its other responsibilities, the VEBC selects and removes the Plan's investment options.  (*Id.* § 6.01(a)(1)-(2).)  The individual Defendants are or were members of the VEBC.  (Complaint ("Compl."), Dkt. 1, ¶ 1.) Defendant Verizon Investment Management Corp. ("VIMCO") manages the Plan's investments.  Among other functions, VIMCO appoints investment managers for each of the Plan's investment funds and advises the VEBC about what investment options to include, modify, or remove.  (Master Trust Agreement, attached as Ex. F to Bloom Decl., § 2.02(f); VIMCO Disclosure Brochure, attached as Ex. G to Bloom Decl., at 9-10.)

## III.   The Global Opportunity Fund

VIMCO created the Global Opportunity Fund in December 2006.  (Deposition of Chris Mercer ("Mercer Dep.), attached as Ex. I to Bloom Decl., at 20-21.)  VIMCO added the Global Opportunity Fund as an investment option in the Plan in early January 2007. (VIMCO 30(b)(6) Dep., attached as Ex. H to Bloom Decl., at 61-62.)   The Global Opportunity Fund consisted of investments in multiple hedge funds, thus creating a "fund of funds."  (*Id.* at 61-62.)  The Global Opportunity Fund's investment guide described it as employing the use of leverage and derivatives, being highly volatile, but seeking to have

a positive return over time, even when markets are declining in value.  (Bloom Decl. Ex. J at 27-28.)  The guide warned that the fund's performance "may exceed or substantially under perform [sic] the [benchmark] and may lose money."  (*Id.* at 28.)  The guide also disclosed its fees, a cost of almost two percent of the amount invested.  (*Id.*)  Participants were limited to having the Global Opportunity Fund as no more than 15 percent of their total account balance in the Plan.  (*Id.* at 27.)

The Global Opportunity Fund did not perform well.  The Fund underperformed its benchmark every year except 2010, and cumulatively by 78 percent.  (Declaration of Cynthia Jones ("Jones Decl."), attached as Ex. R to Bloom Decl., ¶¶ 24-26; VIMCO 30(b)(6) Dep. at 79, 82-84.)  The Fund generated only a 1.4 percent cumulative return as of June 30, 2016.  (Bloom Decl. Ex. U at VERIZON0319825.)  That return put it well within the bottom ten percent of a recognized database of other hedge funds of funds.  (*See* Bloom Decl. Ex. T at 5.)  And, in March 2014, an outside consultant report noted that the Global Opportunity Fund ranked in the fourth quartile of the Plan's investment options.  (Bloom Decl. Ex. X at 18.)  Ultimately, in August 2016, Defendants decided to remove the Global Opportunity Fund from the Plan, and it was removed and liquidated during 2017.[4]

---

[4] The parties hotly dispute the extent to which Defendants monitored the Global Opportunity Fund and took active measures to address its performance.  That, of course, is the primary merits issue.  Plaintiff claims an absence of records and focuses on the Global Opportunity Fund's relative performance (*see* Plaintiff's Memorandum of Law in Support of Motion for Class Certification ("Pl. Mem."), Dkt. 143, at 7-10), while Defendants have submitted documents and testimony indicating that Defendants had multiple levels of monitoring in place and took active measures to address the Global Opportunity Fund (*see* Defendants' Memorandum of Law in Opposition to Motion for Class Certification ("Def. Mem."), Dkt. 150, at 5, 8-10 and 5-6 nn.20-29, 9 nn.52-56, 10 n.64.)  The arguments and evidence related to this dispute may well be relevant to a summary judgment motion on the merits, but the Court need not resolve the dispute to decide the instant certification motion.

(Verizon 30(b)(6) Dep. at 50-51; Mercer Dep. at 20; Taylor Decl. Ex. AA at VERIZON0048479.[5])

## IV.    Plaintiff

Jacobs began working at Verizon in 2014 and participated in the Plan.  (Taylor Decl. Ex. A at 26-27.)  Among other funds, she invested in the Verizon 2040 TDF, which included the Global Opportunity Fund among its holdings; she did not invest directly in the Global Opportunity Fund.  (*See id.* at 35-37; *see also* Taylor Decl. Exs. B, C.)  She worked as a Senior Executive Assistant and left the company in 2018.  (Taylor Decl. Ex. A at 26, 65.)

## V.    The Proposed Class

Plaintiff requests certification of the following class:

> All participants or beneficiaries of the Verizon Savings Plan for Management Employees (the "Plan"), excluding the Defendants, other VIMCO or Verizon employees with responsibility for the Plan's investment or administrative functions, and members of the Verizon Board of Directors, who had any portion of their accounts in the Plan invested directly in the Global Opportunity Fund or indirectly in the Global Opportunity Fund through investment in any of the Verizon Target Date Funds.

*See* Compl. ¶ 110(a).[6]  The proposed class does not identify a class time period.  In moving for certification, however, Plaintiff proposes a period as determined by her experts.  Plaintiff's proposed period begins on April 1, 2010 (start of the second quarter of 2010), and ends in August 2016.  The start date was identified by "Plaintiff's experts .

---

[5] "Taylor Decl." or "Taylor Declaration" refers to the Declaration of Ian C. Taylor dated October 21, 2019 (Dkt. 151).

[6] Plaintiff has modified the proposed class definition as set forth in the Complaint to correct typographical errors, "otherwise for clarity," and to remove references to other defined contribution plans that did not include the Global Opportunity Fund or TDFs.  (Pl. Mem. at 10 n.5.)

. . as the date that Defendants' failure to monitor and remove the Global Opportunity Fund matured into a fiduciary breach." (Pl. Mem. at 10 n.5.)  Plaintiff's experts selected August 2016 as the end of the period because that is when Defendants decided to remove the Global Opportunity Fund as an investment option.  (*Id.*)

## Procedural Background

Plaintiff filed her Complaint on February 11, 2016, alleging three causes of action. (Dkt. 1.)  The first claim, pursuant to ERISA §§ 409(a) and 502(a)(2), (3), alleged breach of fiduciary duty to act prudently with respect to the TDFs.[7]  The second claim, pursuant to ERISA §§ 409(a) and 502(a)(2), (3), alleged breach of fiduciary duty to prudently monitor and take corrective action with respect to the Global Opportunity Fund.  The third claim, pursuant to ERISA §§ 409(a) and 404(a)(1), alleged breach of ERISA fiduciary duty to make proper disclosures regarding compensation.

On September 28, 2017, the Honorable Paul G. Gardephe, U.S.D.J., issued an order dismissing the first and third claims for relief but declining to dismiss the second

---

[7] ERISA § 409(a) provides: "Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."  29 U.S.C. § 1109(a).

ERISA § 502(a)(2), (3) provide, in relevant part:
(a) PERSONS EMPOWERED TO BRING A CIVIL ACTION  A civil action may be brought—
    (2) . . . by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;
    (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]  29 U.S.C. § 1132(a)(2), (3).

claim ("Dismissal Order").  (Dkt. 70.)  Judge Gardephe dismissed the first claim for several reasons, including that an ERISA retirement plan is not imprudent merely because it incorporates "risky" investments; underperformance of the Verizon TDFs as compared to other funds is not proof of imprudence or breach of fiduciary duty; and the claim did not allege that any of the Defendants acted out of self-interest.  (Dismissal Order at 10-13.) Judge Gardephe dismissed the third claim because, among other reasons, Defendants' disclosures regarding administrative expenses were sufficient, and Plaintiff did not show that she relied on Defendants' allegedly deficient filings.  (*Id.* at 24, 26, 28.)

In contrast, Judge Gardephe concluded that the second claim was sufficient to withstand the motion to dismiss because of the following allegations: the Global Opportunity Fund "wildly underperformed its benchmark" over a ten-year period; the Fund "barely surpassed" the return on a far less risky money market investment; the Fund featured the highest expense ratio of any other investment option available to Verizon plan participants; and Defendants kept the Global Opportunity Fund as a core asset in most Verizon plan investment options.[8]  (*Id.* at 18.)

As a result of the Dismissal Order, the second claim for relief – specifically focused on Defendants' allegedly imprudent monitoring and failure to take corrective action with respect to the Global Opportunity Fund option, based on its poor performance and high fees – is the only claim that remains.

---

[8] Like the dismissed first claim, the second claim does not allege that any Defendant acted out of self-interest.

### The Parties' Submissions

In support of her motion for class certification, Plaintiff filed a Memorandum of Law ("Pl. Mem.") (Dkt 143); a Reply Memorandum of Law ("Pl. Reply Mem.") (Dkt. 148); the Bloom Declaration, mentioned previously, with Exhibits A through X; and a second declaration from Mr. Bloom (Dkt. 149) with an Exhibit A.  Plaintiff also has submitted the declaration of proffered expert Cynthia L. Jones, CFA, attached as Exhibit R to the Bloom Declaration (Dkt. 144-18), and a declaration from an attorney at each of the three firms representing Plaintiff and seeking appointment as class co-counsel.  *See* Declaration of Todd M. Schneider ("Schneider Decl.") (Dkt. 145), Declaration of John F. Edgar ("Edgar Decl.") (Dkt. 146), and Declaration of Daniella Quitt ("Quitt Decl.") (Dkt. 147).   In opposition, Defendants filed a Memorandum in Opposition ("Def. Mem.") (Dkt. 150) and the Taylor Declaration, mentioned previously, with Exhibits A through SS.  The parties also have submitted Stipulations of Fact primarily addressing terminology and identifying certain documentary materials.  (Dkt. 144-4.)  The Court held argument telephonically on May 21, 2020.

### Class Action Legal Requirements

To obtain class certification, a movant must satisfy several requirements.  To begin, a class will be certified "only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  These four elements are known in brief as numerosity, commonality, typicality, and adequacy of representation.  *Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco Managed*

*Care, L.L.C.*, 504 F.3d 229, 244 (2d Cir. 2007) [hereinafter *Central States II*].  In addition, there is an implied requirement of "ascertainability," which, in the Second Circuit, "requires only that a class be defined using objective criteria that establish a membership with definite boundaries."  *In re Petrobras Securities*, 862 F.3d 250, 264 (2d Cir. 2017), *cert. denied*, 140 S. Ct. 338 (2019).

If the requirements of Rule 23(a) are met, "the district court must also find that the action can be maintained under Rule 23(b)(1), (2), or (3)."  *In re Literary Works in Electronic Databases Copyright Litigation*, 654 F.3d 242, 249 (2d Cir. 2011).  Plaintiff need establish only one basis for certification under Rule 23(b).  *See Waggoner v. Barclays PLC*, 875 F.3d 79, 93 (2d Cir. 2017).  Here, Plaintiff seeks certification of the class pursuant to Rule 23(b)(1), which "applies . . . where individual adjudications 'as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.'"  *Wal-Mart*, 564 U.S. at 361 n.11 (quoting Rule 23(b)(1)(B)).

**Discussion**

Defendants do not dispute that the class is sufficiently numerous, that there are common issues of fact and law, or that Plaintiff's claim is typical of the putative class members.  Focusing on other class action requisites, Defendants contend that the class is not ascertainable because there is no definite time period; that Plaintiff is not an adequate class representative because she is insufficiently versed in basic facts of the case and is overly reliant on class counsel; and that the requirements of Rule 23(b)(1) are not satisfied because determining Plaintiff's claim would not impair or impede the interests of other claimants.  In addition, Defendants raise a threshold issue challenging Plaintiff's standing to bring the action, arguing that she has not sustained any injury in

fact.[9]

The Court addresses the standing issue first, followed by the class certification requirements.  As set forth below, the Court concludes that Plaintiff has standing; Plaintiff has met the requirements for class certification; and the law firms representing Plaintiff should be appointed co-class counsel.  To be clear, this opinion in no way represents an endorsement of the merits of Plaintiff's claims.  Rather, it addresses only whether Plaintiff's motion should be granted based on the rules and principles governing class certification.

## I.      Plaintiff Has Standing to Bring the Action

Defendants contend that Plaintiff lacks standing to bring this action because she never owned the Global Opportunity Fund in her Plan account and therefore incurred no injury in fact.  Plaintiff responds that she has standing for two reasons.  First, she was injured by virtue of investing in the Verizon 2040 TDF, which included the Global Opportunity Fund as a component.  Second, the Plan itself suffered a loss due to the Global Opportunity Fund, and Plaintiff is authorized to bring an action in her representative capacity as a participant in the Plan.  The Court finds that Plaintiff has standing based on her interest in the Global Opportunity Fund as a constituent of her investment in the Verizon 2040 TDF.[10]

---

[9] Defendants had initially raised a second threshold issue concerning the applicable statute of limitations. (*See* Def. Mem. at 2.)  At oral argument, Defendants dropped this issue in light of the United States Supreme Court's recent decision in *Intel Corporation Investment Policy Committee v. Sulyma*, 140 S. Ct. 768 (2020).  In *Intel*, the Court held that the "actual knowledge" requirement triggering ERISA's three-year statute of limitations period is not met merely based on a participant's receipt of information disclosures concerning the plan at issue.  *Id.* at 777.  Accordingly, this Court will not further address the issue.

[10] Defendants also argue that Plaintiff lacks standing to assert claims on behalf of a now-

Standing in an ERISA action has both constitutional and statutory requirements. *Kendall v. Employees Retirement Plan of Avon* Products, 561 F.3d 112, 118 (2d Cir. 2009) ("A plan participant suing under ERISA must establish both statutory standing and constitutional standing").  Article III of the United States Constitution requires a plaintiff seeking relief to demonstrate that he or she has standing so as to ensure that federal courts resolve only "'those disputes in which the parties have a concrete stake.'" *Bhatia v. Piedrahita*, 756 F.3d 211, 218 (2d Cir. 2014) (quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 191 (2000)).  In order to establish the "irreducible constitutional minimum of standing," a plaintiff must show that he or she has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, ___ U.S. ___, ___, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

Where, as here, the suit is a class action, the question of standing remains, "for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lewis v. Casey*, 518

---

defunct plan called the Verizon Wireless Savings and Retirement Plan (the "Wireless Plan").  (Def. Mem. at 15-17.)  This issue is moot.  The Wireless Plan merged into the Plan in April 2014.  (*See, e.g.*, Taylor Decl. Ex. DD at 1; *see also* Def. Mem. at 8.)  The Wireless Plan is not at issue in this case, and Plaintiff concedes that she has not brought claims on behalf of the Wireless Plan, seeks no damages for the Wireless Plan, and has not sought to certify a class including participants in the Wireless Plan.  (Pl. Reply Mem. at 4.)  As Plaintiff aptly notes, however, once participants from the Wireless Plan became participants in the Plan at issue here, Defendants owed those participants the same fiduciary duties they owed other participants of the Plan.  (*Id.*)

U.S. 343, 357 (1996) (internal quotation marks and citation omitted); *see also Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 199 (2d Cir. 2005) [hereinafter *Central States I*] (noting in an ERISA lawsuit that "class representatives must have standing").  But, as in other class actions, "only one of the named Plaintiffs" in an ERISA class action "is required to establish standing in order to seek relief on behalf of the entire class."  *Central States II*, 504 F.3d at 241; *see also Kendall*, 561 F.3d at 118 ("In a class action, once standing is established for a named plaintiff, standing is established for the entire class") (citing *Central States II*, 504 F.3d at 241).

As a statutory matter, ERISA § 502(a)(2) confers standing on "a participant, beneficiary or fiduciary" of a retirement plan to seek relief under ERISA § 409 for breach of fiduciary duty.  The Second Circuit has explained:

> Claims pursuant to § 409(a) may not be made for individual relief, but instead are brought in a representative capacity on behalf of the plan.  Standing is conferred upon certain classes of plaintiffs whose common interest is in the financial integrity of the plan to seek remedies against the misuse of plan assets.  The basic standing issue is whether the plaintiff is within the zone of interests ERISA was intended to protect.

*L.I. Head Start Child Development Services, Inc. v. Economic Opportunity Commission of Nassau County, Inc.*, 710 F.3d 57, 65 (2d Cir. 2013) (internal quotation marks, alterations, and citations omitted).

Here, Plaintiff unquestionably has statutory standing under ERISA.  She is a beneficiary of the Plan and well within "the zone of interests ERISA was intended to protect."  The parties dispute, however, whether Plaintiff has constitutional standing. Defendants say she does not have standing because she never invested directly in the Global Opportunity Fund.  Rather, she invested in the Verizon 2040 TDF.  Although the

TDF included the Global Opportunity Fund as a component, the Court already has dismissed Plaintiff's first cause of action, finding the allegations insufficient to state a claim for breach of fiduciary duty of prudence with respect to the TDF.  There being no breach with respect to the TDF, argue Defendants, there can be no claim that including the Global Opportunity Fund in the TDF was imprudent and therefore no claim of injury.  (Def. Mem. at 12-14.)

Defendants' argument mistakenly equates no claim with no injury.  The Global Opportunity Fund comprised some portion of Plaintiff's Verizon 2040 TDF funds.  Even if Plaintiff has no cognizable claim of breach with respect to the monitoring or choices made by Defendants for the TDF itself, the value of her financial stake in the TDF necessarily was dependent on and directly impacted by the Global Opportunity Fund's performance. Similarly, the allegedly excessive administrative fees for the Global Opportunity Fund necessarily diminished the return of the TDFs of which it was a component.  As Plaintiff claims, the poor performance and excessive fees of the Global Opportunity Fund caused diminished investment returns not just in the Global Opportunity Fund itself, but also in the Verizon TDFs.  (Compl. ¶¶ 127-28.)

Injury in fact is "an invasion of a legally protected interest which is 'particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Spokeo*, __ U.S. at __, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560).   Diminished returns due to relative performance of investments and high fees is exactly that.  *Bekker v. Neuberger Berman Group LLC*, No. 16 CV 6123-LTS-BCM, 2018 WL 4636841, at *4 (S.D.N.Y. Sept. 27, 2018) ("Diminished returns relative to available alternative investments and high fees represent concrete injuries, implicating a financial loss in comparison to what a plaintiff might have received but for the defendant's alleged breach of duty, which can support a

cognizable injury regardless of whether the plaintiff suffered an actual loss on his investment or simply realized a more modest gain").  In short, if Plaintiff's allegations prove true, as must be assumed for purposes of evaluating standing, *Denney v. Deutsche Bank AG*, 443 F.3d at 263, then she will have established that she incurred an injury in fact.

As an additional reason why she has standing, Plaintiff contends that she need not have personally suffered an injury in fact because she need only prove injury to the Plan as a whole.  (Pl. Reply Mem. at 3-4.)  Plaintiff cites case law suggesting support for that proposition.  *See, e.g.*, *L.I. Head Start*, 710 F.3d at 67 n.5. (rejecting argument that plaintiffs lacked constitutional standing to bring ERISA action on behalf of defined benefit plan and stating that injury to the plan is sufficient injury in fact); *Cunningham v. Cornell University*, No. 16-cv-6525 (PKC), 2019 WL 275827, at *2 (S.D.N.Y. Jan. 22, 2019) (extending *L.I. Head Start* to defined contribution plan).  There is law to the contrary.  *See, e.g.*, *Patterson v. Stanley*, No. 16-cv-6568 (RJS), 2019 WL 4934834, at *5 (S.D.N.Y. Oct. 7, 2019) (distinguishing *L.I. Head Start* and holding that "plan participants suing in a derivative capacity must still satisfy Article III's individualized-injury requirement"); *Forte v. U.S. Pension Committee*, No. 15-cv-4936 (PKC), 2016 WL 5922653, at *10 (S.D.N.Y. 2016) (finding plaintiff lacked standing to bring ERISA class action against fiduciaries of defined contribution retirement plan because he could not demonstrate injury to himself).  The Court need not resolve this argument, however, as it already has found that Plaintiff has sufficiently asserted injury in fact to herself and established standing to bring this action.[11]

---

[11]   Defendants appear to have the better of this argument.  In *L.I. Head Start*, each participant necessarily incurred injury as part of a defined benefit plan where investment

Having resolved the standing issue, the Court now turns to the elements necessary to certify a class action.

## II.   Numerosity, Commonality, and Typicality

The first three class certification requirements are numerosity, commonality, and typicality.  Fed. R. Civ. P. 23(a)(1)-(3).  These elements are satisfied here, and, as noted earlier, Defendants do not argue otherwise in their opposition papers.

**Numerosity:**  The putative class includes tens of thousands, and possibly more than 200,000, participants (*see* Pl. Mem. at 12) and is therefore sufficiently numerous that joinder of all its members would be impracticable.  *See Sacerdote,* 2018 WL 840364, at *3 (ERISA class with 19,000-24,000 participants "[c]ertainly . . . serves to make joinder impracticable"); *Leber*, 323 F.R.D. at 159 (certifying ERISA class and noting that "[i]n this Circuit, numerosity is 'presumed at a level of 40 members'") (citing *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)).

**Commonality:**  Plaintiff and members of the proposed class share common issues of law and fact.  To a large extent, commonality is inherent in an action claiming breach of fiduciary duty under ERISA: "Because the fiduciary duties are owed to the Plans, and

---

decisions were made on behalf of the participants.  In a defined contribution plan like the one at issue here, however, each individual makes his or her own choices and therefore may not ever hold an interest in the problematic investment.  *See Patterson*, 2019 WL 4934834, at *5.  "To hold otherwise would essentially exempt derivative suits from Article III's requirement that plaintiffs suffer an individual harm."  *Id.*  Moreover, most of the cases relied on by Plaintiff were ones in which the named plaintiff had invested in one or more funds within a defined distribution plan but asserted claims for a class of all participants who invested in any of the funds within the plan regardless whether plaintiff invested in each of those same funds.  *See, e.g.*, *Sacerdote v. New York University*, No. 16-cv-6284 (KBF), 2018 WL 840364, at *7 (S.D.N.Y. Feb. 13, 2018); *Leber v. Citigroup 401(k) Plan Investment Committee*, 323 F.R.D. 145, 152, 155 (S.D.N.Y. 2017).  That is not the issue presented here, which is whether Plaintiff could bring a representative claim even if she had not invested in *any* fund alleged to have been mismanaged.

not to individual accounts, common questions of law and fact are central to the case." *Cunningham*, 2019 WL 275827, at *5; *see also Sacerdote*, 2018 WL 840364, at *3 ("'the question of defendants' liability for ERISA violations is common to all class members because a breach of a fiduciary duty affects all participants and beneficiaries.'") (quoting *In re Global Crossing Securities and ERISA Litigation*, 225 F.R.D. 436, 452 (S.D.N.Y. 2004)).

   **Typicality:**  The typicality analysis is related to the commonality analysis.  *See Wal-Mart*, 564 U.S. at 349 n.5 (the two analyses "tend to merge").   Typicality thus "requires that the disputed issues of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." *Mazzei v. Money Store*, 829 F.3d 260, 272 (2d Cir. 2016) (internal quotation marks and citation omitted).  "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims."  *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).  Here, the typicality requirement is met, but with a caveat.   The proposed class includes two categories of members: those who invested directly in the Global Opportunity Fund and those who invested indirectly through TDFs.  Plaintiff falls only into the latter category.  In that sense, Plaintiff is typical of only a portion of the class.  That said, Defendants' alleged mismanagement of the Global Opportunity Fund and resulting injury is the basis for the claims of all members.  In that sense, Plaintiff's claim is typical of the entire class.

   In sum, Plaintiff's proposed class satisfies the first three requirements for class certification.  The next section discusses the disputed issues with respect to the remaining class action requisites: whether the class is sufficiently defined so as to be ascertainable,

whether Plaintiff will adequately protect the interests of class members, and whether the class qualifies as the type of class action described in Fed. R. Civ. P. 23(b)(1)(B).

## III.    The Proposed Class is Ascertainable

In rejecting a more exacting ascertainability requirement demanded by other Circuits, the Second Circuit explained the metes and bounds of the principle in this Circuit as follows:

> The ascertainability requirement, as defined in this Circuit, asks district courts to consider whether a proposed class is defined using objective criteria that establish a membership with definite boundaries. This modest threshold requirement will only preclude certification if a proposed class definition is indeterminate in some fundamental way. If there is no focused target for litigation, the class itself cannot coalesce, rendering the class action an inappropriate mechanism for adjudicating any potential underlying claims. In other words, a class should not be maintained without a clear sense of who is suing about what.

*In re Petrobas Securities*, 862 F.3d at 269. Defendants argue that Plaintiff's proposed class is not ascertainable because it lacks a defined time frame.

Defendants are correct that as proposed in the Complaint the class definition lacks any time frame. Defendants are also correct that the failure to logically identify beginning and ending dates for the class can pose an impediment to class certification. *See, e.g.*, *Brecher v. Republic of Argentina*, 806 F.3d 22, 26 (2d Cir. 2015) ("The lack of a defined class period, taken in light of the unique features of the bonds in this case . . . makes the modified class insufficiently definite as a matter of law"); *Neale v. Volvo Cars of North America, LLC*, No. 10–4407 (JLL), 2017 WL 6055774, at *5 (D.N.J. Dec. 6, 2017) (class definitions lacked any defined period of time); *Groussman v. Motorola, Inc.*, No. 10 C 911, 2011 WL 5554030, at *7 (N.D. Ill. Nov. 15, 2011) (record devoid of facts to logically support proposed time period).

Nonetheless, Plaintiff has identified a specific time frame in moving for certification.

Plaintiff proposes a period that begins with the end of the first quarter of 2010 (specifically April 1, 2010), which is when it allegedly became "immediately apparent" that action should have been taken to remove the Global Opportunity Fund as an investment option. (Pl. Mem. at 10 n.5.)  Whether that date ultimately can be defended on the merits remains to be seen, but it at least provides a logical basis for the start date.  As an end date, Plaintiff lands upon August 2016, which is when Defendants decided to remove the Global Opportunity Fund as an option.  (*Id.*)

Defendants take issue principally if not entirely with the proposed start date. According to Defendants, the proposed period is "overbroad and not ascertainable" because it does not define a class period within the "appropriate" three-year statute of limitations.  (Def. Mem. at 19.)  As noted earlier, however, in light of recent Supreme Court precedent, Defendants no longer contend that the applicable statute of limitations is three years, rather than six years.  Accordingly, the premise of Defendants' ascertainability argument no longer holds.  Moreover, the cases cited by Defendants did not define the class period based on the statute of limitations.  Rather, their concern was with the lack of any logically definable time frame.  *See, e.g., Brecher*, 806 F.3d at 26 (proposed class definition of beneficial interest holders in bonds was not susceptible to time boundaries because of  sales on secondary market); *Neale v. Volvo Cars of North America, LLC*, 2017 WL 6055774, at \*5 (D.N.J. Dec. 6, 2017) (class definitions lacked any defined period of time); *Groussman v. Motorola, Inc.*, 2011 WL 5554030, at \*7 (N.D. Ill. Nov. 15, 2011) (ERISA plaintiff's proposed period was inconsistent and arbitrarily chosen).[12]

---

[12] The *Neale* case cited by Defendants actually expresses concern with the reverse of the concern expressed by Defendants, noting that determining a beginning date for the class period "would substantially clarify issues regarding statutes of limitations," not the other way around.  *Neale v. Volvo Cars of North America, LLC*, 2017 WL 6055774, at \*5.

Unlike in the cases cited by Defendants, Plaintiff has proposed start and end dates providing "defined boundaries" based on the record.[13]  *In re Petrobas Securities*, 862 F.3d at 269.  The proposed class is ascertainable.

**IV.     Plaintiff Will Adequately Protect the Interests of Class Members**

Rule 23(a)(4) requires that the named plaintiff "fairly and adequately protect the class."  In assessing this requirement, courts make two principal inquiries: whether (1) plaintiff's interests are antagonistic to the interests of other members of the class; and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.  *Baffa v. Donaldson, Lufkin & Jenrette Securities Corp.*, 222 F.3d 52, 60 (2d Cir. 2000); *see also Zimmerman v. Portfolio Recovery Associates, LLC*, 276 F.R.D. 174, 179-80 (S.D.N.Y. 2011) (Gardephe, J.) (reciting same standard).  In this instance, Defendants have not challenged the sufficiency of class counsel to adequately protect the class, and the Court finds no reason to conclude otherwise.[14]  Accordingly, the Court focuses on whether Plaintiff Jacobs satisfies the requirement to adequately represent the class.

Defendants have not identified any way in which Plaintiff's interests are antagonistic to the interests of other class members.  Rather, Defendants argue that Plaintiff is not adequate because she lacks fundamental knowledge about the case, is overly dependent on counsel, and has not demonstrated willingness to actively participate

---

[13] The Court acknowledges Defendants' observation that Plaintiff's proposed start date conveniently lines up with the beginning of a six-year statute of limitations that ends on the proposed end date.  Nonetheless, Plaintiff has set forth an ostensibly logical basis for the dates identified.

[14] As discussed in more detail below in the context of appointing class counsel, the law firms representing Plaintiff have substantial experience in complex class actions, including ERISA fiduciary litigation, and have been appointed class counsel in numerous other cases.  (*See generally* Schneider Decl., Edgar Decl., and Quitt Decl.)

in the case.  (Def. Mem. at 20-22.)  While there is some grist in the record for this argument, the Court is not persuaded.

The Second Circuit "general[ly] disfavor[s] . . . attacks on the adequacy of a class representative based on the representative's ignorance."  *In re Flag Telecom Holdings, Ltd. Securities Litigation*, 574 F.3d 29, 42 (2d Cir. 2009) (internal quotation marks and citation omitted); *see also Baffa,* 222 F.3d at 61 ("The Supreme Court . . . expressly disapproved of attacks on the adequacy of a class representative based on the representative's ignorance") (citing *Surowitz v. Hilton*, 383 U.S. 363, 370-74 (1966)).  The Court's concern focuses on whether the class representative has "so little knowledge or an involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys."  *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1077-78 (2d Cir. 1995) (citation omitted); *see also Baffa*, 222 F.3d at 61 (quoting *Maywalt*, 67 F.3d at 1077-78).

*Baffa*, a securities fraud case, illustrates the point.  The defendants challenged the adequacy of class representatives, including an eighteen-year-old named "Brett" who came to own the stock at issue through a custodial account previously owned and controlled by his father as guardian of a minor.  Class counsel argued that, based on his deposition testimony, Brett lacked adequate knowledge of the case.  The district court held that Brett was not adequate, particularly in light of having issued Rule 11 sanctions against class counsel.  *Baffa*, 222 F.3d at 60-62.  The Second Circuit reversed, both with respect to sanctions and the court's adequacy determination.  The Court found it sufficient that Brett understood certain basic information including that particular investments were at issue in the litigation, that he and others had sustained a loss due to the alleged fraud, and that he could appropriately rely on expert advice in accounting matters.  *Id.* at 62.  As

to dependence on class counsel (and on his father), the Court held that "[f]ar from showing Brett's ignorance of the litigation or his inability to serve as a class-representative, it demonstrates Brett's ability to appreciate the limits of his knowledge and rely on those with the relevant expertise." *Id.* And with respect to participation, the Court noted that Brett had reviewed and signed the amended complaint and reviewed certain financial information central to its allegations. *Id.*

Here, to be sure, Plaintiff's deposition demonstrated a lack of familiarity with some basic information about the case. Among other aspects highlighted by Defendants (Def. Mem. at 20-21), Plaintiff did not recognize her own investments when shown account statements (Taylor Decl. Ex. A at 35-36.); did not know if she had invested in the Global Opportunity Fund (*id.* at 37); had never heard of a Target Date Fund (*e.g.*, *id.*); and did not know whether any claims or parties previously had been dismissed from the case even though both had occurred (*id.* at 12, 132). There are also portions of the deposition where Plaintiff could not articulate what her claim was about (*e.g.*, *id.*, at 13), and seemed motivated not by any financial loss to herself or to the Plan but instead by unsupported hearsay that Verizon used Plan funds inappropriately for its own benefit (*e.g.*, *id.* at 43, 86-87), and by Verizon's refusal to provide answers to questions other than by referring her to Plan documentation (*e.g.*, *id.* at 130).

Notwithstanding those shortcomings, Plaintiff was aware of fundamental aspects of the case. She knew that the financial subject of the litigation is the Verizon 401(k) program and specifically one of the funds having Global in its name. (*Id.* at 13.) Without prompting, she understood the claim to be that fiduciary responsibility "wasn't happening." (*Id.*) From her work as an insurance agent after she left Verizon, she has a basic understanding of how a 401(k) plan works (*see id.* at 42-43), as well as a general

understanding of fiduciary duty (*id.* at 128-29).  She believes in the central allegation of the case – i.e., that Verizon did not properly monitor the Global Opportunity Fund (although "I'm not an attorney," she admits ).  (*Id.* at 41.)  Plaintiff repeatedly noted that she relies on her attorneys for preparation of legal documents and other aspects of the case. (*E.g.*, *id.* at 65.) Of course, that is to be expected given the complexities of ERISA, investments such as funds of funds, and the like.  Granted, Plaintiff's lack of knowledge about the case in some respects goes deeper than the eighteen-year-old in *Baffa*.  But, as in *Baffa*, Plaintiff recognizes that she has limited knowledge and relies on counsel for their legal expertise.

Plaintiff also has a demonstrated willingness to pursue and participate in the case. Although she initially could not recall, or even incorrectly answered, whether she had reviewed or produced certain discovery material (perhaps understandably given the passage of time), Plaintiff has cooperated with her attorneys, looked over the complaint (though she "didn't really know how to study it") (*id.* at 12), provided information for discovery responses and searched her email (*id.* at 66), provided counsel with all correspondence she has had with Verizon (*id.* at 63), testified at deposition for most of a day, and will testify at trial if her attorneys want her to do so (*id.* at 33).  Based on this record, the Court cannot conclude that Plaintiff has "so little knowledge of, or involvement in, the class action that [she] would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys."  *Baffa*, 222 F.3d at 61 (quoting *Maywalt*, 67 F.3d at 1077-78); *see also In re Flag Telecom Holdings*, 574 F.3d at 42 (affirming district court determination that named plaintiff did not lack sufficient familiarity and involvement).

The cases cited by Defendants do not countenance otherwise.  For instance, in *Kline*, the court found the named plaintiff inadequate – and atypical – because her deposition revealed a serious credibility issue that had a potential adverse impact on the class.  *Kline v. Wolf*, 88 F.R.D. 696, 700 (S.D.N.Y. 1981).  No similar cause for concern has been raised here.  In *Gordon*, the court found a putative class representative to be inadequate because of an undisclosed conflict of interest combined with difficulty in recalling key facts and responding to straightforward questions at his deposition.  *Gordon v. Sonar Capital Management LLC,* 92 F. Supp. 3d 193, 199-200 (S.D.N.Y. 2015).  No conflict of interest has been alleged here, and Gordon's lapses appear more extreme than those of Plaintiff here.  *See id.* at 200 (in addition to being unfamiliar with key case events such as motions to dismiss, Gordon also could not recall which putative class he represented, and had not even seen a copy of the operative complaint until the day before his deposition).  The *Scott* case also is dissimilar.  There, the court found two putative class representatives inadequate because, for example, one had not even seen the complaint until shortly before deposition; did not know for sure whether the lawsuit was a class action; had met with counsel only once in three years prior to deposition; had health problems precluding participation in the case; and admitted he would never question counsel's advice.  *Scott v. New York City District Council of Carpenters Pension Plan*, 224 F.R.D. 353, 356-57 (S.D.N.Y. 2004).

Finally, in the *In re Monster Worldwide* case, a county retirement system and a pension fund sought appointment as lead plaintiffs in a securities fraud action.  *In re Monster Worldwide, Inc. Securities Litigation*, 251 F.R.D. 132 (S.D.N.Y. 2008).  The court approved the retirement system but rejected the pension fund as inadequate based on the deposition testimony of its witness, a co-chairman of the fund.  The witness testified he

was the person at the pension fund most knowledgeable about the lawsuit, yet he did not know the name of the stock at issue, whether the fund ever owned Monster stock, that the fund had moved for summary judgment, or whether he had ever seen any complaint. *Id.* at 135. In the wake of that "appalling" testimony, the fund put up a second witness for deposition who admitted he had virtually no involvement in or familiarity with the case until a week before his deposition. *Id.* at 135-36. Characterizing the fund's role as a "sham," the Honorable Jed S. Rakoff, U.S.D.J., concluded that the fund had no interest in, knowledge of, or meaningful involvement in the case but instead was "simply the willing pawn of counsel." *Id.* at 136. While there are some parallels to the plaintiff's shortcomings in *In re Monster Worldwid*e, those exhibited by Jacobs' do not run as wide or as deep.

As explained above and as comes through in the case law, the overarching concern with a representative's lack of knowledge and involvement is, in Judge Rakoff's words, that the representative not merely be a pawn of counsel. Reviewing the Plaintiff's testimony does not exactly allay that concern. She testified that "if you have any allegations or whatever, these questions you keep asking me, you need to talk to my attorneys about that, because they're the ones that did all the research." (Taylor Decl. Ex. A at 130.) In responding to a question about whether she had reviewed her responses to Defendants' document requests, Plaintiff answered, "Perfectly honest? No, because I just kind of will leave everything up to my attorneys to deal with." (*Id.* at 65.) Plaintiff's answers, in isolation, certainly do not evince the type of care or vigilance that a class representative should have in order "to exercise independent control over the attorney." *Scott*, 224 F.R.D. at 355. But taking Plaintiff's testimony in total, her demonstration of interest and engagement in the litigation is considerable, and the Court finds her to be adequate, if modestly so. Plaintiff may not be the perfect class representative, but the

law does not require her to be.

## V.   The Action is Properly Brought Under Fed. R. Civ. P. 23(b)(1)(B)

The final inquiry is whether the action qualifies for certification as one of the types of classes recognized by Fed. R. Civ. P. 23(b).  In this instance, Plaintiff seeks certification pursuant to 23(b)(1)(B).  A class qualifies for certification under Rule 23(b)(1)(B) if it meets the prerequisites of Rule 23(a), and "prosecuting separate actions by or against individual class members would create a risk of . . . adjudications . . . that, as a practical matter, would be dispositive of the interest of other members [who] are not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." In a nutshell, "23(b)(1)(B) looks to possible prejudice to the putative class members" if they were forced to otherwise pursue individual actions.  *In re Global Crossing*, 225 F.R.D. at 453 (citation omitted).

ERISA litigation such as the instant case bears the hallmarks of a 23(b)(1)(B) class action for the very reason that "plaintiffs allegations are brought with respect to breaches of fiduciary duties to the Plans as a whole" such that "defendants' duties raise and fall with all plaintiffs."  *Cunningham*, 2019 WL 275827, at *8.  And "[b]ecause Defendants' alleged conduct was uniform with respect to each participant, adjudicating Plaintiffs' claims, as a practical matter, would dispose of the interests of the other participants or substantially impair or impede their ability to protect their interests."  *Moreno*, 2017 WL 3868803, at *8; *see also Beach*, 2019 WL 2428631, at *9 ("'any decision regarding whether the defendants breached their fiduciary duties would necessarily affect the interest of other participants'") (quoting *William B. Rubenstein*, *2 Newberg on Class Actions* § 4:21 (5th ed. 2011) (June 2019 update)).

Accordingly, Courts in this District and elsewhere frequently have certified Rule

23(b)(1)(B) class actions claiming breaches of fiduciary duties under ERISA.  Indeed, one court recently referred to ERISA litigation as a "'paradigmatic example of a (b)(1) class.'" *Beach*, 2019 WL 2428631, at *9 (quoting *In re Global Crossing*, 225 F.R.D. at 453); *see also Cunningham*, 2019 WL 275827 (certifying class under Rule 23(b)(1)(A) and (B)); *Sacerdote*, 2018 WL 840364 (certifying class under Rule 23(b)(1)); *Leber*, 323 F.R.D. 145 (same); *Moreno*, 2017 WL 3868803 (same); *In re Marsh ERISA Litigation*, 265 F.R.D. 128, 142 (S.D.N.Y. 2010) (certifying class for purposes of settlement and observing that "the Advisory Committee Notes to 1966 Amendment of Rule 23(b)(1)(B) specifically state that certification is especially appropriate in cases charging breach of trust by a fiduciary to a large class of beneficiaries").

Defendants do not view this case as an example, let alone a classic one, of a Rule 23(b)(1)(B) class action.  They argue that at this juncture in the litigation the only relief sought by Plaintiff is damages (rather than injunctive relief now mooted by dismissal of the other claims and by closure of the Global Opportunity Fund), and that a damages-only class is not appropriate for certification under Rule 23(b)(1)(B).  Defendants assert that each participant in the Plan had his or her own individual account, and the amount of damages will be different for each class member.  Each class member thus has a due process right to opt out of the class, a right provided by Rule 23(b)(3), not 23(b)(1).[15]  In

---

[15] A Rule 23(b)(3) class is one for which "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The Rule requires consideration of several factors to make this determination; namely, "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."  *Id.*

support of their argument, Defendants cite cases for the proposition that Rule 23(b)(3) is the appropriate vehicle where individual damages are sought, *e.g.*, *J.P. Morgan Stable Value Fund ERISA Litigation*, 12-CV-2548 (VSB), 2017 WL 1273963, at *13 (S.D.N.Y. March 31, 2017) (finding that certifying class under Rule 23(b)(1) "would not be appropriate in light of the fact that Plaintiffs seek individual money damages" rather than seeking recovery on behalf of the plan as an entity), and that Rule 23(b)(1) may be used in cases seeking primarily monetary damages only in so-called "limited-fund cases" where the aggregate value of the fund may not be enough to pay all claims, *e.g.*, *Cashman v. Dolce International/Hartford, Inc.*, 225 F.R.D. 73, 93 (D. Conn. 2004) ("Class actions certified under Rule 23(b)(1)(B) . . . typically involve limited pools of money that may not be adequate to cover the claims of all plaintiffs").  (Def. Mem. at 22-24.)

These arguments have been floated before in other similar cases and soundly rejected.  The principal flaw in Defendants' argument is a misapprehension of the nature of an ERISA class action case such as this one.  Regardless whether damages and/or injunctive relief are sought, the named Plaintiff brings suit in a derivative capacity seeking relief on behalf of the Plan.  That is why, with respect to monetary relief, the Complaint seeks an order that "Defendants make good to the Verizon Plans the losses resulting from their breaches of fiduciary duty."  (Compl. Prayer for Relief ¶ D.)  "Any monetary relief will be paid to the Plan, and the Plan fiduciaries would be responsible for allocating the recovery among participants."  *Moreno*, 2017 WL 3868803, at *9 (internal citations omitted).  "[T]he fact that damages awarded to the Plan may provide plaintiffs with an indirect benefit does not convert their derivative suit into an action for individual relief" as

Defendants seek to portray it. *L.I. Head Start*, 710 F.3d at 66 (internal quotation marks and citation omitted); *see also Moreno*, 2017 WL 3868803, at *9 ("Plaintiffs do not assert harms based on misconduct that is specific to his or her individual account. . . . Rather, named Plaintiffs . . . challenge Defendants' process for selecting and retaining the investment options presented *to all Plan participants*"); *Sacerdote*, 2018 WL 840364, at *6 (rejecting argument that 23(b)(1) classes may not seek compensatory damages).

The absence of need for injunctive relief going forward does not change the analysis. "Because damages are owed to the Plans and not individual plaintiffs, adjudication of the named plaintiffs' suits would be dispositive of the interests of other participants in the Plans" – precisely what Rule 23(b)(1)(B) is designed to prevent. *Cunningham*, 2019 WL 275827, at *8; *see also Beach*, 2019 WL 2428631, at *9. Injunctive relief would be directed to Defendants' conduct; its absence would be more germane to certification pursuant to Rule 23(b)(1)(A), which focuses on possible prejudice to the defendants, not plaintiffs. *See In re Global Crossing*, 225 F.R.D. at 453; *Leber*, 323 F.R.D. at 164.

The derivative nature of Plaintiff's claims similarly obviates any concern with the due process protections associated with a damages class action pursuant to Rule 23(b)(3). *See Moreno*, 2017 WL 3868803, at *9 (rejecting due process argument because ERISA "class claims under Rule 23(b)(1) are derivative in nature, not individualized"). Lastly, none of the cases cited by Defendants stands for the proposition that limited fund cases are the "only" damages-based class action permitted under Rule 23(b)(1)(B). "Defendants point to no binding precedent that holds Rule 23(b)(1)(B) is so narrow." *Moreno*, 2017 WL 3868803, at *9; *see also Leber*, 323 F.R.D. at 165 ("limited fund cases . . . are just one of the 'traditional varieties of representative suit encompassed by Rule

23(b)(1)(B)'") (quoting *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834 (1999)).   Rather, "[c]ourts regularly certify 23(b)(1)(B) class actions in non-limited fund situations, particularly in ERISA cases alleging breach of fiduciary duty . . . including those within this Circuit . . . ."  *Moreno*, 2017 WL 3868803, at *9 (internal quotation marks and citation omitted).

Succinctly stated, this action falls comfortably within the confines of Rule 23(b)(1)(B).

## VI.   Appointment of Class Counsel

Plaintiff's counsel, consisting of lawyers from three different law firms (collectively, the "Firms"), request appointment as co-counsel for the class pursuant to Fed. R. Civ. P. 23(g).  This request should be granted.  The proposed attorneys are qualified to fulfill the role of co-class counsel.

In determining whether class counsel should be approved, Rule 23(g)(1)(A) directs courts to consider four factors: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."  The court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B).

All factors weigh in favor of the Firms' appointment as co-counsel for the class.  The Firms filed a detailed complaint copiously describing the alleged facts and claims, successfully defended one of those claims against dismissal, and have retained two experts who have conducted analyses (thus satisfying the first factor).  The counsel involved are well-experienced in class action litigation, including ERISA actions, and have

frequently been appointed lead or co-class counsel (thus satisfying the second factor). (*See* Schneider Decl. ¶ 4 and Ex. A at 1-2; Edgar Decl. ¶ 3 and Ex. A at 2-4; Quitt Decl. ¶ 2 and Ex. A at 1-6.)   Counsel's work in this case and experience in other cases demonstrate considerable knowledge of the relevant law (thus satisfying the third factor). And the Firms collectively are well positioned to provide the necessary resources to litigate this case to conclusion (thus satisfying the fourth factor).  (*See generally* Schneider Decl. ¶ 3 and Ex. A; Edgar Decl. ¶ 3 and Ex. A; Quitt Decl. ¶ 2 and Ex. A.)

Finally, Defendants have not raised any argument (other than that the class should not be certified) opposing appointment of the Firms.  The Firms should be approved as co-counsel for the class.

*   *   *

To the extent not addressed above, the Court has considered all other arguments raised by the parties and finds them to be without merit.

### Conclusion

For the foregoing reasons, I recommend that Plaintiff's motion for class certification be GRANTED and that:

(1) a class be certified and defined as follows:

> All participants or beneficiaries of the Verizon Savings Plan for Management Employees (the "Plan") for the period from April 1, 2010 to August 1, 2016, excluding the Defendants, other VIMCO or Verizon employees with responsibility for the Plan's investment or administrative functions, and members of the Verizon Board of Directors, who had any portion of their accounts in the Plan invested directly in the Global Opportunity Fund or indirectly in the Global Opportunity Fund through investment in any of the Verizon Target Date Funds.

(2) The following firms be approved as class co-counsel:

> Schneider Wallace Cottrell Konecky Wotkyns LLP;
> Edgar Law Firm LLC; and

Glancy Prongay & Murray LLP.

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days to file written objections to this Report and Recommendation.  Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the Chambers of the Honorable Paul G. Gardephe, U.S.D.J., United States Courthouse, 40 Foley Square, New York, NY 10007, and to the Chambers of the undersigned, United States Courthouse, 500 Pearl Street, New York, New York 10007.  **Failure to file timely objections will preclude appellate review.**

SO ORDERED.

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated:        June 1, 2020
              New York, New York