UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #: _____       │
│ DATE FILED: _____        │
└─────────────────────────────────────┘
```

MELINA N. JACOBS, On Behalf of Herself
and All Others Similarly Situated,

                        Plaintiff,

           - against -

VERIZON COMMUNICATIONS, INC.;
VERIZON INVESTMENT
MANAGEMENT CORP.; THE VERIZON
EMPLOYEE BENEFITS COMMITTEE;
MARC C. REED; MARTHA
DELEHANTY; ANDREW H. NEBENS;
CONNIA NELSON; SHANE SANDERS;
ROBERT J. BARISH; DONNA C.
CHIFFRILLER,

                    Defendants.

**ORDER**

16 Civ. 1082 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        Plaintiff Melina N. Jacobs brings this putative class action pursuant to Section

502(a)(2) and (3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29

U.S.C. 1001 et. seq.  Plaintiff claims that Verizon Communications Inc. ("Verizon"), Verizon

Investment Management Corp. ("VIMCO"), the Verizon Employee Benefits Committee (the

"Benefits Committee"), and certain individual members of the Benefits Committee (collectively,

"Defendants"), breached their fiduciary duties under ERISA by failing to properly monitor and

take action with respect to the Global Opportunity Fund, a poorly performing investment option

offered by the Verizon Savings Plan for Management Employees.  (Cmplt. (Dkt. No. 1) ¶¶ 9, 76-

77)

        Plaintiff has moved to certify the putative class, and seeks appointment as class

representative and appointment of class counsel pursuant to Federal Rule of Civil Procedure 23.

(Dkt. No. 142)  This Court referred the motion to Magistrate Judge Lehrburger.  (Dkt. No. 152)

On June 1, 2020, Judge Lehrburger issued a Report and Recommendation ("R&R")

recommending that Plaintiff's motion for class certification and appointment of counsel be

approved.  (R&R (Dkt. No. 158))  For the reasons set forth below, the R&R will be adopted in its

entirety.

## BACKGROUND

**I.    FACTS**[1]

Plaintiff is a former employee of Verizon who participated in the Verizon Savings

Plan for Management Employees (the "Plan").  (Cmplt. (Dkt. No. 1) ¶ 34)  Verizon sponsors the

Plan.  (Id. ¶ 3(a); Answer (Dkt. No. 75) ¶ 3(a))  The Verizon Employee Benefits Committee[2]

("VEBC") administers the Plan, including selecting and removing investment options under the

Plan.  (Id. ¶ 37; Bloom Decl. (Dkt. No. 144) Ex. J at VERIZON0016453)  The Verizon

Investment Management Corp. ("VIMCO") manages the Plan's investments, appoints

investment managers for each of the Plan's investment funds, and advises the VEBC about what

investment options to include, modify, or remove.  (Id. ¶ 38; Bloom Decl. (Dkt. No. 144) Ex. F.

at §2.02(f); Ex. G at 10-11)[3]

The Plan is an individual account defined-contribution plan that allows

participants to select from a variety of investment options.  (Id. ¶ 35; Bloom Decl. (Dkt. No. 144)

Ex. J at 2)  Among the investment options are Target Date Funds ("TDFs"), which are

professionally managed funds with a mix of assets.  (Id. ¶ 50; Bloom Decl. (Dkt. No. 144) Ex. J

---

[1]  This Court assumes familiarity with the facts of this case, which are detailed both in this Court's September 28, 2017 Order (Dkt. No. 70) and the R&R (Dkt. No. 158).
[2]  The individual Defendants are or were members of the VEBC. (Id. ¶ 1)
[3]  Citations to page numbers refer to the pagination reflected in this District's Electronic Case Files ("ECF") system.

at 3-5)  Each Verizon TDF included the Global Opportunity Fund within its mix of assets; the Global Opportunity Fund amounted to between six and fifteen percent of each TDF portfolio. (Bloom Decl. (Dkt. No. 144) Ex. J at 5)

The Global Opportunity Fund was formed in December 2006, and it was added as an investment option for the Plan in January 2007.  (Bloom Decl. (Dkt. No. 144) Ex. I at 4-5; Ex. H at 6-7)  The Global Opportunity Fund consistently underperformed compared to its benchmark.[4]  (Cmplt. (Dkt. No. 1) ¶ 70; Bloom Decl. (Dkt. No. 144) Ex. R ¶¶ 24-26)  It ranked within the bottom ten percent of comparable funds, and in the bottom quartile of the Plan's investment options.  (Bloom Decl. (Dkt. No. 144) Ex. T at 6; Ex. X. at 6)  Defendants removed the Global Opportunity Fund as an investment option in 2017.  (Taylor Decl. (Dkt. No. 151) Ex. AA at VERIZON0048479)

Plaintiff selected the Verizon 2040 TDF for a portion of her retirement savings. (Cmplt. (Dkt. No. 1) ¶ 34.  As a result, part of Plaintiff's portfolio was automatically allocated to the Global Opportunity Fund.  (See id. ¶ 71; Bloom Decl. (Dkt. No. 144) Ex. J at 6)

## II.   PROCEDURAL HISTORY

The Complaint was filed on February 11, 2016, and alleges three claims.

Plaintiff first contends that Defendants breached their fiduciary duty by failing to act prudently with respect to the TDFs, in violation of ERISA §§ 409(a), 502(a)(2) and (3).

---

[4]  Defendants contend that the Global Opportunity Fund did not use a benchmark, and that "the undisputed facts show that the Global Opportunity Fund performed well compared to similar hedge funds under prevailing circumstances."  (Def. Obj. (Dkt. No. 161) at 4)  Because Defendants concede that the parties' factual dispute is "not central to the issues relating to class certification," the Court does not address that dispute here.  (Id.)  In any event, for purposes of considering the threshold issue of standing, the Court is required to accept the factual allegations of the Complaint as true.  Denny v. Deutsche Bank AG, 443 F.3d 253, 263 (2d Cir. 2006) (citing Warth v. Seldin, 422 U.S. 490, 501 (1975)).

According to Plaintiff, "the asset allocation mix of the Verizon TDFs imposed significant additional risk on all . . . of the TDFs," and "Defendants' appointment of fiduciaries, design of the TDFs and the underlying custom funds, and monitoring of the performance of and fees charged by the various managers of those funds, violated their fiduciary duties to act prudently and solely in the interests of plan participants. . . ."  (Id. ¶¶ 102, 119)

In her second claim, Plaintiff contends that Defendants breached their fiduciary duty to prudently monitor and take corrective action with respect to the Global Opportunity Fund, in violation of ERISA §§409(a), 502(a)(2) and (3).  (Id. ¶¶70, 127-28)  According to Plaintiff, Defendants kept the Global Opportunity Fund as an investment option despite the fact that it had, over time, significantly underperformed comparable funds and had a higher expense ratio than any other Verizon Plan investment option.  (Id. ¶¶70-71)

In her third claim, Plaintiff alleges a breach of fiduciary duty premised on a failure to disclose compensation, in violation of ERISA §§ 409(a) and 404(a)(1).  (Id. ¶¶ 131-34)

Defendants moved to dismiss.  (See Def. Br. (Dkt. No. 58))  In a September 28, 2017 order, this Court granted Defendants' motion as to Plaintiff's breach of fiduciary duty claims concerning the TDFs and compensation disclosures.  (Sept. 28, 2017 Order (Dkt. No. 70) at 14, 29)  With respect to the TDF claim, this Court concluded that Plaintiff had not pled facts plausibly demonstrating that the TDF investment options were unreasonably complex or risky, or that Defendants had acted incompetently or out of self-interest.  (Id. at 10-11, 13-14)

This Court denied Defendants' motion to dismiss Plaintiff's second claim alleging that Defendants had not prudently monitored the Global Opportunity Fund and taken necessary corrective action with respect to that fund.  (Id. at 18)

4

Plaintiff now seeks to certify a class based on her one remaining claim.  (Pltf. Br. (Dkt. No. 143))  Defendants oppose, arguing that (1) the proposed class is not ascertainable, because there is no definite time period; (2) Plaintiff is not an adequate class representative, because she is not sufficiently versed in the basic facts of the case and is overly reliant on class counsel; and (3) the requirements of Rule 23(b)(1) are not satisfied, because determining Plaintiff's claim would not impair or impede the interests of other claimants.  (See Def. Br. (Dkt. No. 150) at 25-30)  Defendants also challenge Plaintiff's standing to bring this action, arguing that she has not sustained an injury in fact.  (Id. at 18-20)

On June 1, 2020, Judge Lehrburger issued a thorough, 31-page R&R recommending that Plaintiff's motion for class certification and appointment of counsel be granted.  (R&R (Dkt. No. 158))  The R&R notifies the parties that they have 14 days to file objections pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72.  (Id. at 31)  The R&R further states that the "[f]ailure to file timely objections will preclude appellate review."  (Id. (emphasis omitted))

On June 15, 2020, Defendants objected to the R&R to the extent that Judge Lehrburger concludes that Plaintiff has constitutional standing to represent the putative class. (See Def. Obj. (Dkt. No. 161))  Plaintiff filed a response to Defendants' objection on June 29, 2020.  (See Pltf. Resp. (Dkt. No. 162))

## DISCUSSION

## I.      REVIEW OF MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  Under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P.

72(b), a party may submit objections to the magistrate judge's R & R.  Any objections must be "specific" and "written," and must be made "[w]ithin 14 days after being served with a copy of the recommended disposition."  Fed. R. Civ. P. 72(b)(2); see also 28 U.S.C. § 636(b)(1).  "'The district judge evaluating a magistrate judge's recommendation may adopt those portions of the recommendation, without further review, where no specific objection is made, as long as they are not clearly erroneous.'"  Gilmore v. Comm'r of Soc. Sec., No. 09 Civ. 6241 (RMB) (FM), 2011 WL 611826, at *1 (S.D.N.Y. Feb. 18, 2011) (quoting Chimarev v. TD Waterhouse Investor Servs., Inc., 280 F. Supp. 2d 208, 212 (S.D.N.Y. 2003)).  A decision is "clearly erroneous" when, "upon review of the entire record, [the court is] left with the definite and firm conviction that a mistake has been committed."  United States v. Snow, 462 F.3d 55, 72 (2d Cir. 2006) (quotation marks and citation omitted).

Where a timely objection has been made to a magistrate judge's recommendation, the district court judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1)(C).  However, "[o]bjections that are 'merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original [papers] will not suffice to invoke de novo review.'"  Phillips v. Reed Grp., Ltd., 955 F. Supp. 2d 201, 211 (S.D.N.Y. 2013) (quoting Vega v. Artuz, 97CIV.3775LTSJCF, 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002)) (second alteration in Phillips).  "To the extent . . . that the party . . . simply reiterates the original arguments, [courts] will review the Report strictly for clear error."  IndyMac Bank, F.S.B. v. Nat'l Settlement Agency, Inc., 07 Civ. 6865 (LTS)(GWG), 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008) (citing Pearson-Fraser v. Bell Atl., No. 01 Civ. 2343(WK), 2003 WL 43367, at *1 (S.D.N.Y. Jan. 6, 2003); Camardo v. Gen. Motors

Hourly-Rate Emp. Pension Plan, 806 F. Supp. 380, 382 (W.D.N.Y. 1992)); see also Ortiz v. Barkley, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) ("Reviewing courts should review a report and recommendation for clear error where objections are 'merely perfunctory responses,' . . . 'rehashing . . . the same arguments set forth in the original petition.'") (citing Vega, 2002 WL 31174466, at *1; Greene v. WCI Holdings, 956 F. Supp. 509, 513 (S.D.N.Y. 1997)).

Here, Defendants have made a specific objection to Judge Lehrburger's finding concerning standing.  Accordingly, the portion of the R&R addressing this issue will be reviewed de novo.  The remainder of the R&R will be reviewed for clear error.

## II.   CONSTITUTIONAL STANDING

As to standing, Defendants contend that Plaintiff did not invest directly in the Global Opportunity Fund; that her claims regarding the TDF that she did invest in were dismissed; and that, in any event, Plaintiff has not sustained any injury in fact.  (Def. Opp. (Dkt. No. 150) at 18-20)  Plaintiff counters that because the Global Opportunity Fund was included in all of the Plan's TDFs, "Plaintiff, like all investors in the TDFs, paid a pro rata share of the [Global Opportunity Fund's] fees, and received a pro rata share of [its] underperformance." (Pltf. Reply (Dkt. No. 148) at 6)  In the alternative, Plaintiff argues that she has standing to assert claims in a derivative capacity on behalf of the Plan.  (Id. at 7)

### A.   Applicable Law

"There are three Article III standing requirements:  (1) the plaintiff must have suffered an injury-in-fact; (2) there must be a causal connection between the injury and the conduct at issue; and (3) the injury must be likely to be redressed by a favorable decision." Kendall v. Emps. Ret. Plan of Avon Prod., 561 F.3d 112, 118 (2d Cir. 2009) (citing Lujan v. Def. of Wildlife, 504 U.S. 555, 560–61 (1992)).

"The injury in fact required to support constitutional standing is 'an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'" Donoghue v. Bulldog Inv. Gen. P'ship, 696 F.3d 170, 175 (2d Cir. 2012) (quoting Lujan, 504 U.S. at 560-61); accord W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP, 549 F.3d 100, 106 (2d Cir. 2008); see also Lujan, 504 U.S. at 560 (In order to establish standing, "the plaintiff must have suffered an 'injury in fact' – an invasion of a legally protected interest which is . . . concrete and particularized[.]" (citations omitted)); Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens, 529 U.S. 765, 773 (2000) ("Congress can[ ] define new legal rights, which in turn will confer standing to vindicate an injury caused to the claimant." (citing Warth, 422 U.S. at 500)).

"As the party invoking federal jurisdiction, the plaintiff bears the burden of establishing that [she] has suffered a concrete injury, or is on the verge of suffering one." Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C., 433 F.3d 181, 198 (2d Cir. 2005) (citing Lujan, 504 U.S. at 561).

When assessing a challenge to standing, a court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." Warth, 422 U.S. at 501 (citing Jenkins v. McKeithen, 395 U.S. 411, 421 (1969)). "[S]tanding allegations need not be crafted with precise detail, nor must the plaintiff prove his allegations of injury." Baur v. Veneman, 352 F.3d 625, 631 (2d Cir. 2003) (citing Lujan, 504 U.S. at 561). However, "if an injury is too abstract, the plaintiff's claim may not be capable of, or otherwise suitable for, judicial resolution." Id. at 632 (citing Raines, 521 U.S. 811, 819 (1997)).

B.      **Defendants' Objection**

As discussed above, Defendants object to the R&R on the grounds that the

Complaint does not demonstrate that Plaintiff has suffered an injury in fact.  (Def. Obj. (Dkt. No.

161) at 11-16)

With respect to the Global Opportunity Fund, Judge Lehrburger concludes that

"[d]iminished returns due to relative performance of investments and high fees" can constitute an

injury in fact.  (R&R (Dkt. No. 158) at 13)  Judge Lerhburger further concludes that Plaintiff can

establish that injury even though she did not directly invest in the Global Opportunity Fund,[5]

because "the value of her financial stake in the TDF necessarily was dependent on and directly

impacted by the Global Opportunity Fund's performance."  (Id.)  Because Plaintiff had pled facts

demonstrating that she personally suffered an injury in fact, Judge Lehrburger did not reach

Plaintiff's alternative argument premised on derivative standing.  (Id. at 14)

In their objection, Defendants repeat their argument that Plaintiff invested only in

the Verizon 2040 TDF, and not directly in the Global Opportunity Fund, and that this Court's

dismissal of Plaintiff's TDF claim requires that the instant motion be denied.  (Def. Obj. (Dkt.

No. 161) at 16, 18; see also Def. Opp. (Dkt. No. 150) at 18-19)

In support of their objection, Defendants argue that (1) the Complaint does not

plead factual allegations demonstrating that the Verizon 2040 TDF **s**uffered diminished returns

as a result of the allocation to the Global Opportunity Fund; and (2) Judge Lehrburger did not

acknowledge that there must be a causal link between Plaintiff's breach of fiduciary duty claim

and her alleged injury; Plaintiff's injury must be "'a result of' her claim for alleged 'breach of

---

[5]  Plaintiff's investment in the Global Opportunity Fund was the result of her choice to invest in
the Verizon 2040 TDF, which automatically allocated a portion of her investment to the Global
Opportunity Fund.  (See Cmplt. (Dkt. No. 1) ¶ 71)

fiduciary duty conferred by ERISA.'"  (See Def. Obj. (Dkt. No. 161) at 12, 17 (quoting Kendall,

561 F.3d at 120))  Defendants further contend that Plaintiff cannot establish standing by seeking

relief derivatively for the Plan.  (Id. at 18 (citing Thole v. U.S. Bank N. Am., 140 S.Ct. 1615,

1621 (2020)))

        Plaintiff counters that her "injury-in-fact takes the form of reduced retirement

benefits in her Plan account from the underperformance and excessive fees of the Global

Opportunity Fund."  (Pltf. Resp. (Dkt. No. 162) at 9)  According to Plaintiff, she "suffered the

same diminished returns as any other participant who invested in the Global Opportunity Fund

independently of the TDFs," because the alleged fiduciary breach diminished "'the ultimate

amount of money'" she should have received.  (Id. at 9, 11 (second quotation from Thole, 140 S.

Ct. at 1619))  Plaintiff further contends that, in the Court's order addressing Defendants' motion

to dismiss, the Court "specifically pointed to the inclusion of the Global Opportunity Fund in the

TDFs as an example of Defendants' imprudence," describing the Fund as a "core asset" of the

Plan.  (Id. at 12 (citing September 28, 2017 Order (Dkt. No. 70) at 18))  In sum, Plaintiff asserts

that the Court's dismissal of the TDF claim has no bearing on whether she can assert standing for

a claim premised on Defendants' alleged failure to prudently monitor the performance of the

Global Opportunity Fund and to take corrective action once it became clear that the Fund was

underperforming.  (Id. at 13)

    **C.**    **Analysis**

        As the R&R points out, "[s]tanding in an ERISA action has both constitutional

and statutory requirements."  (R&R (Dkt. No. 158) at 11)  Defendants do not contend that

Plaintiff lacks statutory standing, which is conferred upon "'a participant, beneficiary, or

fiduciary' of a retirement plan to seek relief under ERISA § 409 for breach of fiduciary duty."

(Id. at 12 (quoting ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2))  This Court agrees with Judge Lehrburger that "Plaintiff unquestionably has statutory standing under ERISA."  (Id.)

As to constitutional standing, in their objection, Defendants largely repeat the arguments they made before Judge Lehrburger.  Defendants contend that the TDFs performed well (Def. Obj. (Dkt. No. 161) at 9; Def. Opp. (Dkt. No. 150) at 20), and assert that this Court's dismissal of Plaintiff's fiduciary breach claim based on mismanagement of the TDFs requires that the instant class certification motion be denied.  (Def. Obj. (Dkt. No. 161) at 9-10; Def. Opp. (Dkt. No. 150) at 19).  To the extent Defendants merely rehash arguments made before Judge Lehrburger, their objection does not warrant de novo review.  See IndyMac Bank, 2008 WL 4810043, at *1.

Defendants first argue that Plaintiff has not offered "evidence that the [TDFs] would have performed better had Verizon removed the Global Opportunity Fund from the Plan." (Def. Obj. (Dkt. No. 161) at 12 n.33 (emphasis omitted))  According to Defendants, the allegation that the TDFs suffered diminished returns as a result of including the Global Opportunity Fund is "pure speculation."  (Id. at 12)  Defendants further contend that Plaintiff cannot show injury in fact because, as a whole, the TDFs "performed well" and were prudently managed.  (Id. at 13-14)

As an initial matter, and as Judge Lehrburger states, the Complaint's allegations are presumed true for purposes of evaluating Plaintiff's standing.  (R&R (Dkt. No. 158) at 14 (citing Denny, 443 F.3d at 263)); see also Warth, 422 U.S. at 501.  As noted above, "standing allegations need not be crafted with precise detail, nor must the plaintiff prove his allegations of injury."  Baur, 352 F.3d at 631 (citing Lujan, 504 U.S. at 561).  And while "'ERISA . . . permits a plaintiff to recover only those losses to the plan resulting from the defendant's breach,'"

Trustees of Upstate N.Y. Eng'r Pension Fund v. Ivy Asset Mgmt., 131 F. Supp. 3d 103, 121 (S.D.N.Y. 2015), aff'd, 843 F.3d 561 (2d Cir. 2016) (quoting In re State St. Bank & Trust Co. Fixed Income Funds Inv. Litig., 842 F. Supp. 2d 614, 655 (S.D.N.Y. 2012) (citing 29 U.S.C. § 1109(a))), "'ERISA does not define loss. . . . [B]y providing for the recovery of losses, [the statute] primarily seeks to undo harm that may have been caused a pension plan by virtue of the fiduciaries' acts.'" Id. (quoting Donovan v. Bierwirth, 754 F.2d 1049, 1052, 1056 (2d Cir. 1985)).

Moreover, a diminished return on an investment is a harm for which a plan participant may recover under ERISA. Bekker v. Neuberger Berman Group, LLC, No. 16 CV 6123-LTS-BCM, 2018 WL 4636841, at *4 (S.D.N.Y. Sept. 27, 2018). As Bekker explains,

> [d]iminished returns relative to available alternative investments and high fees represent concrete injuries, implicating a financial loss in comparison to what a plaintiff might have received but for the defendant's alleged breach of duty, which can support a cognizable injury regardless of whether the plaintiff suffered an actual loss on his investment or simply realized a more modest gain.

Id.[6] Defendants do not, and could not credibly argue, that diminished returns are insufficient to assert standing. See Fillmore E. BS Fin. Subsidiary LLC v. Capmark Bank, No. 11 Civ. 4491 PGG, 2013 WL 1294519, at *8 (S.D.N.Y. Mar. 30, 2013), aff'd, 552 F. App'x 13 (2d Cir. 2014) ("[I]t is enough that [plaintiff] has pleaded facts sufficient to demonstrate that its economic position has been materially impaired by reason of [defendant's] misconduct." (internal quotation mark and citation omitted).

---

[6] Defendants contend that Bekker is not on point because in that case, unlike here, "plaintiff actually invested directly in the specific fund at issue." (Def. Obj. (Dkt. No. 161) at 16) That distinction does not bear on whether diminished return is a cognizable injury. Nor does it bear on whether Plaintiff has standing, as is discussed below.

Defendants instead contend that because the TDFs "performed well," no injury in fact can be proven. (Def. Obj. (Dkt. No. 161) at 12-13) As an initial matter, the allegation that the TDFs "performed well" is not pled in the Complaint, and this Court cannot assume the truth of Defendants' assertion – in effect, an opinion – in connection with the instant motion. Moreover, as Bekker makes clear, Plaintiff is not required to show an "actual loss"; an allegation that a plan participant "realized a more modest gain" because of defendant's alleged breach is sufficient for constitutional standing. Bekker, 2018 WL 4636841, at *4.

Here, Plaintiff alleges that the Global Opportunity Fund's performance was "persistently poor" and that the Fund had "the highest expense ratio of any of the Verizon Plans' investment choices." (Cmplt. (Dkt. No. 1) at ¶¶ 70-71) The Complaint goes on to allege that the Plan "incur[red] losses from diminution of investment returns as well as excessive fees" because of "Defendants' failure to adequately monitor the performance of the Global Opportunity Fund and the failure to take any corrective action regarding that fund despite obvious and long-term underperformance." (Id. at ¶ 128) These allegations are sufficient to demonstrate constitutional standing.

As to Defendants' argument that Judge Lehrburger did not require Plaintiff to plead causation (Def. Obj. (Dkt. No. 161) at 17), the Complaint pleads that the Global Opportunity Fund was "retained . . . as part of the asset allocation mix for the TDFs" despite its poor performance over many years, and that Defendants' failure to monitor the performance of the Fund and to take corrective action constitutes a breach of fiduciary duty. (Cmplt. (Dkt. No. 1) at ¶¶ 70-71, 76, 104, 127-28) Indeed, the Complaint alleges that "the allocation to the Global Opportunity Fund within the TDF family increase[d] over time," notwithstanding the continued poor performance of the Fund. (Id. at ¶ 71) The Complaint asserts that Plan participants' losses

are thus "attributable to their direct and indirect investments in the Global Opportunity Fund." (Id. at ¶ 104)

Defendants do not dispute that the Global Opportunity Fund was included as part of the basket of assets that make up the TDFs. Defendants instead argue, without explanation, that "[t]he fact that the Global Opportunity Fund comprised some small portion of the [TDF] investments does not mean that Plaintiff has alleged an injury resulting from an alleged breach." (Def. Obj. (Dkt. No. 161) at 18) And Defendants make this argument despite conceding that "the return on Plaintiff's investment in the [Verizon 2040 TDF] may have been impacted 'indirectly' by the fact that a small portion of that Fund was invested in the Global Opportunity Fund. . . ." (Id. at 6) According to Defendants, this "indirect" impact is "not enough" for "constitutional standing." (Id.)

Defendants offer no case law in support of their argument, and this Court is aware of no authority for the proposition that a plan participant whose investment is impacted by an alleged breach of fiduciary duty lacks standing to assert the breach.

In sum, Plaintiff has adequately alleged that she was personally injured by the alleged breach of fiduciary duty arising from the mismanaged investment in the Global Opportunity Fund. She therefore has established constitutional standing.

## III.   **RULE 23 REQUIREMENTS**

As noted above, Defendants have not objected to Judge Lehrburger's findings regarding Rule 23 requirements. Accordingly, this Court reviews those findings for clear error. See Gilmore, 2011 WL 611826, at *1.

### A.   **Applicable Law**

"[Federal Rule of Civil Procedure] 23(a) sets forth the requirements for class certification and requires a potential class representative to show:  (1) the class is so numerous

14

that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Robidoux v. Celani, 987 F.2d 931, 935 (2d Cir. 1993).

"If those criteria are met, the district court must next determine whether the class can be maintained under any one of the three subdivisions of Rule 23(b)." McLaughlin v. Am. Tobacco Co., 522 F.3d 215, 222 (2d Cir. 2008), partially abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639 (2008).

Here, Plaintiff contends that the proposed class can be maintained under Rule 23(b)(1), which "applies . . . .where individual adjudications 'as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.'" Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2558 n.11 (2011) (quoting Rule 23(b)(1)(B)).

"[A] district judge may certify a class only after making determinations that each of the Rule 23 requirements has been met." In re Initial Pub. Offering Sec. Litig., 471 F.3d 24, 41 (2d Cir.2006). "[S]uch determinations can be made only if the judge resolves factual disputes relevant to each Rule 23 requirement . . . ." Id. "A motion for class certification should not, however, become a mini-trial on the merits." Katz v. Image Innovations Holdings, Inc., No. 06 CIV. 3707(JGK), 2010 WL 2926196, at *2 (S.D.N.Y. July 22, 2010) (citing Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-78 (1974)).

"The dispositive question is not whether the plaintiff has stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 have been met." Lewis Tree Serv., Inc. v. Lucent Tech., 211 F.R.D. 228, 231 (S.D.N.Y. 2002) (citing Eisen, 417

15

U.S. at 178 (citing <u>Miller v. Mackey Int'l</u>, 452 F.2d 424, 427 (5th Cir. 1971))).  "The Rule 23 requirements must be established by at least a preponderance of the evidence," <u>Brown v. Kelly</u>, 609 F.3d 467, 476 (2d Cir. 2010) (citation omitted), and "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule . . . ."  <u>Wal-Mart Stores, Inc.</u>, 131 S. Ct. at 2551.

   A. <u>**Analysis**</u>

    As to numerosity, Judge Lehrburger finds that "[t]he putative class includes tens of thousands, and possibly more than 200,000 participants."  Accordingly, the class is "sufficiently numerous that joinder of all its members would be impracticable."  (R&R (Dkt. No. 158) at 15) (citing <u>Sacerdote v. New York University</u>, 16-cv-6284 (KBF), 2018 WL 840364, at *3 (S.D.N.Y. Feb. 13, 2018)))

    Judge Lehrburger also finds that "the proposed class [members] share common issues of law and fact" with Plaintiff, a "'central'" feature of breach of fiduciary duty claims under ERISA.  (<u>Id.</u> at 15-16 (quoting <u>Cunningham v. Cornell University</u>, 16-cv-6526 (PKC), 2019 WL 275827, at *5 (S.D.N.Y. Jan. 22, 2019)))

    As to typicality, Judge Lehrburger finds "'that the disputed issues of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class,'" because "Defendants' alleged mismanagement of the Global Opportunity Fund and resulting injury is the basis for the claims of all members."  (<u>Id.</u> at 16 (quoting <u>Mazzei v. Money Store</u>, 829 F.3d 260, 272 (2d Cir. 2016)))

    Defendants do not dispute that Plaintiff has established the first three elements for class certification under Rule 23, and this Court finds no clear error in this portion of the R&R.

    As to ascertainability, the Second Circuit requires "district courts to consider whether a proposed class is defined using objective criteria that establish a membership with

definite boundaries." In re Petrobras Sec., 862 F.3d 250, 269 (2d Cir. 2017).  Plaintiff's proposed class period begins on April 1, 2010, when – according to Plaintiff – it "became 'immediately apparent' that" Defendants should have removed the Global Opportunity Fund as an investment option, and ends in August 2016, when Defendants removed the Fund as an investment option.  (R&R (Dkt. 158) at 18 (quoting Pltf. Br. (Dkt. No. 143) at 15 n.5))

Defendants initially challenged the proposed class as not ascertainable, arguing that Plaintiff has not alleged a defined time frame within the three-year statute of limitations for ERISA claims.  (Id. at 18-19)  As explained in the R&R, Defendants abandoned their statute of limitations argument in light of Intel Corp. Inv. Pol'y Comm. v. Sulyma, 140 S. Ct. 768 (2020). (R&R (Dkt. No. 158) at 10 n.9)  Given these circumstances, "the premise of Defendants' ascertainability argument no longer holds."  (Id. at 18)  And because "Plaintiff has proposed start and end dates . . . based on the record," Judge Lehrburger concludes that the proposed class is ascertainable.  (Id. at 19)  This Court agrees.

Rule 23(a)(4) requires a court to find that the named plaintiff "will fairly and adequately protect the interests of the class."  Defendants challenge Plaintiff's adequacy based on her lack of knowledge about the case and dependence on counsel.  (Def. Opp. (Dkt. No. 150) at 26-28)  Rather than heed "'attacks on the adequacy of a class representative based on [her] ignorance,'" however, the Second Circuit instead "focuses on whether the class representative has 'so little knowledge or involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interest of the attorneys.'" (R&R (Dkt. No. 158) at 20 (first quoting In re Flag Telecom Holdings, Ltd. Sec. Litig., 574 F.3d 29, 42 (2d Cir. 2009); second quoting Maywalt v. Parker & Parsley Petroleum Co., 67 F.3d 1072, 1077-78 (2d Cir. 1995))

In his R&R, Judge Lehrburger thoroughly considers the evidence on this point, including Plaintiff's deposition testimony, in which she "demonstrated a lack of familiarity with some basic information about the case."  (Id. at 21)  Judge Lehrburger finds, however, that Plaintiff is "aware of fundamental aspects of the case," and that she has "demonstrate[ed] [an] interest and engagement in the litigation [that] is considerable."  (Id. at 24)  Given these circumstances, Judge Lehrburger concludes that Plaintiff is an adequate class representative.  (Id. at 24-25)  The Court sees no clear error in Judge Lehrburger's careful analysis and thoughtful conclusion.

In sum, the Court finds no clear error in Judge Lehrburger's determination that Rule 23 requirements are met.  Accordingly, the class will be certified and is defined as follows:

> All participants or beneficiaries of the Verizon Savings Plan for Management Employees (the "Plan") for the period from April 1, 2010 to August 1, 2016, excluding the Defendants, other VIMCO or Verizon employees with responsibility for the Plan's investment or administrative functions, and members of the Verizon Board of Directors, who had any portion of their accounts in the Plan invested directly in the Global Opportunity Fund or indirectly in the Global Opportunity Fund through investment in any of the Verizon Target Date Funds.

## IV.  APPOINTMENT OF COUNSEL

Defendants have not objected to Judge Lehrburger's conclusions in the R&R regarding appointment of counsel.  Accordingly, this Court's review is for clear error.  See Gilmore, 2011 WL 611826, at *1.

In determining whether proposed counsel is competent to represent a class, courts consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(A).

Courts also consider "any other matter pertinent to class counsel's ability to fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B).

Here, Plaintiff proposes that three law firms serve as class counsel.  Defendants have not challenged the appointment of any of the firms.  Judge Lehrburger concludes that "[a]ll factors [of Rule 23(g)(1)(A)] weigh in favor" of appointing the firms as class co-counsel, and recommended approving them.  (R&R (Dkt. No. 158) at 29-30)  This Court agrees, and adopts his recommendation.  Accordingly, the law firms of Schneider Wallace Cottrell Konecky Wotkyns LLP, Edgar Law Firm LLC, and Glancy Prongay & Murray LLP are approved as class co-counsel.

## **CONCLUSION**

For the reasons stated above, the R&R is adopted in its entirety.  Plaintiff's motion for class certification and appointment of counsel is granted.  The Clerk of Court is directed to terminate the motion (Dkt. No. 142).

Dated: New York, New York
       September 29, 2020

SO ORDERED.

Paul G. Gardephe
United States District Judge