# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MELINA N. JACOBS, On Behalf of Herself and All Others Similarly Situated, | No.: 16-cv-1082 (PGG) (RWL) |
| Plaintiff, | |
| v. | |
| VERIZON COMMUNICATIONS, INC.; VERIZON INVESTMENT MANAGEMENT CORP.; THE VERIZON EMPLOYEE BENEFITS COMMITTEE; MARC C. REED; MARTHA DELEHANTY; ANDREW H. NEBENS; CONNIA NELSON; SHANE SANDERS; ROBERT J. BARISH; and DONNA C. CHIFFRILLER, | |
| Defendants. | |

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES.................................................................................................iii

I.   INTRODUCTION ...............................................................................................1

II.  BACKGROUND ................................................................................................1

    A.   The Global Opportunity Fund.................................................................1

    B.   Procedural History .................................................................................2

III. THE SETTLEMENT ..........................................................................................3

    A.   Negotiation of the Settlement .................................................................3

    B.   The Proposed Settlement ........................................................................4

    C.   Timeline ..................................................................................................5

IV.  THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT,
    AS IT SATISFIES THE REQUIREMENTS OF RULE 23(e)(2) AND
    GRINNELL.........................................................................................................6

    A.   Standard of Review .................................................................................6

    B.   Plaintiff Satisfies the Requirements of Fed. R. Civ. P. 23(e)(2) ...........7

        1.   Rule 23(e)(2)(A): Plaintiff and Class Co-Counsel
            Have Adequately Represented The Class ...................................7

        2.   Rule 23(e)(2)(B): The Proposed Settlement Is the Result of
            Good-Faith, Arm's-Length Negotiations ...................................7

        3.   Rule 23(e)(2)(C)(i): The Relief Provided by the Settlement
            Is Adequate Given The Costs, Risks, And Delay of Trial And
            Appeal ........................................................................................8

        4.   Rule 23(e)(2)(C)(ii): Rule 23(e)(2)(C)(ii):
            The Proposed Method for Distributing Relief Is Effective.......9

        5.   Rule 23(e)(2)(C)(iii): Class Co-Counsel's
            Fee Request Is Fair and Reasonable ....................................... 10

        6.      Rule 23(e)(2)(D): All Class Members Are
Treated Equitably Relative to Each Other .............................................. 11

  C.     The Grinnell Factors Are Also Met ........................................................... 13

        1.      The Complexity, Expense, and Likely Duration of the Litigation ........... 13

        2.      The Reaction of the Class to the Settlement ............................................ 14

        3.      The Stage of the Proceedings and Discovery Completed ....................... 15

        4.      The Risks of Establishing Liability ........................................................... 15

        5.      The Risks of Establishing Damages ......................................................... 17

        6.      The Risks of Maintaining the Class Action through Trial ....................... 19

        7.      The Ability of Defendant to Withstand a Greater Judgment ................... 19

        8.      The Reasonableness of the Settlement in Light of the
Best Possible Recovery and the Attendant Risks of Litigation .............. 20

V.    THE PROPOSED NOTICE PLAN SHOULD BE APPROVED ................................... 23

  A.     The Proposed Notice Plan Meets the Requirements of Due
Process ..................................................................................................... 23

  B.     Description of the Notice ........................................................................... 24

VI.   CONCLUSION ............................................................................................... 25

# TABLE OF AUTHORITIES

Cases                                                                                          Page

*Abbott v. Lockheed Martin Corp.*,
 2015 U.S. Dist. LEXIS 93206 (S.D. Ill. July 17, 2015) ........................................ 4

*Allen v. Dairy Farmers of Am., Inc.*,
 2011 WL 1706778 (D. Vt. May 4, 2011) ............................................................. 23

*Bannerman v. Air-Sea Packing Group, Inc.*,
 2020 WL 408350 (S.D.N.Y. Jan. 24, 2020) ......................................................... 10

*Beesley v. Int'l Paper Co.*,
 2014 U.S. Dist. LEXIS 12037 (S.D. Ill. Jan. 31, 2014)......................................... 4

*Bonime v. Doyle*,
 416 F. Supp. 1372 (S.D.N.Y. 1976)..................................................................... 18

*Bourlas v. Davis Law Assocs.*,
 237 F.R.D. 345 (E.D.N.Y. 2006) ......................................................................... 15

*Cates v. Trs. of Columbia Univ.*,
 2021 U.S. Dist. LEXIS 200890 (S.D.N.Y. Oct. 18, 2021). .................................... 4

*City of Detroit v. Grinnell Corp.*,
 495 F.2d 448 (2d Cir. 1974)..........................................................................passim

*City of Providence v. Aeropostale, Inc.*,
 2014 WL 1883494 (S.D.N.Y. May 9, 2014) ......................................................... 8

*D'Amato v. Deutsche Bank*,
 236 F.3d 78 (2d Cir. 2001).................................................................................. 19

*Donovan v. Bierwirth*,
 754 F.2d 1049 (2d Cir. 1985)......................................................................... 17, 18

*Goldberger v. Integrated Res., Inc.*,
 209 F.3d 43 (2d Cir. 2000)....................................................................... 6, 10, 11

*Haddock v. Nationwide Fin. Serv., Inc.*,
 No. 3:01-cv-1552 (SRU) (D. Conn. Apr. 9, 2015) .............................................. 11

*Handschu v. Special Servs. Div.*,
 787 F.2d 828 (2d Cir. 1986)................................................................................ 23

*Hecker v. Deere & Co.*,
  556 F.3d 575 (7th Cir. 2009) ................................................................. 4

*In re Alloy, Inc. Sec. Litig.*,
  2004 WL 2750089 (S.D.N.Y. Dec. 2, 2004) ...................................... 13

*In re Am. Bank Note Holographics*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001)................................................ 12

*In re Am. Int'l Group, Inc. ERISA Litig. II*,
  No. 08-cv- 05722 (S.D.N.Y. June 1, 2015) ...................................... 21

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
  2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)........................................ 12

*In re AOL Time Warner, Inc. Secs. & ERISA Litig.*,
  2006 WL 3057232 (S.D.N.Y. Oct. 25, 2006) .................................... 11

*In re Bristol-Myers Squibb Co. ERISA Litig.*,
  No. 1:02-cv-10129-LAP (S.D.N.Y 2005)......................................... 21

*In re CIGNA Corp. ERISA Litig.*,
  No. 2:03-cv-00714 (E.D. Pa.) ........................................................... 21

*In re Cont'l Ill. Sec. Litig.*,
  962 F.2d 566 (7th Cir. 1992) ............................................................... 4

*In re Enron Corp. Secs., Deriv. & "ERISA" Litig.*,
  228 F.R.D. 541 (S.D. Tex. 2005)................................................. 13, 22

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ............................................... passim

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
  209 F.R.D. 94 (E.D. Pa. 2002)........................................................... 14

*In re Indep. Energy Holdings PLC*,
  2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003)................................ 12

*In re Initial Pub. Offering Sec. Litig.*,
  671 F. Supp. 2d 467 (S.D.N.Y. 2009).......................................... 11, 14

*In re Milken & Assocs. Sec. Litig.*,
  150 F.R.D. 46 (S.D.N.Y. 1993) ................................................... 17, 20

iv

*In re PaineWebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997) ........................................................................ 8, 11, 12

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
   163 F.R.D. 200 (S.D.N.Y. 1995) ................................................................................ 7

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
   1995 WL 798907 (S.D.N.Y. Nov. 20, 1995) ............................................................ 22

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
   164 F.R.D. 362 (S.D.N.Y. 1996) ........................................................................ 23, 24

*In re Textron, Inc. ERISA Litig.*,
   No. 1:09-cv-00383 (D.R.I. Nov. 6, 2013) ................................................................ 21

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
   718 F. Supp. 1099 (S.D.N.Y. 1989) ........................................................................ 20

*In re U.S. Foodservice, Inc. Pricing Litig.*,
   No. 3:07-md-1894 (D. Conn. Dec. 9, 2014) ............................................................ 11

*In re Veeco Instruments Inc. Sec. Litig.*,
   2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ............................................................ 20

*In re Warner Chilcott Ltd. Sec. Litig.*,
   2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008) ............................................................ 7

*In re WorldCom, Inc. ERISA Litig.*,
   2004 WL 2338151 (S.D.N.Y. Oct. 18, 2004) .......................................................... 14

*Jacobs v. Verizon Commc'ns Inc.*,
   2023 WL 3027311 (S.D.N.Y. Apr. 20, 2023) .......................................................... 2, 3

*Kruger v. Novant Health, Inc.*,
   2016 U.S. Dist. LEXIS 193107 (M.D.N.C. Sept. 29, 2016) ...................................... 4

*LaRue v. DeWolff, Boberg & Assocs., Inc.*,
   552 U.S. 248 (2008) ................................................................................................ 17

*McMahon v. Olivier Cheng Catering & Events LLC*,
   2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) .......................................................... 19

*McReynolds v. Richards-Cantave*,
   588 F.3d 790 (2d Cir. 2009) ...................................................................................... 6

*Millsap v. McDonnell Douglas Corp.*,
   2003 WL 21277124 (N.D. Okla. May 28, 2003) .................................................................. 9

*Milstein v. Huck*,
   600 F. Supp. 254 (E.D.N.Y. 1984) ..................................................................................... 13

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) ........................................................................................................... 23

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972) ......................................................................................... 8, 20

*Otte v. Life Ins. Co. of N. Am.*,
   No 1:09-cv-11537 (D. Mass. 2013) ................................................................................... 21

*Overby v. Tyco Int'l Ltd.*,
   No. 1:02-cv-01357-PB (D.N.H. 2009) ............................................................................... 21

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997) .......................................................................................... 9

*Schwartz v. Intimacy in New York LLC*,
   2015 WL 1360777 (S.D.N.Y. Sept. 16, 2016) ................................................................... 10

*Silva v. Little Fish Corp.*,
   2012 WL 2458214 (S.D.N.Y. May 1, 2012) ...................................................................... 10

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
   258 F. Supp. 2d 254 (S.D.N.Y. 2003) ................................................................................. 9

*Teachers' Ret. Sys. Of La. v. A.C.L.N., Ltd.*,
   2004 WL 1087261 (S.D.N.Y. May 14, 2004) ..................................................................... 8

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005) ............................................................................................. 6, 7

*Weigner v. City of New York*,
   852 F.2d 646 (2d Cir. 1988) ............................................................................................. 23

*Weinberger v. Kendrick*,
   698 F.2d 61 (2d Cir. 1983) ............................................................................................... 23

*Wilkerson v. Martin Marietta Corp.*,
   171 F.R.D. 273 (D. Colo. 1997) ......................................................................................... 9

Statutes

28 U.S.C. § 1715 ................................................................................................................ 5

Rules

Federal Rule of Civil Procedure 23(e) ................................................................. passim

Fed. R. Civ. P. 54(d) ......................................................................................................... 4

Other Authorities

4 ALBA CONTE & HERBERT B. NEWBERG,
      *NEWBERG ON CLASS ACTIONS* § 11:45 (4th ed. 2002) ................................................ 15

William B. Rubenstein,
      *NEWBERG ON CLASS ACTIONS*, §8.17 (5th ed. 2017) ................................................ 25

I.    **<u>INTRODUCTION</u>**

Plaintiff Melinda Jacobs respectfully submits this memorandum in support of her Unopposed Motion for Preliminary Approval of Class Settlement regarding the arm's-length settlement (the "Settlement") reached between Plaintiff and Defendants (collectively the "Parties") in the above-captioned class action litigation (the "Action"). The Settlement Agreement is attached as Exhibit A to the accompanying Declaration of James Bloom and Daniella Quitt (the "Joint Declaration"). Plaintiff agreed to the Settlement weeks before trial, after she completed fact and expert discovery, and prevailed on motions to dismiss the complaint, a contested motion for class certification, a motion for summary judgment, and motion to strike Plaintiff's expert.

The Settlement was the product of a full two days of mediation before a nationally recognized mediator Hunter Hughes. The Settlement, totaling $30 million, represents a substantial recovery for Plaintiff and participants of the Verizon Savings Plan for Management Employees (the "Plan"). The Settlement provides for the Class Members[1] to receive their allocations of the Settlement Fund as tax-deferred additions to their Plan accounts or in the form of roll-over into a tax-deferred individual retirement account, further enhancing the $30,000,000 monetary recovery.

II.   **<u>BACKGROUND</u>**

A.    **The Global Opportunity Fund**

The Global Opportunity Fund (sometimes referred to herein as the "Fund") was a hedge fund "fund of funds". *Jacobs v. Verizon Comm's Inc.*, 16-cv-1082 (PGG)(RWL), 2023 WL

---

[1]    Capitalized terms not otherwise defined herein shall have the same meaning ascribed to such terms in the Settlement Agreement.

3027311, at *2 (S.D.N.Y. Apr. 20, 2023) (the "S.J. Order"). The underlying funds in the Fund "used the Global Tactical Asset Allocation investment strategy, which 'seeks to add value, relative to its benchmark, by investing in the most attractive markets on a global basis, while simultaneously underweighting, or shorting, markets that are viewed by the fund managers as overvalued.'" *Id*. The Fund was included as part of the portfolio in many Target Date Funds ("TDFs") at issue. The Fund initially had a target rate of return, also known as a "hurdle rate", of 12%, which was subsequently lowered at least twice. *See id*. at *3. Plaintiff alleges that between 2007-2016, the Fund severely underperformed any of the hurdle rates, as its annualized net performance ranged from -10.32 % to 13.88%, with negative returns in three years. It remained negative from 2007-2009 and by the end of 2016 the Fund had earned an aggregate 1.4%. *Id*. at *6.

Plaintiff claims that Defendants[2] violated their fiduciary duty of prudence under Section 404(a) of the Employee Retirement Income Security Act of 1974 ("ERISA") by failing to adequately monitor the performance of the Global Opportunity Fund. Plaintiff alleges that Defendants failed to take any corrective action regarding the Fund despite obvious and long-term underperformance, including, failing to remove the Fund from the Plan. Plaintiff's claim was originally set out in Count II of the Complaint. [ECF No. 1]

### B.   Procedural History

On February 11, 2016, Plaintiff filed her complaint. [ECF No. 1] On October 26, 2016, Defendants moved to dismiss the Complaint. [ECF No. 52] After briefing by the parties, on

---

[2]      Defendants include Verizon Communications Inc. ("Verizon"), Verizon Investment Management Corp. ("VIMCO"), the Verizon Employee Benefits Committee (the "Benefits Committee"), Robert J. Barish, Donna C Chiffriller, Martha Delehanty, Andrew H Nebens, Connia Nelson, Marc C. Reed, and Shane Sanders.

2

September 28, 2017, the Court denied, in relevant respects, Defendants' motion to dismiss. [ECF No. 70] The parties then engaged in intensive fact and expert discovery. During the course of fact discovery, 18 depositions were taken, including depositions of five expert witnesses, and defendants produced more than 45,000 pages of documents. Joint Decl. at ¶ 6.

On November 12, 2019, Plaintiff moved for class certification. This Court referred the motion to the Magistrate Judge Lehrburger. After briefing by the parties and the deposition of the plaintiff, Magistrate Judge Lehrburger recommended certification of the class. [ECF No. 158] The Court also appointed the law firms of Schneider Wallace Cottrell Konecky Wotkyns LLP, Glancy Prongay & Murray LLP, and Edgar Law Firm LLC as Class Counsel. Though Defendants objected to the Report and Recommendation, the Court agreed with Magistrate Lehrburger and certified the class, with approximately 160,000 Class Members, on September 29, 2020 [ECF No. 163].

On March 26, 2021, Defendants moved for Summary Judgment [ECF No. 180], and also moved to strike Plaintiff's experts. [ECF No. 173] On April 20, 2023, the Court denied Defendants' motion for summary judgment and Defendants' motion to exclude Plaintiff's expert testimony. *See* S.J. Order, 2023 WL 3027311.On April 26, 2019, the Court set the trial date for July 10, 2023. [ECF No. 219]

III.   **THE SETTLEMENT**

A.   **Negotiation of the Settlement**

On June 1 and 2, 2023, the Parties participated in a two-day formal mediation in San Diego, California before Hunter Hughes, a well credentialed neutral third-party mediator who has mediated many ERISA class actions in the recent past, including cases alleging breaches of fiduciary duty. At the end of the second day, the Parties reached an agreement in principle to

settle all claims in the Action.. The arm's length nature of the negotiations, along with the substance of this Settlement, overwhelmingly support that the Settlement is fair, reasonable, and adequate.

B.   **The Proposed Settlement**

Under the Settlement, Defendants have agreed to make a payment of $30,000,000 to the Class in cash to be deposited at interest in a Qualified Settlement Fund. Settlement Agreement at Articles 2.23, 5.4.

Class Counsel will seek approval from the Court of their attorneys' fees not to exceed one-third (33 1/3%) of the Settlement, and will seek approval from the Court for reimbursement of the litigation costs and expenses advanced and carried by Class Counsel for the duration of this litigation. Class Counsel, *Id*. at Article 7.1. In addition, Plaintiff will also request a service award for the named plaintiff Melinda Jacobs not to exceed $30,000. *Id*. at Article 7.3.[3] Any awards or reimbursement, if granted by the Court, would be paid from the Gross Settlement Amount. *Id.* at

---

[3]      As this Court has recently noted: "[i]mportantly, all of the Class representatives faced the risk of a significant award of costs under Fed. R. Civ. P. 54(d) and 29 U.S.C. §1132(g) against them *personally* if the litigation was not successful. *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992). This risk is undeniable. In a similar ERISA class action claim that was unsuccessful, the court entered a judgment for costs against the class representatives for over $200,000. *Hecker v. Deere & Co.*, 556 F.3d 575, 591 (7th Cir. 2009) (upholding an order assessing costs against the named plaintiffs in the amount of $219,211). For these reasons, the Court finds that the requested case contribution awards [or $25,000 for each of 7 Class Representatives] are appropriate." *Cates v. Trs. of Columbia Univ.*, 2021 U.S. Dist. LEXIS 200890, at *22-23 (S.D.N.Y. Oct. 18, 2021). *Accord, Abbott v. Lockheed Martin Corp.*, 2015 U.S. Dist. LEXIS 93206 (S.D. Ill. July 17, 2015) (awarding six named plaintiffs $25,000 each for their contribution to a case concerning allegedly excessive fees in a 401(k) plan); *Kruger v. Novant Health, Inc.*, 2016 U.S. Dist. LEXIS 193107 (M.D.N.C. Sept. 29, 2016) (approving awards of $25,000 to each of the named plaintiffs in a 401(k) fee settlement); *Beesley v. Int'l Paper Co.*, 2014 U.S. Dist. LEXIS 12037 (S.D. Ill. Jan. 31, 2014) (awarding $25,000 to each of the six surviving named plaintiffs in 401(k) fee settlement). Additionally, Congress, in enacting ERISA, recognized the very real risk of retaliatory action by aggrieved employers prompting the addition of ERISA § 510, expressly prohibiting actions against employees for attempting to enforce their rights under ERISA.

7.1. The remaining Net Settlement Amount will be used to make settlement payments to the Class Members according to the Plan of Allocation, and to pay the expenses of the Settlement Administrator and one-half of the fees charged by the Independent Fiduciary. *Id*. at Article 6.1.

In exchange, Plaintiff and the Class will dismiss their Complaint and provide a release as set forth in detail in the Settlement Agreement. *Id*. at Article 8.

### C.     Timeline

| Event | Deadline |
|---|---|
| Pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, Defendants will send notice of the proposed Settlement | No later than 10 days after Plaintiff files the Motion for Preliminary Approval of the Settlement. |
| Date for Mailing of Notice | 45 days after filing of the Motion for Preliminary Approval. |
| Filing Date of Plaintiff's Application attorneys' fees and reimbursement of expenses costs | No later than 20 days after notice is mailed to the class. Settlement Agreement at Article 7.2. |
| Date to File any Objections by Class Members to Settlement | Postmarked no later than 20 days prior to the Fairness Hearing. *Id*. at Article 3.2.7. |
| Deadline for any party to file with the Court a response to an objection by a Class Member | No later than 20 days prior to the Fairness Hearing. *Id*. at Article 3.2.9. |
| Date for Plaintiff to file memorandum in support of final approval of the Settlement | No later than 28 days before the fairness hearing. *Id*. at Article 4.1. |
| Fairness Hearing | At least 110 calendar days following the filing of the Motion for Preliminary Approval. *Id*. at Article 3.2.6. |

## IV.     THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT, <u>AS IT SATISFIES THE REQUIREMENTS OF RULE 23(e)(2) AND *GRINNELL*</u>

### A.     Standard of Review

Fed. R. Civ. P. 23(e)(2), as revised in 2018, requires judicial approval of a class action settlement, and identifies factors that courts must consider in determining whether a class action settlement is "fair, reasonable, and adequate," including whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing Class Member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats Class Members equitably relative to each other.

In addition, the Second Circuit has set forth nine factors (known as the "*Grinnell* factors"), which overlap with those in Rule 23(e)(2), that a court should consider in deciding whether a proposed class action settlement is substantively fair, reasonable, and adequate:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974) *abrogated on separate grounds by Goldberger v. Integrated Res., Inc.,* 209 F.3d 43 (2d Cir. 2000) (citations omitted); *McReynolds v. Richards-Cantave*, 588 F.3d 790, 804 (2d Cir. 2009); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc,,* 396 F.3d 96, 117 (2d Cir. 2005). Although complete analysis of these factors is

required prior to final approval of a settlement, at the preliminary approval stage, "the Court need

only find that the proposed settlement fits 'within a range of possible approval'" to proceed. *In re

Prudential Sec. Inc. Ltd. P'Ships Litig.,* 163 F.R.D. 200, 210 (S.D.N.Y. 1995) (citation omitted);

*In re Warner Chilcott Ltd. Sec. Litig.,* 2008 WL 5110904, at \*2 (S.D.N.Y. Nov. 20, 2008) (same).

As demonstrated below, the Settlement satisfies both Rule 23(e)(2) and the *Grinnell*

factors.

### B.       Plaintiff Satisfies the Requirements of Fed. R. Civ. P. 23(e)(2)

#### 1.       Rule 23(e)(2)(A): Plaintiff and Class Counsel Have Adequately Represented The Class

Plaintiff and Class Counsel have vigorously advocated for the Class's interests for the

seven years this Action has been pending, and have obtained excellent results. Plaintiff's and

Class Counsel's decision to settle this case was informed by a thorough investigation of the

relevant claims and defenses, extensive fact and expert discovery, motion practice, consultation

with finance experts, and participation in settlement negotiations that led to the Settlement only

one month before trial. Accordingly, this factor weighs in favor of approval.

#### 2.       Rule 23(e)(2)(B): The Proposed Settlement Is the Result of Good-Faith, Arm's-Length Negotiations

Courts presume that a proposed settlement is fair and reasonable when it is the result of

arm's-length negotiations between counsel. *See Wal-Mart*, 396 F.3d at 116 (a "presumption of

fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length

negotiations between experienced, capable counsel after meaningful discovery") (quoting

MANUAL FOR COMPLEX LITIGATION, at § 30.42). As described above, the proposed

Settlement was reached only after extensive, arm's-length negotiations, Moreover, after seven

years of litigation, Plaintiff and Class Counsel clearly had an adequate basis for assessing the

strength of the Class's claims and Defendants' defenses thereto when they agreed to the proposed Settlement. These circumstances confirm the presumption of fairness of the proposed Settlement. The Court can give "great weight" to the opinion of experienced and non-collusive counsel in determining whether to preliminarily approve a settlement. *See, e.g., In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y.), *aff'd,* 117 F.3d 721 (2d Cir. 1997).

### 3. Rule 23(e)(2)(C)(i): The Relief Provided by the Settlement Is Adequate Given The Costs, Risks, And Delay of Trial And Appeal

In assessing a settlement, courts consider "not whether the settlement represents the best possible recovery, but how the settlement relates to the strengths and weaknesses of the case." *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *9 (S.D.N.Y. May 9, 2014), *aff'd*, 607 F. App'x 73 (2d Cir. 2015). A court need only determine whether the settlement falls within a range of reasonableness that "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

Class Counsel, based on their combined, unique experience in complex ERISA actions (*see* Joint Decl., at ¶ 7) are confident that they have "a clear view of the strengths and weaknesses of their case []," *Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004) (quotation omitted), and are well aware of the range of possible outcomes at trial. In assessing the merits of the proposed Settlement, Class Counsel considered the risks and uncertainties of proceeding with the litigation and ultimately prevailing at trial in light of various factors, some of which were made clearer as the Action approached trial. *See* Joint Decl., at ¶ 7. While Plaintiff survived a summary judgment motion, and the Action was headed to trial, Plaintiff still faced significant risks at trial, as discussed in below Sections C.4 (discussing liability) and C.5 (discussing damages).

Moreover, even if the Class were to receive a favorable judgment at trial, the additional delay through trial, post-trial motions, and the appellate process could deny the Class any actual recovery for years, further reducing the value of the judgment. *See Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("[E]ven if a shareholder or Class Member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks and would in light of the time value of money, make future recoveries less valuable than in this current recovery."). Furthermore, a winning verdict does not provide absolute assurance of recovery, where post-trial motions and appeals are likely. *See, e.g., Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1449 (11th Cir. 1997) (reversing on appeal $81 million jury verdict and dismissing case with prejudice in securities action.)[4] Therefore, this Court should find that this factor also supports preliminary approval of the Settlement.

### 4.      Rule 23(e)(2)(C)(ii): Rule 23(e)(2)(C)(ii): The Proposed Method for Distributing Relief Is Effective

The Agreement includes well-established procedures in ERISA cases for efficiently distributing the non-reversionary Net Settlement Fund to all approximately 160,000 members of the Class in a simple and direct way. Many Class Members do not have to prove anything, but will automatically receive their additional benefit which will be deposited directly into their Plan

---

[4]      Delays, whether due to appeals or otherwise, impose a particular hardship to the Class here, where many of the Class Members have likely retired or are approaching retirement age, given that the retirement investments at issue here are tied to a class period that began seven years ago, in February 2016, and that many of the investors may have been closer to retirement age. *See Millsap v. McDonnell Douglas Corp.*, 2003 WL 21277124, at *13 (N.D. Okla. May 28, 2003) ("Avoiding delay is particularly important in this case due to the length of the litigation to date and the presence of an aging class."); *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 288 (D. Colo. 1997) (stating that the "ages of many Class Members also weigh heavily in favor of immediate recovery" and that "monetary provisions of the Consent Decree are more valuable if implemented now than if victims must wait an additional number of years").]

accounts and enhance their retirement savings. *See* Settlement Agreement at Article 6.2.1. Other Class Members who do not have an active account will be able obtain their *pro rata* portion of the Settlement Fund through a direct rollover into an individual retirement account. *See id*. at Articles 6.2.2 and 6.2.3.

### 5.      Rule 23(e)(2)(C)(iii): Class Counsel's Fee Request Is Fair and Reasonable

At this stage of the proceedings, the Court is not called upon—nor in a position before Class Counsel file their fee petition and the Class reacts to it—to rule on Class Counsel's request for an award of attorneys' fees up to one-third of the total Settlement Amount. Nevertheless, it is clear that a one-third fee award here would be reasonable and well-deserved, as well as consistent with "a jealous regard to the rights of those who are interested in the fund," *Goldberger*, 209 F.3d at 53, in light of (1) the immense time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation and extraordinary results obtained, (5) the requested fee in relation to the recovery; and (6) public policy considerations. *Id*. at 50. As this Court has specifically noted, a fee of one-third is reasonable. *Schwartz v. Intimacy in New York LLC*, 2015 WL 1360777, at *5-6 (S.D.N.Y. Sept. 16, 2016) ("[a]fter *Goldberger*, when reviewing attorneys' fees under the percentage-of-the-fund method, courts in this district have found attorneys' fees of one-third of the settlement amount to be reasonable").[5]

---

[5]      This Court has frequently award fees of one-third in class action settlements. *See Bannerman v. Air-Sea Packing Group, Inc*., 2020 WL 408350, at *1 (S.D.N.Y. Jan. 24, 2020); *Silva v. Little Fish Corp*., 2012 WL 2458214, at *2-3 (S.D.N.Y. May 1, 2012); *McMahon v. Olivier Cheng Catering and Events LLC*, 2010 WL 2399328, at *7 (S.D.N.Y. Mar. 3, 2010) (citing cases noting that "Class Counsel's request for 33% of the Fund is reasonable under the circumstances of this case and is consistent with the norms of class litigation in this circuit").

Class Counsel achieved an exceptional result against a formidable opponent represented by first-rate legal counsel in a case that from its inception posed very high risks of non-recovery. Under *Goldberger's* "fair percentage of the settlement [or recovery]" test, (209 F.3d at 50), courts evaluate the reasonableness of requested fee by looking to awards found reasonable in comparable cases.[6] As will also be shown in the forthcoming application, the requested award compares very favorably with awards in large ERISA and other class action cases where courts, including many within this Circuit, have awarded attorneys' fees that equal or exceed the one-third fee sought here, including in circumstances that do not approach the efficacy and value that Class Counsel's tenacity and commitment created for the Class here.[7]

### 6. Rule 23(e)(2)(D): All Class Members Are Treated Equitably Relative to Each Other

As per the Plan of Allocation, each Class Member shall be treated equitably relative to one another. Review of a plan of allocation falls within this Court's broad supervisory power over the settlement, its proceeds, and their ultimate disposition. *In re PaineWebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 132, (S.D.N.Y) ("The review of the plan of allocation is squarely within the

---

[6]     Class Counsel submit that as a matter of public policy, the requested fee of up to one-third is necessary to ensure that counsel in future meritorious cases will not hesitate to be equally persistent and press forward as Class Counsel did here to achieve maximum recovery for their clients despite the complications, difficulties, and risk. *See In re AOL Time Warner, Inc. Secs. & ERISA Litig.*, 2006 WL 3057232, at *15 (S.D.N.Y. Oct. 25, 2006) (citing Goldberger) ("the Court's major focus in fashioning a fee award is encouraging the bar to undertake future risks for the public good in tomorrow's cases").

[7]     *See, e.g., Haddock v. Nationwide Fin. Serv.*, Inc., 01-cv-1552, Dkt. 601 (D. Conn. Apr. 9, 2015) (awarding 35% of a $140 million settlement in an ERISA case that settled before any ruling on summary judgment); *In re U.S. Foodservice, Inc. Pricing Litig.*, 07-md-1894, Dkt. 521 at 5 (D. Conn. Dec. 9, 2014) (awarding one-third of a $297 million fund after a lengthy litigation but prior to any ruling on summary judgment and where the recovery was apparently only a small fraction of the class's damages); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 510 (S.D.N.Y. 2009) (granting one-third of a $586 million settlement where investors recouped an estimated 2% of losses).

discretion of the district court"), *aff'd*, 117 F.3d 721 (2d Cir. 1997). The standard for reviewing a proposed plan of allocation is the same as the standards of fairness and reasonableness that apply to review of proposed settlements. "[T]he adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information." *PaineWebber*, 171 F.R.D. at 133.

As with the Settlement, the opinion of experienced and informed counsel carries considerable weight. *In re Indep. Energy Holdings PLC*, 2003 WL 22244676, at *4-5 (S.D.N.Y. Sept. 29, 2003). An allocation formula need only have a reasonable basis, particularly if recommended by experienced class counsel. *In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 429-30 (S.D.N.Y. 2001); *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 WL 903236, at *17 (S.D.N.Y. Apr. 6, 2006) (noting class counsel's "experience and competency" in approving a plan of allocation that provided "recovery to damaged investors on a *pro rata* basis according to their recognized claims of damages.")

The goal of a distribution plan is fairness to the class as a whole, taking into consideration the strength of claims based on available evidence. *In re Am. Bank Note Holographics*, 127 F. Supp. 2d at 430. Here, experienced and informed counsel formulated the Plan of Allocation. The Settlement Agreement sets forth a five-step process to provide each Class Member with their *pro rata* share recovery based on each Class Member's actual direct investment in the Global Opportunity Fund or indirect investment through the series of Verizon Target Date Funds, and is similar to the plans of allocation used in other ERISA class action settlements. *See* Settlement Agreement at Article 6.4. The Plan of Allocations calculates each Class Member's "Preliminary Entitlement Percentage", which is determined by dividing the Class members "Total Balance" by the total balance for the entire class. *Id*. at Article 6.4.2. This Preliminary Entitlement Percentage

is then multiplied by the Net Settlement Amount; this is the "Preliminary Entitlement Amount." *Id*. at Article 6.4.3. All Former Participants whose Preliminary Entitlement Amount is less than $50 will be excluded, and calculations above will be repeated, which will then determine the Final Entitlement Amount for each non-excluded Class Member. *Id*. at Articles 6.4.4, 6.4.5.

After payment of costs, taxes, attorneys' fees and expenses, the Net Settlement Amount will be proportionally allocated by the Settlement Administrator to qualifying Class Members based on the Plan of Allocation set forth in the Settlement Agreement and in the mailed Notice of Class Action Settlement and the examples therein. As a result, the Plan of Allocation clearly has a "reasonable, rational basis" and should be approved by the Court. *In re Global Crossing Sec. & ERISA Litig* , 225 F. R.D. 436, 462 (S.D.N.Y. 2004)(citation omitted).

### C.    The *Grinnell* Factors Are Also Met

### 1.    The Complexity, Expense, and Likely Duration of the Litigation

"The expense and possible duration of the litigation are major factors to be considered in evaluating the reasonableness of [a] settlement." *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984); *see also In re Alloy, Inc. Sec. Litig.*, 2004 WL 2750089, at *2 (S.D.N.Y. Dec. 2, 2004). Many courts have noted the complexity of ERISA breach of fiduciary duty claims such as those asserted in this Action. Indeed, in *In re WorldCom, Inc. ERISA Litigation*, an ERISA company stock case, the Court expressly recognized the "general risk inherent in litigating complex claims such as these to their conclusion." 2004 WL 2338151, at *6 (S.D.N.Y. Oct. 18, 2004) (approving settlement). Similarly, in *In re Global Crossing*, the Court explained that ERISA "[f]iduciary status, the scope of fiduciary responsibility . . . and numerous legal issues concerning fiduciary liability . . . substantially increase the ERISA cases' complexity, duration, and expense – and thus militate in favor of settlement approval." 225 F. R.D. at 456; *see also In re Enron Corp.*

13

*Sec., Deriv. & "ERISA" Litig.*, 228 F.R.D. 541, 565 (S.D. Tex. 2005) (finding that "complexity, expense and likely duration of the litigation . . . are self-evident and exceptional"); *In re Ikon Office Solutions, Inc. Sec. Litig.*, 209 F.R.D. 94, 104-07 (E.D. Pa. 2002) (same).

This case is no exception. Plaintiff's claims raise numerous complex legal and factual issues under ERISA that would require comprehensive evidentiary support and testimony at trial. The complexity and expense of the case has also been borne out by the time and effort that the Parties and their counsel have put into litigating this matter over the past seven years. The docket for this case contains over 232 entries. The Parties were preparing for trial when they agreed to the Settlement after arm's length negotiations before an experienced mediator. This Settlement eliminates the additional time and expense of litigating this Action at trial and any subsequent appeals. It therefore conserves judicial resources.

There would be considerable additional work left to complete before this Action could be ready for trial. While trial preparation was underway, there was a month of work ahead to complete the pretrial order, finalize trial exhibits and designation deposition testimony, prepare for cross-examination of witnesses, and draft findings of fact and conclusions of law.

Instead, under the Settlement, $30 million will be deposited in an interest-bearing account, which will benefit the Class if the Settlement is finally approved.

Together, these factors of complexity, expense and duration weigh heavily in favor of preliminary approval of the Settlement.

### 2. The Reaction of the Class to the Settlement

Because the Court is only being asked to preliminarily approve the Settlement at this stage, some of the *Grinnell* factors, such as reaction of the Class to the Settlement, have not yet fully

come into play. *See Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 355 n.7 (E.D.N.Y. 2006). Accordingly, this factor neither weighs for nor against settlement.

### 3.       The Stage of the Proceedings and Discovery Completed

For a class action settlement to be found reasonable and appropriate based on the status of discovery, the court does not need to decide the merits of the litigation, but it does need something above "mere conjecture." 4 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 11:45 (4th ed. 2002). Although there is no litmus test for determining how much work on the case is sufficient to make this determination, whatever the measure, it is easily satisfied here. *See In re Global Crossing*, 225 F.R.D. at 458 ("The question is whether the parties had adequate information about their claims.").

Plaintiff has developed a comprehensive understanding of the key legal issues in this Action based on the late stage of litigation and are therefore in a good position to evaluate the fairness of the Settlement. The Parties have been litigating this Action vigorously for more than seven years. Plaintiff has conducted an extensive legal and factual investigation and evaluation of their claims and have engaged in extensive fact and expert discovery practice with Defendants. The Parties exchanged numerous discovery requests; produced and reviewed more than 45,000 pages of documents; and took 18 fact and expert depositions. Joint Decl., at ¶ 6. Accordingly, this factor weighs in favor of settlement.

### 4.       The Risks of Establishing Liability

In assessing the Settlement, the Court should balance the benefits afforded the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation. *See Grinnell*, 495 F.2d at 436. Certain types of ERISA claims similar to those asserted by Plaintiff here have been described as implicating "a rapidly developing, and somewhat esoteric, area of

law." *In re Global Crossing*, 225 F.R.D. at 459 n.13 (finding plaintiffs' significant legal and factual obstacles to proving their case, when viewed against the substantial and certain benefits of settlement, supported settlement approval). In Class Counsel's view, the allegations of the complaint would ultimately be borne out by the evidence, but there are, nonetheless, significant hurdles in establishing liability and damages at trial.

The Court is fully familiar with Defendants' defenses from the summary judgment motion, and Defendants would have likely re-argued at trial that liability could not be established for two main reasons.

First, Plaintiff and the vast majority of Class members did not invest in the fund directly, but invested indirectly through TDFs. The TDFs were managed, not by Defendants, but by non-parties Russell Investments and J.P. Morgan. Defendants would argue that these managers were independent fiduciaries who were able to make independent investment decisions for the TDFs, and thus Verizon had no liability as to losses related to the TDFs. While Plaintiff submits that the record establishes that Russell did not act independently of VIMCO, Defendants would have remained intent on pursuing this issue in the absence of a settlement.

Second, Defendants would argue that they acted prudently in the design, monitoring, and periodic modification of the Fund. Defendants would introduce documents, as well as testimony from Defendants and other personnel, which they would argue demonstrate that they fulfilled their fiduciary duties by (1) examining the Fund's performance, and (2) relying on the oversight of investment professionals such as Russell, J.P. Morgan, and others. Defendants also would proffer the testimony of their expert, Marcia Wagner, who opined that Defendants demonstrated "a very high degree of diligence" that "is consistent with the highest standards observed by the best management retirement plans." *See* Memorandum of Law In Support of Defendants' Motion

16

for Summary Judgment, at 3. [ECF No. 181]., Plaintiff submits that the record refuted these defenses but there is never any assurance that the fact finder would at trial find Plaintiff's position compelling to render a Plaintiff's verdict.

In order to obtain a liability verdict in this case, each of these defenses to Plaintiff's claims would have to be overcome at trial. In light of these obstacles and precedents, the $30 million Settlement is significant. Although Class Counsel is confident in its ability to ultimately prove liability of Defendants on the claims asserted, the risks of a verdict in favor of Defendants at trial, when weighed against the immediate benefits of Settlement, confirm that the Settlement is in the best interest of the Class and therefore should be approved.

### 5.      The Risks of Establishing Damages

The relevant law on ERISA damages is found in the Second Circuit's influential opinion, *Donovan v. Bierwirth*, 754 F.2d 1049, 1056 (2d Cir. 1985). The Second Circuit stated "[w]here several alternative investment strategies were equally plausible, the court should presume that the funds would have been used in the most profitable of these." *Id. See also LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 253 n.4 (2008) ("[Section] 502(a)(2) encompasses appropriate claims for 'lost profits.'"). Plaintiff maintains that the risk in proving damages resides primarily in the complexity of the calculation. Damages calculations in ERISA cases like this are expert-intensive. In calculating damages, Plaintiff's expert first determined what would have occurred and the economic impact but-for the alleged improper investment strategy.

While Plaintiff is confident in their ability to establish substantial damages, they are also aware that the presentation of such complex testimony might lead to a "battle of the experts" which involves risks that Settlement avoids. *In re Milken & Assocs. Sec. Litig.*, 150 F.R.D. 46 (S.D.N.Y. 1993) (approving settlement of small percentage of the total damages sought because

the magnitude of damages often becomes a "battle of experts . . . with no guarantee of the outcome"); *Bonime v. Doyle*, 416 F. Supp. 1372 (S.D.N.Y. 1976), *aff'd*, 556 F.2d 554 (2d Cir. 1977), and *aff'd*, 556 F.2d 555 (2d Cir. 1977) (difficulty in determining damages is a factor supporting settlement).

Defendants would likely argue at trial that Plaintiff's damages expert, Cynthia Jones, failed to properly apply the *Bierwith* standard, and used improper methodologies to compare what the Plan actually earned with what the Plan would have earned had the Fund's investments been invested in a plausible alternative investment. Defendants would argue, among other things, that Ms. Jones's "Equity Benchmark" did not represent a realistic alternative investment strategy, and should not be used in calculating damages. Similarly, while Fund underperformed its hurdle rate almost every year since 2007, it may not have underperformed compared to other metrics, including the HFRX Absolute Return Index and the HFRI Weighted Composite Index. Comparing the Fund to these and/or other alternative investments, Defendants would argue that damages would be much smaller than what Plaintiff claimed, if not zero.

Furthermore, Defendants would argue that, for reasons set forth in Section C.4 above, only direct investments in the Fund should be included in any damages calculation, and any investments through TDFs should be excluded. If the Court excluded such investments, Plaintiff's damages calculation would be reduced significantly.

The complexities in establishing ERISA damages here are similar to those the court explained in *In re Global Crossing*:

> aside from difficulties involved in calculating the ERISA damages, the parties disagree on the law bearing on ERISA damages, including whether loss causation . . . apply to the ERISA 401(k) Actions. These legal disagreements would no doubt lead to motions that would introduce additional time, expenses, uncertainty. In short, the legal and factual complexities and uncertainties of the ERISA damages case also militate in favor of settlement.

225 F.R.D. at 460. This factor, like the others, weighs in favor of the sum-certain Settlement proposed here.

### 6.    The Risks of Maintaining the Class Action through Trial

The Court granted class certification on September 29, 2020 [ECF No. 163], and the Action has proceeded as a class action since that decision. From a practical standpoint, certification provides procedural advantages that have enabled the efficient litigation of the claims asserted by Plaintiff in this Action and Plaintiff does not anticipate that the Class would be decertified at any point prior to trial, particularly at this stage in the litigation. However, class certification can be reviewed and modified by the Court at any time before trial, or on appeal, so there is always a risk that this Action or particular claims in this Action, may not be maintained for the Class through trial. Thus, the risk of failing to maintain the Class through trial – albeit small – also weighs in favor of the Court approving the proposed Settlement.

### 7.    The Ability of Defendant to Withstand a Greater Judgment

Plaintiff does not believe that this factor is an issue due to the financial stability of Defendants and their resultant ability to satisfy a judgment in this case, but that factor standing alone is insufficient to defeat approval of the Settlement. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001) (the ability to withstand higher judgment "standing alone, does not suggest that the settlement is unfair."); *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115809, at *11 (S.D.N.Y. Nov. 7, 2007) (defendant's substantial net worth "alone does not prevent the Court from approving the Settlement where the other *Grinnell* factors are satisfied").

### 8.   The Reasonableness of the Settlement in Light of the
### Best Possible Recovery and the Attendant Risks of Litigation

In evaluating a proposed settlement, a court is not required to engage in a trial on the merits to determine the prospects of success. *In re Milken & Assocs. Sec. Litig.*, 150 F.R.D. at 54. The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989) (citation omitted). The Court thus need only determine whether the Settlement falls within a "range of reasonableness." *PainWebber*, 171 F.R.D. at 130 (citations omitted). The Second Circuit has said that "a range of reasonableness" is a range which "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman*, 464 F.2d at 693.

Here the $30 million Settlement—which is large and substantial in its own right—represents a meaningful percentage of the potentially provable losses that Plaintiff believes she could show if liability were established, and depending on how many of the numerous issues concerning their damage calculation were resolved in favor of the Class by the Court. Plaintiff's damages calculations have varied and evolved with this case.

Based on comparing the performance of the Global Opportunity Fund to an Equity Investment Benchmark, Plaintiff's expert Cynthia Jones estimated damages, for the period between April 30, 2010 and January 31, 2017, to be between $102.6 and $231 million. Therefore, the Settlement Amount represents a range of recovery, approximately 13 to 29.2 percent, that is appropriate, given the wide range of potential damage outcomes at trial—as well as the possibility of a verdict in favor of Defendant that would result in zero recovery for the Class. This range is

similar to the range in other approved ERISA class action settlements.[8] For example, in 2021, a $30 million settlement would have been tied for the fifth largest ERISA class action settlement that year. *See Seyfarth Shaw's Annual Workplace Class Action Reports for 2022*, at 33.[9]

It is also noteworthy that in in *Grinnell* itself, the court approved a settlement totaling approximately 3% of provable damages, then on appeal the Second Circuit stated "there is no reason at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell*, 495 F.2d at 455 n 2.

The $30 million cash Settlement, representing a meaningful percentage of the estimated damages as discussed above, is also well in excess of the approximate 2 to 3 percent threshold typically approved in class action settlements involving complex litigation by courts in the Second Circuit. For example, a survey of approved class action securities settlements looked at settlements between $25 and $74 million, and reported a 7.4% median settlement as a percentage of estimated damages for cases between 2013 and 2022, and 8.5% for 2022 cases. See Securities

---

[8]     *See In re Am. Int'l Group, INC. ERISA Litig. II*, No. 08-cv- 05722 (Doc. 254 at p. 7) (S.D.N.Y. June 1, 2015) (approving $40 million settlement or 13.25% of $302.4 million maximum exposure); *In re Textron, Inc. ERISA Litig.*, No. 09-cv-00383 (Doc. 109-1 at p. 22) (D.R.I. Nov. 6, 2013) (approving $4.4 million settlement or approximately 5.5% to 11% of maximum damages ranging between $40 million to $80 million); *Otte v. Life Ins. Co. of N. Am.*, No 09-cv-11537 (Doc. 107 at p.17-18) (D. Mass. Mar. 5, 2013) (approving $8.1 million settlement or approximately 15% of $55 million exposure); *See also* ERISA Class Action Settlements and Attorney Fees, Fiduciary Counselors Inc., available at http://www.erisasettlements.com/press/ERISA-Chart.pdf, including *In re BristolMyers Squibb Co. ERISA Litig.*, No. 02-cv-10129 (S.D.N.Y) (approving $41.22 million cash settlement or 13.74% of $300 million exposure); *In re CIGNA Corp. ERISA Litig.,* No. 03-cv-00714 (E.D. Pa.) (approving $954,000 in cash and plan changes valued at $24 to $30 million or approximately 4% of approximately $720 million exposure); *Overby v. Tyco Int'l Ltd.,* No. 02-cv-1357-B (D.N.H.) (approving $71 million, or .59% of $12 billion exposure).

[9]     https://www.content.seyfarth.com/publications/Workplace-Class-Action-Report-2022/14/.

Class Action Settlements, 2022 Review and analysis, Cornerstone Research, at 6.[10] *See, e.g., In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 483-85 (S.D.N.Y. 2009) (approving settlement that represented 2% of defendants' maximum liability and noting, "the Second Circuit has held that a settlement amount of even a fraction of the potential recovery does not render a proposed settlement inadequate"); *In re Prudential Sec. Inc. Ltd. P'Ships Litig.*, 1995 WL 798907 (S.D.N.Y. Nov. 20, 1995) (approving settlement of between 1.6 and 5% of claimed damages).

Considering the present and time-value of money, the probability of a lengthy and involved trial in the absence of a settlement, the risk that the Class would not succeed in proving liability against Defendant and the range of possible recovery at trial, the Settlement is well within the range of reasonableness. As Judge Harmon aptly put it when approving of the settlements in *In re Enron*, "The settlement at this point would save great expense and would give the Plaintiffs hard cash, a bird in the hand." 228 F.R.D. at 566*; see also In re Global Crossing*, 225 F.R.D. at 461 ("The prompt, guaranteed payment of the settlement money increases the settlement's value in comparison to some speculative payment of a hypothetically larger amount years down the road.") (citation omitted).

***

In sum, the *Grinnell* factors support a finding that the proposed settlement fits "within the range of possible approval" and should proceed to the second step of the process with notice to Class Members of a hearing, at which time the settling parties may be heard with respect to final court approval. Granting preliminary approval, ". . . deprives no party or non-party of any procedural or substantive rights, and provides a mechanism through which Class Members who

---

[10]     https://www.cornerstone.com/wp-content/uploads/2023/03/Securities-Class-Action-Settlements-2022-Review-and-Analysis.pdf

object to the . . . settlement can voice those objections." *Allen v. Dairy Farmers of Am., Inc.,* 2011 WL 1706778, at *2 (D. Vt. May 4, 2011).

Based upon extensive legal research, all fact and expert discovery, analysis of the risks inherent in continued litigation, the risks of establishing liability and damages at trial, and the likelihood of appeals regardless of which side prevailed at trial, Class Counsel unequivocally support the Settlement and the immediate and definite benefit it provides to Class Members. Joint Decl., at ¶ 9.

## V.     <u>THE PROPOSED NOTICE PLAN SHOULD BE APPROVED</u>

### A.     The Proposed Notice Plan Meets the Requirements of Due Process

To satisfy due process, notice to Class Members must be "reasonably calculated under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 164 F.R.D. 362, 368 (S.D.N.Y. 1996); *see also Weinberger v. Kendrick*, 698 F.2d 61 70-72 (2d Cir. 1983) (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). "It is widely recognized that for the due process standard to be met it is not necessary that every Class Member receive actual notice, so long as Class Counsel acted reasonably in selecting means likely to inform persons affected." *Prudential*, 164 F.R.D. at 368; see also *Weigner v. City of New York*, 852 F.2d 646, 649 (2d Cir. 1988). Settlement notices need only describe the terms of the settlement generally. *Handschu v. Special Servs. Div.*, 787 F.2d 828, 833 (2d Cir. 1986).

Article 3 of the Settlement Agreement provides for actual notice to all Class Members through a combination of direct mailing of a Notice and Internet website posting (the "Notice Plan"). As set forth below, Plaintiff's proposed Notice Plan more than satisfies the mandate of due process.

**B.      Description of the Notice**

The proposed Notice of Settlement will fully inform Class Members about the Action, the proposed Settlement, and the facts they need to make informed decisions about their rights. The Notice includes multiple components designed to reach the largest number of Class Members possible. The Notice, attached as Exhibit 2 to the Settlement Agreement (for Active and Former Participants, respectively), will be (1) be delivered to each Class Member who has an active account in the Plan by employing the methods and procedures established by the U.S. Department of Labor for delivery of important plan documents, including participant fee and expense disclosures, notification of important plan changes, reports of plan investment return and expense, and other legally required notifications, in accordance with the rules set forth in 29 C.F.R. § 2520.104b-31. Settlement Agreement at Articles 3.4, 3.5. For Former Participants and those Class Members without a valid email address, or whose emailed Notice is returned as undeliverable, a hard copy of the Notice will be sent by the Settlement Administrator by first-class mail to the last known address of each such Class Member or Former Participant by the date set forth in the Preliminary Approval Order, The Notice will provide Class Members with a toll-free number for Class Counsel, an email address for Settlement-related inquiries, and the settlement website address where Class Members may receive further information. *Id*. at 3.4.2.

The Notice Plan agreed to by the Parties satisfies all due process considerations and meets the requirements of Federal Rule of Civil Procedure 23(e)(1). The proposed Notice generally, in plain English, provides (i) the terms and operations of the Settlement; (ii) the nature and extent of the release of claims; (iii) the right to and procedure for objecting to (but not opting-out of) the Settlement; (iv) Class Counsel's intent to request attorneys' fees, reimbursement of expenses and service awards to the named Plaintiff Melinda Jacobs; (v) the date and place for the Fairness

Hearing; and (vi) the procedure to receive additional information. Accordingly, the proposed Notice Plan satisfies the requirements of due process. See William B. Rubenstein, NEWBERG ON CLASS ACTIONS, §8.17 (5th ed. 2017).

## VI.    **CONCLUSION**

For the reasons discussed herein, the Settlement is a fair, reasonable, and adequate resolution of the claims against Defendants in this complex class action brought under ERISA. Thus, Plaintiff and Class Counsel respectfully request that the Court grant their motion and enter the Preliminary Approval Order, which: (a) preliminarily approves the Settlement; (b) approves the form and manner of the Notice Plan; (c) preliminarily approves the proposed Plan of Allocation; and (d) sets a date and time for the Fairness Hearing and related deadlines as set forth in the proposed draft Preliminary Approval Order.

Dated: July 7, 2023

GLANCY PRONGAY & MURRAY LLP

By: /s/ *Daniella Quitt*
Daniella Quitt
Gregory B. Linkh
745 Fifth Avenue, 5th FL
New York, New York 10151
Telephone: (212) 935-7400
dquitt@glancylaw.com
glinkh@glancylaw.com


James A. Bloom (admitted pro hac vice)
Todd M. Schneider (admitted pro hac vice)
SCHNEIDER WALLACE COTTRELL
KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
jbloom@schneiderwallace.com
tschneider@schneiderwallace.com

John F. Edgar
EDGAR LAW FIRM LLC
1032 Pennsylvania Avenue
Kansas City, Missouri 64105
Telephone: (816) 531-0033
jfe@edgarlawfirm.com

***Class Counsel***