UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MELINA N. JACOBS, On Behalf of Herself and All Others Similarly Situated,<br><br>_____Plaintiff,<br><br>_____v.<br><br>VERIZON COMMUNICATIONS INC.; VERIZON INVESTMENT MANAGEMENT CORP.; THE VERIZON EMPLOYEE BENEFITS COMMITTEE; MARC C. REED; MARTHA DELEHANTY; ANDREW H. NEBENS; CONNIA NELSON; SHANE SANDERS; ROBERT J. BARISH; and DONNA C. CHIFFRILLER,<br><br>_____Defendants. | Civil Action No.: 1:16-cv-01082-PGG-RWL |

## AMENDED CLASS ACTION SETTLEMENT AGREEMENT

This Class Action Settlement Agreement (the "Settlement Agreement") of the above-captioned litigation (the "Action") is entered into between and among the Plaintiff, acting as the Class Representative on behalf of herself and on behalf of all Class Members and the Plan, all Class Members, and Defendants.

1.      **Article 1 - Recitals**

1.1      On February 11, 2016, Plaintiff Melina N. Jacobs, a participant in the Verizon Management Savings Plan  (the "Plan"), filed a complaint in this Court against Robert J. Barish, Donna C. Chiffriller, Martha Delehanty, Fidelity Investments Institutional Operations Company, Inc., Fidelity Management Trust Company, Andrew H. Nebens, Connia Nelson, Marc C. Reed, Shane Sanders, The  Verizon  Employee  Benefits  Committee,  Verizon Communications Inc., and the Verizon Investment Corporation alleging claims under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 _et seq_. ("ERISA"), for breach of fiduciary duty.

1.2      On August 16, 2016, all defendants moved to dismiss the complaint. Plaintiff responded to the motions.  Defendants filed their reply memoranda in support of their motions on October 25, 2016.

1.3     On September 28, 2017, the Court granted the motions to dismiss the first and third claims for relief but sustained the second claim for relief against the Verizon Defendants under ERISA §§ 502(a)(2) and 502(a)(3), 29 U.S.C. §§ 1132(a)(2), 1132(a)(3) for violation of ERISA's duty of prudence in ERISA § 404(a), 29 U.S.C. § 1104(a), seeking relief including damages and equitable remedies for the Plan under ERISA § 409(a), 29 U.S.C. § 1109(a).

1.4     On October 13, 2017, the Verizon Defendants answered the complaint and the parties commenced discovery. Defendants produced more than 45,000 pages of documents and 18 depositions were taken including five experts.

1.5     On September 19, 2019, plaintiff moved for class certification. The motion was fully briefed on November 12, 2019. The motion was referred to Magistrate Judge Robert W. Lehrburger on November 18, 2019. After oral argument on May 18, 2020, on June 1, 2020, Magistrate Judge Lehrburger issued a report and recommendation recommending certification of a class as:

>       All participants or beneficiaries of the Verizon Savings Plan for Management Employees (the "Plan") for the period of April 1, 2010 to August 1, 2016 excluding the Defendants, other VIMCO or Verizon employees with responsibility for the Plan's investment or administrative functions, and members of the Verizon Board of Directors who had any portion of their Plan invested directly in the Global Opportunity Fund or indirectly in the Global Opportunity Fund through investment in any of the Verizon Target Date Funds.

Plaintiff was certified as the Class Representative and Schneider Wallace Cottrell & Konecky LLP, Glancy Prongay & Murray LLP and the Edgar Law Firm were approved as Class Counsel.

1.6     Defendants objected to the Report and Recommendation on June 15, 2020 and Plaintiff responded on June 29, 2020. On September 29, 2020, the Court adopted the Report and Recommendation in its entirety.

1.7     On November 19, 2020, Defendants moved: 1) to Strike Plaintiff's Jury Demand; 2) for summary judgment; and 3) In Limine to Exclude Plaintiff's experts. After full briefing, on an extensive record, on April 20, 2023, the Court denied Defendants' motion for summary judgment and In Limine motion to strike plaintiff's experts. The unopposed motion to strike the jury demand was granted.

1.8     The Court set June 9, 2023, as the date to file the Joint Pre-trial Order and set a trial date of July 10, 2023.

1.9 In the interim, the parties agreed to participate in a mediation before a well-respected and nationally recognized mediator, Hunter Hughes on June 1-2.  Before the mediation, the parties prepared mediation statements for the mediator.  After intensive arm's length negotiations, at the close of the mediation the parties reached a Settlement, the terms of which are memorialized in this Settlement Agreement.

1.10 The Class Representative and Class Counsel consider it desirable and in the best interests of the Class that the claims against Defendants be settled on behalf of the Class Representative, the Class and the Plan, upon the terms set forth below, and they have concluded that such terms are fair, reasonable, and adequate and that this Settlement will result in significant benefits to the Class and the Plan.

1.11 Defendants admit no wrongdoing or liability with respect to any of the allegations or claims in the Action.  This Settlement Agreement and the discussions preceding it shall in no event constitute, be construed as, or be deemed evidence of, an admission or concession of fault, wrongdoing, or liability of any kind by Defendants.

1.12 Defendants and the Class Representative, on behalf of herself and on behalf of all Class Members and the Plan, in consideration of the promises, covenants, and agreements herein described, acknowledged by each of them to be satisfactory and adequate, and intending to be legally bound, do hereby mutually agree to the terms of this Settlement Agreement.

## 2. Article 2 - Definitions

2.1 "Action" means *Jacobs v. Verizon Communications Inc., et al.*, Case No. 81:16-cv-01082-PGG-RWL (S.D.N.Y.).

2.2 "Administrative Expenses" means expenses incurred in the administration of this Settlement Agreement, including (a) all fees, expenses, and costs associated with providing the Settlement Notice to Class Members, including but not limited to the fees of the Plan's recordkeeper to identify the names and addresses of Class Members; (b) all related tax expenses (including taxes and tax expenses as described in Paragraph 5.3), (c) all expenses and costs associated with the distribution of funds under the Plan of Allocation, including but not limited to the fees of the Plan's recordkeeper associated with implementing this Settlement Agreement, facilitating the distribution of funds under the Plan of Allocation, and gathering the data necessary to calculate payments or otherwise prepare the Plan of Allocation and (d) all fees and expenses incurred by the Settlement Administrator, and Escrow Agent. Excluded from Administrative Expenses are all fees and expenses of the

Independent Fiduciary, (e) all fees, expenses, and costs associated with providing notices required by the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1711- 1715 should Defendants elect to make such notice, as well as Defendants' internal expenses and the Settling Parties' respective legal expenses; and (f) half of the fees and costs associated with the Independent Fiduciary's review of the Settlement Agreement on behalf of the Plan, as described in Paragraph 3.1. All recoverable Administrative Expenses as set forth herein shall be paid from the Gross Settlement Amount. Since Defendants control the relationship with the Plan's recordkeeper, Defendants will use their best efforts to minimize recordkeeper expense related to Class Notice and implementation of the Plan of Allocation, and will seek payment and/or reimbursement for only Defendants' actual out-of-pocket expense, which shall be disclosed to Class Counsel prior to performance of the services.

2.3   "Active Account" means an individual investment account in the Plan with a balance greater than $0 as of the date the Plan's recordkeeper prepares the list of Class members for delivery to the Settlement Administrator.

2.4   "Attorneys' Fees and Costs" means the amount awarded by the Court as compensation for the services provided by Class Counsel. The amount of attorneys' fees for Class Counsel shall be recovered from the Gross Settlement Amount. Class Counsel also will seek reimbursement for all litigation costs and expenses advanced and carried by Class Counsel for the duration of this litigation, including expenses incurred in obtaining preliminary and final court approval of the settlement, which also shall be recovered from the Gross Settlement Amount.

2.5   "Beneficiary" shall have the same meaning as set forth in the Verizon Savings Plan for Management Employees.

2.6   "CAFA" means the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1711-1715.

2.7   "Case Contribution Award" means the amount awarded by the Court as compensation for the services provided by the Class Representative in the Action and the risks assumed by the Class Representative in the Action.

2.8   "Class" means the class certified under Fed. R. Civ. P. 23(b)(1) consisting of all participants or beneficiaries of the Verizon Savings Plan for Management Employees (the "Plan") for the period of April 1, 2010 to August 1, 2016 (excluding the Defendants, other VIMCO

4

or Verizon employees with responsibility for the Plan's investment or administrative functions, and members of the Verizon Board of Directors) who had any portion of their Plan invested directly in the Global Opportunity Fund or indirectly in the Global Opportunity Fund through investment in any of the Verizon Target Date Funds.

2.9 "Class Counsel" means, collectively, Schneider Wallace Cottrell & Konecky LLP, Glancy Prongay & Murray LLP and the Edgar Law Firm.

2.10 "Class Members" means all individuals in the Class, including the Class Representative. Class Members shall not be permitted to exclude themselves from the Class.

2.11 "Class Representative" means Melina N. Jacobs.

2.12 "Court" means the United States District Court for the Southern District of New York.

2.13 "Court of Appeals" means the United States Court of Appeals for the Second Circuit.

2.14 "Current Participant" means a person who has an Active Account as of the date the Plan's recordkeeper prepares the list of Class Members to be delivered to the Settlement Administrator.

2.15 "Defendants" means Verizon Communications Inc.; Verizon Investment Management Corp.; The Verizon Employee Benefits Committee; Marc C. Reed; Martha Delehanty; Andrew H. Nebens Connia Nelson; Shane Sanders; Robert J. Barish; and Donna C. Chiffriller.

2.16 "Defense Counsel" means Nixon Peabody LLP.

2.17 "Effective Approval Order" means the Final Approval Order once it becomes Effective.

2.18 "Effective" means, with respect to any judicial ruling, order, or judgment in the Action, that the period for any motions for reconsideration, motions for rehearing, appeals, petitions for certiorari, or the like ("Review Proceeding") has expired without the initiation of a Review Proceeding, or, if a Review Proceeding has been timely initiated, that it has been fully and finally resolved, either by court action or by voluntary action of any party, without any possibility of a reversal, vacatur, or modification of any judicial ruling, order, or judgment, including the exhaustion of all

proceedings in any remand or subsequent appeal and remand. The Settling Parties agree that absent an appeal or other attempted Review Proceeding, the Final Approval Order shall become Effective thirty-three (33) calendar days after its entry.

2.19   "Escrow Agent" means Huntington National Bank.

2.20   "Fairness Hearing" means the hearing scheduled by the Court to consider (a) any objections from Class Members to the Settlement Agreement, (b) Class Counsel's request for Attorneys' Fees and Costs, (c) Class Counsel's request for the Case Contribution Award, and (d) whether to finally approve the Settlement Agreement pursuant to Fed. R. Civ. P. 23.

2.21   "Final Approval Order" means the entry of the order and final judgment approving the Settlement Agreement, implementing the terms of this Settlement Agreement, and dismissing the Action with prejudice, to be proposed by the Settling Parties for approval by the Court in substantially the form attached as Exhibit 3.

2.22   "Former Participant" means a member of the Class who does not have an Active Account as of the date the Plan's recordkeeper prepares the list of class members for delivery to the Settlement Administrator.

2.23   "Gross Settlement Amount" means the sum of thirty million dollars ($30,000,000), to be contributed to the Qualified Settlement Fund pursuant to Article 5. The Gross Settlement Amount shall be the full and sole monetary payment to the Class, Class Representative, and Class Counsel made on behalf of Defendants in connection with the Settlement effected through the Settlement Agreement. Defendants and their insurer(s) will make no additional payment in connection with the Settlement of the Action.

2.24   "Independent Fiduciary" means Daniel N. Janich of Holifield & Janich, PLLC.

2.25   "Mediator" means Hunter Hughes, Hunter ADR, 1075 Peachtree Street NW, Suite 2550, Atlanta, Georgia 30309.

2.26   "Net Settlement Amount" means the Gross Settlement Amount minus (a) all Attorneys' Fees and Costs paid to Class Counsel, (b) any Case Contribution Award to the Class Representative approved by the Court, and (c) all Administrative Expenses.

2.27   "Plaintiff" means the Class Representative.

2.28   "Plan" means The Verizon Savings Plan for Management Employees.

2.29   "Plan of Allocation" means the methodology for allocating and distributing the Net Settlement Amount pursuant to Article 6, as it may be presented, modified or revised pursuant to the Preliminary Order or the Final Approval Order.

2.30   "Plan Fiduciary" means The Verizon Employee Benefits Committee or its designee.

2.31   "Preliminary Order" means the order proposed by the Parties and approved by the Court in connection with the Motion for Entry of the Preliminary Order to be filed by Class Representative through Class Counsel, as described in Paragraph 3.2 and in substantially the form attached as Exhibit 1.

2.32   "Qualified Settlement Fund" or "Settlement Fund" means the interest-bearing, settlement fund account to be established and maintained by the Escrow Agent pursuant to Article 5 as the Qualified Settlement Fund within the meaning of Treas. Reg. § 1.468B-1.

2.33   "Released Parties" means (a) Defendants, (b) their insurers, co-insurers, and reinsurers, (c) their past, present, and future parent corporation(s), and (d) their past, present, and future affiliates, subsidiaries, divisions, joint ventures, predecessors, successors, successors-in-interest, and assigns, (e) their employees, boards of directors, officers, trustees, directors, partners, agents, managers, members, independent contractors, representatives, attorneys, accountants, auditors, advisors, consultants, personal representatives, spouses, heirs, executors, associates, members of their immediate families, and all persons acting under, by, through, or in concert with any of them, and (f) the Plan and all administrators, fiduciaries (with the exception of the Independent Fiduciary), parties in interest, service providers, consultants, and trustees of the Plan.

2.34   "Released Claims" means any and all actual or potential claims, actions, demands, rights, obligations, liabilities, damages, attorneys' fees, expenses, costs, and causes of action, whether arising under federal, state or local law, whether by statute, contract or equity, whether brought in an individual or representative capacity, whether known or unknown, suspected or unsuspected, foreseen or unforeseen, arising from conduct or events occurring from August

1, 2010 to the entry of the Preliminary Order:

a.  That were asserted in the Action, or that arise out of, relate to, or are based on any of the allegations, acts, omissions, facts, matters, transactions, or occurrences that were alleged, asserted, or set forth in the Complaint, whether or not pleaded in the Complaint; or

b.  That arise out of, relate to, are based on, or have any connection with (1) the selection, oversight, retention, or performance of the Plan's investment options, including the Verizon Target Date Funds and the Global Opportunity Fund; or (2) disclosures or failures to disclose information relating to the Plan's investment options, fees, costs, expenses, services, or service providers;

c.  That would be barred by *res judicata* based on entry by the Court of the Final Approval Order; or

d.  That relate to the direction to calculate, the calculation of, and/or the method or manner of allocation of the Net Settlement Amount pursuant to the Plan of Allocation, including but not limited to the collection and provision of Class Members' account balances as provided by, through, or at the direction of Defendants or Defense Counsel; or

e.  That relate to the approval by the Independent Fiduciary of the Settlement Agreement, unless brought against the Independent Fiduciary alone.

**2.35**  "Settlement" or "Settlement Agreement" means the compromise and settlement embodied in this document and its exhibits.

**2.36**  "Settlement Administrator" means  the Angeion Group.

**2.37**  "Settlement Agreement Execution Date" means that date on which the final signature is affixed to this Settlement Agreement.

**2.38**  "Settlement Effective Date" means the date on which the Final Approval Order becomes Effective, provided that by such date the Settlement Agreement has not been terminated pursuant to Article 10.

**2.39**  "Settlement Notice" means the Notice of Class Action Settlement and Fairness Hearing to be delivered to Class Members as prescribed in Section 3.5 hereof, following the Court's issuance of the Preliminary Order, in substantially the form attached hereto as Exhibit 2, the Notice of Class Action Settlement and Fairness

4873-1795-6457.1

Hearing to Class Members. The Settlement Notice shall inform Class Members of all information required by Fed. R. Civ. P. 23 and due process, including the Fairness Hearing to be held before the Court, on a date to be determined by the Court, at which any Class Member satisfying the conditions set forth in the Preliminary Order and the Settlement Notice may be heard regarding (a) the terms of the Settlement Agreement, (b) Class Counsel's request for award of Attorneys' Fees and Costs, (c) the requested Case Contribution Award to the Class Representative, and (d) payment of Administrative Expenses.

2.40    "Settlement Period" shall be from the Settlement Effective Date and continuing for a period of one year thereafter.

2.41    "Settlement Website" means the internet website established pursuant to Paragraph 11.2.

2.42    "Settling Parties" means Defendants and the Class Representative, on behalf of themselves, the Plan, and each of the Class Members.

## 3.    Article 3 - Review and Approval by Independent Fiduciary, Preliminary Settlement Approval, and Notice to the Class

3.1    The Independent Fiduciary shall determine whether to approve and authorize the Settlement, and the waiver and release of the Released Claims, on behalf of the Plan, and shall have the following responsibilities in connection with that determination:

3.1.1    The Independent Fiduciary shall comply with all relevant conditions set forth in Prohibited Transaction Class Exemption 2003-39, "Release of Claims and Extensions of Credit in Connection with Litigation," issued December 31, 2003, by the United States Department of Labor, 68 Fed. Reg. 75,632, as amended ("PTE 2003-39"), in making its determination.

3.1.2    The Independent Fiduciary shall notify Defendants (with copies to Class Counsel and Defense Counsel) of its determination in writing and in accordance with PTE 2003-39, which notification shall be delivered no later than forty-five (45) calendar days before the Fairness Hearing.

3.1.3    Defendants, Defendants' Counsel, and Class Counsel shall respond to reasonable requests by the Independent Fiduciary for information so that the Independent Fiduciary can review

and evaluate the Settlement Agreement.

**3.1.4**   If Defendants conclude that the report of the Independent Fiduciary does not comply with PTE 2003-39 or is otherwise deficient, Defendants shall so inform the Independent Fiduciary within ten (10) calendar days of receipt of thereof, copying Class Counsel.

**3.2**   On or before July 7, 2023, the Class Representative, through Class Counsel, shall file a motion seeking preliminary approval of this Settlement Agreement, and for of entry of the Preliminary Order in substantially the form attached as Exhibit 1. The motion will be filed as unopposed by Defendants, provided it is consistent with the terms and conditions of the Settlement Agreement. The Preliminary Order to be presented to the Court shall, among other things:

**3.2.1**   Approve the text of the Settlement Notice for mailing to Class Members;

**3.2.2**   Direct the Settlement Administrator to mail by first class mail the Settlement Notice to each Class Member who is a Former Participants, and direct the Plan to deliver the Settlement Notice to each Class Member who is a Current Participant in the same manner and using the same methods, systems, and media employed by the Plan in delivering the participant fee and expense disclosure prescribed by 29 C.F.R § 2550.404a-5;

**3.2.3**   Determine that pursuant to Fed. R. Civ. P. 23(c)(2) and 23(e), mailing the Settlement Notice and publication of the Settlement Website and its materials constitutes an appropriate method of delivery, provides due and sufficient notice of the Fairness Hearing and of the rights of all Class Members, and complies fully with the requirements of Fed. R. Civ. P. 23, the Constitution of the United States, and any other applicable law;

**3.2.4**   Preliminarily enjoin each Class Member and their respective heirs, beneficiaries, executors, administrators, estates, past and present partners, officers, directors, agents, attorneys, predecessors, successors, and assigns, from suing directly, on behalf of the Plan, or in any other capacity, any of the Released Parties in any action or proceeding alleging any of the Released Claims, even if any Class Member may thereafter discover facts in addition to or different from those which the Class Members or Class Counsel now know or

10

believe to be true with respect to the Action and the Released Claims;

**3.2.5** Provide that, pending final determination of whether the Settlement Agreement should be approved, no Class Member may directly, on behalf of the Plan, or in any other capacity commence any action or proceeding in any court or tribunal asserting any of the Released Claims against the Released Parties;

**3.2.6** Set the Fairness Hearing for no sooner than one hundred ten (110) calendar days after the date the motion for entry of the Preliminary Order is filed, to determine whether the Court should (a) approve the Settlement Agreement as fair, reasonable, and adequate, (b) enter the Final Approval Order, and (c) approve the application for Attorneys' Fees and Costs and Administrative Expenses, and the Class Representative's Case Contribution Award;

**3.2.7** Provide that Class Members may object to any aspect of the Settlement Agreement and that any such objections shall be heard, and any papers submitted in support of said objections shall be considered, by the Court at the Fairness Hearing if they have been filed validly with the Clerk of the Court and copies provided to Class Counsel and Defense Counsel. To be filed validly, the objection and any supporting documents must be filed at least twenty (20) calendar days prior to the Fairness Hearing. Any person wishing to speak at the Fairness Hearing shall file and serve a notice of intent to appear within the time limitation set forth above;

**3.2.8** Approve the form of CAFA notices attached as Exhibit 4 and order that upon mailing of the CAFA notices, Defendants shall have fulfilled their obligations under CAFA;

**3.2.9** Provide that any party may file a response to an objection by a Class Member at least seven (7) calendar days before the Fairness Hearing;

**3.2.10** Approve the form and substance of the Plan of Allocation; and

**3.2.11** Provide that the Fairness Hearing may, without further direct notice to the Class Members, other than by notice to Class Counsel, be adjourned or continued by order of the Court.

**3.3**     Within thirty (30) days after entry of the Preliminary Approval Order, Defendants shall cause the Plan's recordkeeper(s) to provide the Settlement Administrator, in Excel or CSV format, with the names, last known mailing and email addresses, Social Security numbers, and individual Plan identification numbers (as applicable), and then current Plan account balance, of all Class Members.

**3.3.1**     Defendants and Defendants' Counsel shall use reasonable efforts to respond timely to written requests, including by e-mail, from the Settlement Administrator for readily accessible data that are reasonably necessary to determine the feasibility of administering the Plan of Allocation or to implement the Plan of Allocation. The actual and reasonable expenses of any third party, including the Plan's recordkeeper(s), that are necessary to perform such work shall be Administrative Expenses to be paid solely from the Gross Settlement Amount.

**3.3.2**     The Settlement Administrator shall be bound by the Confidentiality Agreement and any further non-disclosure or security protocol required by the Settling Parties.

**3.3.3**     The Settlement Administrator shall use the data provided by Defendants and the Plan's recordkeeper(s) solely for the purpose of meeting its obligations as Settlement Administrator, and for no other purpose.

**3.3.4**     At the request of the Settling Parties, the Settlement Administrator shall provide a written protocol concerning how the Settlement Administrator will maintain and store information provided to it in order to ensure that reasonable and necessary precautions are taken to safeguard the privacy and security of such information.

**3.4**     By the date and in the manner set by the Court in the Preliminary Order, projected to be 45 days after filing of the Motion for Preliminary Approval, and unless otherwise set forth below, the Settlement Administrator shall:

**3.4.1**     Cause to be mailed to each Class Member who has been identified as a Former Participant a Settlement Notice in the form and manner to be approved by the Court, which shall be in substantially the form attached as Exhibit 2 or a form subsequently agreed to by the Settling Parties and the Court. The Settlement Notice shall be sent by first-class mail, postage prepaid, to the last known address of each such Class

Member provided by the Plan's recordkeeper to the Settlement Administrator, unless an updated address is obtained by the Settlement Administrator through its efforts to verify the last known addresses provided by the Plan's recordkeeper (or its designee). The Settlement Administrator shall use commercially reasonable efforts to locate any such Class Member whose Settlement Notice is returned and re-mail such documents one additional time.

3.4.2   Establish a toll-free hotline and Settlement Website, on which the Settlement Administrator will post the following documents, or links to such documents, as they become available: (a) the operative Complaint; (b) the Settlement Agreement and its Exhibits; (c) the Settlement Notice; (d) Class Counsel's motion for Attorneys' Fees and Expenses and Plaintiff's Compensation; (e) any Court orders related to the Settlement; (f) any amendments or revisions to these documents; and (g) any other documents or information upon which the Settling Parties mutually agree in writing.

3.4.3   In addition, if requested by a Class Member, the Settlement Administrator shall provide by electronic or other means a copy of the Settlement Notice to such Class Member.

3.5   By the date and in the manner set by the Court in the Preliminary Order, and unless otherwise set forth below, the Plan Administrator shall:

3.5.1   Cause to be delivered to each Class Member who has been identified as an Active Participant a Settlement Notice in the form and manner to be approved by the Court, which shall be in substantially the form attached as Exhibit 2 or a form subsequently agreed to by the Settling Parties and the Court. The Settlement Notice shall be delivered in the same manner and using the same methods, systems, and media employed by the Plan in delivering the participant fee and expense disclosure prescribed by 29 C.F.R § 2550.404a-5. In the event any such Notices are returned as "undeliverable," the Plan Administrator will notify the Settlement Administrator of the names and last known mailing addresses of each Class Member whose Notice was reported as undeliverable and the Settlement Administrator will use commercially reasonable efforts to obtain an updated address for each such Class Member.  The Settlement Administrator will then resend the Notice by first-class mail, postage prepaid, to the last known

13

address of each such Class Member.

**4. Article 4 - Final Settlement Approval**

**4.1**     No later than twenty-eight (28) calendar days before the Fairness Hearing, Class Counsel shall submit to the Court a motion for entry of the Final Approval Order (Exhibit 3), which shall request approval by the Court of the terms of this Settlement Agreement and entry of the Final Approval Order in accordance with this Settlement Agreement. The Final Approval Order as proposed by the Settling Parties shall provide for the following, among other things, as is necessary to carry out the terms of the Settlement Agreement:

> **4.1.1**     Approval of the Settlement and the waiver and release of the Released Claims covered by this Settlement Agreement, adjudging the terms of the Settlement Agreement to be fair, reasonable, and adequate to the Plan and the Class Members, and directing the Settling Parties to take the necessary steps to effectuate the terms of the Settlement Agreement;

> **4.1.2**     A determination pursuant to Fed. R. Civ. P. 23(c)(2) and 23(e) that mailing and/or electronic delivery of the Settlement Notice and publication of the Settlement Website and its materials were appropriate under the circumstances and that due and sufficient notice of the Fairness Hearing and the rights of all Class Members has been provided, consistent with the Federal Rules of Civil Procedure and the requirements of due process under the United States Constitution;

> **4.1.3**     Dismissal with prejudice of the Action and all Released Claims asserted therein whether asserted by the Class Representative on their own behalf or on behalf of the Class Members, or derivatively to secure relief for the Plan, without costs to any of the Settling Parties other than as provided for in this Settlement Agreement;

> **4.1.4**     That the Plan and each Class Member (and their respective heirs, beneficiaries, executors, administrators, estates, successors, and assigns) on his or her own behalf and on behalf of the Plan shall

be (a) conclusively deemed to have, and by operation of the Effective Approval Order shall have, fully, finally, and forever settled, released, relinquished, waived, and discharged the Released Parties from all Released Claims, and (b) barred and enjoined from suing any of the Released Parties in any action or proceeding alleging any of the Released Claims. The provisions of (a) and (b) above shall apply even if any Class Member may thereafter discover facts in addition to or different from those which the Class Member or Class Counsel now know or believe to be true with respect to the Action and the Released Claims, whether or not such Class Members have filed an objection to the Settlement Agreement, whether or not such Class Members receive any monetary benefit from the Settlement, and whether or not the objections or claims for distribution of such Class Members have been approved or allowed;

4.1.5   That each Class Member and the Plan shall release the Released Parties, Defense Counsel, and Class Counsel, from any claims, liabilities, and attorneys' fees and expenses arising from the allocation of the Gross Settlement Amount or Net Settlement Amount and for all tax liability and associated penalties and interest as well as related attorneys' fees and expenses;

4.1.6   Approval of the Plan of Allocation consistent with this Settlement Agreement;

4.1.7   A determination of the Attorneys' Fees and Expenses to be awarded to Class Counsel out of the Gross Settlement Amount, in response to the request set forth in Article 7 below;

4.1.8   A determination of the Plaintiff's Compensation to be awarded to the Plaintiff for her participation in this Action, in response to the request set forth in Article 7 below;

4.1.9   That all applicable CAFA requirements have been satisfied;

4.1.10  That the Settlement Administrator shall have final authority to determine the share of the Net Settlement

Amount to be allocated to each Class Member pursuant to the Plan of Allocation approved by the Court;

4.1.11 That with respect to payments or distributions to Class Members, all questions not resolved by the Settlement Agreement shall be resolved by the Settlement Administrator in its sole and exclusive discretion;

4.1.12 That, with respect to any matters that arise concerning the implementation of distributions to Current Participants (after allocation decisions have been made by the Settlement Administrator in its sole discretion), all questions not resolved by the Settlement Agreement shall be resolved by the Plan Fiduciary in accordance with applicable law and governing terms of the Plan;

4.1.13 That within twenty-one (21) calendar days following the issuance of all settlement payments to Class Members as provided by the Plan of Allocation, the Settlement Administrator shall prepare and provide to Class Counsel and Defense Counsel a list of each person who received a settlement payment or contribution from the Qualified Settlement Fund and the amount of such payment or contribution; and

4.1.14 The Court shall retain jurisdiction solely to enforce the Settlement Agreement, but such retention of jurisdiction shall not affect the finality of the Final Approval Order and judgment.

4.2 The Final Approval Order and judgment entered by the Court approving the Settlement Agreement shall provide that upon becoming Effective, all Settling Parties, the Class, and the Plan shall be bound by the Settlement Agreement and the Final Approval Order. The Court shall retain jurisdiction solely to enforce the Settlement Agreement, but such retention of jurisdiction shall not affect the finality of the Final Order and Judgment.

## 5. Article 5 - Establishment of Qualified Settlement Fund

5.1 No later than five (5) calendar days after the entry of the Preliminary Order, the Escrow Agent shall establish an escrow account. The Settling Parties agree that the escrow account is intended to be, and

will be, an interest-bearing Qualified Settlement Fund within the meaning of Treas. Reg. § 1.468B-1. In addition, the Escrow Agent timely shall make such elections as necessary or advisable to carry out the provisions of this Paragraph 5.1, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to prepare and deliver, in a timely and proper manner, the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

5.2    For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent. The Escrow Agent, or the Settlement Administrator on its behalf, shall timely and properly cause to be filed all informational and other tax returns necessary or advisable with respect to the Gross Settlement Amount (including without limitation applying for a Taxpayer Identification Number for the Fund and filing the returns described in Treas. Reg. § 1.468B-2(k)). Such returns as well as the election described in Paragraph 5.1 shall be consistent with this Article 5 and, in all events, shall reflect that all taxes (as defined in Paragraph 5.3) (including any estimated taxes, interest, or penalties) on the income earned by the Gross Settlement Amount shall be deducted and paid from the Gross Settlement Amount as provided in Paragraph 5.3.

5.3    Taxes and tax expenses are Administrative Expenses to be deducted and paid from the Gross Settlement Amount, including but not limited to (a) all taxes (including any estimated taxes, interest, or penalties) arising with respect to the income earned by the Gross Settlement Amount, including any taxes or tax detriments that may be imposed upon Defendants or Defense Counsel with respect to any income earned by the Gross Settlement Amount for any period during which the Gross Settlement Amount does not qualify as a "qualified settlement fund" for federal or state income tax purposes, and (b) all tax expenses and costs incurred in connection with the operation and implementation of this Article 5 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this Article 5). Such taxes and tax expenses shall be Administrative Expenses and shall be paid timely by the Escrow Agent out of the Gross Settlement Amount without prior order from the Court. The Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to any Class Member any funds necessary to pay such

amounts, including the establishment of adequate reserves for any taxes and tax expenses (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(1)(2)); neither Defendants, Released Parties, Defense Counsel, nor Class Counsel are responsible nor shall they have any liability therefor. The Settling Parties agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Article 5.

5.4     Within fourteen (14) calendar days after the later of (a) the date the Court enters a Preliminary Approval Order or (b) the escrow account described in Paragraph 5.1 is established and the Escrow Agent shall have furnished to Defendants in writing the escrow account name, IRS W-9 Form, and all necessary wiring instructions, Defendants shall pay and/or shall cause the relevant insurer or agent to pay $200,000 of the Gross Settlement Amount to the Escrow Agent for deposit into the Qualified Settlement Fund to cover the initial Settlement Administrative Expenses and the costs of sending Notice to the Class.  Within seven (7) calendar days after the Settlement Effective Date, Defendants shall pay and/or shall cause the relevant insurance carrier to pay the remaining balance ($29,800,000) of the Gross Settlement Amount to the Qualified Settlement Fund.

5.5     The Escrow Agent shall, at the written direction of Class Counsel, invest the Qualified Settlement Fund in short-term United States Agency or Treasury Securities or other instruments backed by the Full Faith and Credit of the United States Government or an Agency thereof, or fully insured by the United States Government or an Agency thereof, and shall reinvest the proceeds of these investments as they mature in similar instruments at their then-current market rates.

5.6     The Escrow Agent shall not disburse the Qualified Settlement Fund or any portion except as provided in this Settlement Agreement, in an order of the Court, or in a subsequent written stipulation between Class Counsel and Defense Counsel. Subject to the orders of the Court, the Escrow Agent is authorized to execute such transactions as are consistent with the terms of this Settlement Agreement.

5.7     As soon as practicable, but in any event no later than one-hundred twenty (120) calendar days after the Settlement Effective Date, the Gross Settlement Amount will be distributed from the Qualified Settlement Fund as follows: (a) first, any award of Attorneys' Fees and Costs shall be paid to Class Counsel within ten (10) calendar days after the Settlement Effective Date; (b) second, any Case Contribution Award approved by the Court shall be paid within

fourteen (14) calendar days after the Settlement Effective Date; (c) third, any Administrative Expenses incurred through the Settlement Effective Date and not previously paid shall be paid; (d) fourth, a contingency reserve not to exceed an amount to be mutually agreed upon by the Settling Parties shall be set aside by the Settlement Administrator for additional Administrative Expenses incurred or anticipated after the Settlement Effective Date; and (e) fifth, the Net Settlement Amount will be distributed pursuant to the Plan of Allocation. Pending final distribution of the Net Settlement Amount in accordance with the Plan of Allocation, the Escrow Agent will maintain the Qualified Settlement Fund.

5.8     The Escrow Agent, or the Settlement Administrator on its behalf, shall be responsible for making provision for the payment from the Qualified Settlement Fund of all taxes and tax expenses, if any, owed with respect to the Qualified Settlement Fund and for all tax reporting, remittance, and/or withholding obligations, if any, for amounts distributed from it. Defendants, Defense Counsel, and/or Class Counsel have no responsibility or any liability for any taxes or tax expenses owed by, or any tax reporting or withholding obligations, if any, of the Qualified Settlement Fund.

5.9     No later than February 15 of the year following the calendar year in which Defendants, their insurers, or agents make a transfer to the Qualified Settlement Fund pursuant to the terms of this Article 5, Defendants, their insurers, or agents shall timely furnish a statement to the Escrow Agent, or the Settlement Administrator on its behalf, that complies with Treas. Reg. § 1.468B-3(e)(2), which may be a combined statement under Treas. Reg. § 1.468B3(e)(2)(ii), and shall attach a copy of the statement to their federal income tax returns filed for the taxable year in which Defendants, their insurers, or agents makes a transfer to the Qualified Settlement Fund.

## 6. Article 6 - Plan of Allocation

6.1     After the Settlement Effective Date, the Settlement Administrator shall cause the Net Settlement Amount to be allocated and distributed to Current Participants, Former Participants, and their Beneficiaries, in accordance with the Plan of Allocation set forth in this Article 6 and as ordered by the Court.

6.2     To be eligible for a distribution from the Net Settlement Amount, a person must be (a) a Current Participant; (b) a Former Participant whose Preliminary Entitlement Amount, defined in Paragraph 6.3.3 below, is at least fifty dollars ($50)

(an "Eligible Former Participant"); or (c) a Beneficiary of a Current Participant or Eligible Former Participant.

**6.2.1**   As described below, Current Participants shall receive their Settlement Payments as earnings credited to their Plan accounts, as provided in Paragraph 6.9 below, unless the Current Participant no longer has an Active Account as of the date Settlement Payments are made, in which case such Current Participant will receive a distribution via a tax-qualified distribution process as set forth in Paragraph 6.7 below.

**6.2.2**   Former Participants whose Preliminary Entitlement Amount, as calculated according to Paragraph 6.5, below, is at least $50 shall receive a distribution via a tax-qualified distribution process as set forth in Paragraph 6.7 below.

**6.2.3**   Beneficiaries shall receive payments by check in amounts corresponding to their entitlement as beneficiaries of the Current Participant or of the Former Participant with respect to which the payment is made.  The Settlement Administrator shall have sole and final discretion to determine the amounts to be paid to Beneficiaries in accordance with the Plan of Allocation set forth in this Article 6 and as ordered by the Court, and the Settling Parties shall have no liability for such determinations.

**6.3**   In general terms, the Plan of Allocation will provide that each Class Member's share of the Net Settlement Amount will be calculated as follows:

The percentage of the Net Settlement Amount to be allocated to each Class Member will be calculated by dividing (i) the sum of a Class Member's quarter-end account balance invested in the Global Opportunity Fund plus that percentage of such Class Member's investment in any of the Verizon Target Date Funds equal to the percentage of such Target Date Fund allocated to the Global Opportunity Fund for each quarter ended during the period from April 1, 2010 to August 1, 2016, by (ii) the sum of quarter-end account balances of all Class Members invested in the Global Opportunity Fund and that percentage of the quarter-end balances of all Class Members invested in any of the Verizon Target Date Funds equal to the percentage of each such

4873-1795-6457.1

Target Date Fund allocated to the Global Opportunity Fund for each quarter ended during the period from April 1, 2010 to August 1, 2016.

**6.4** **Calculation of Settlement Payments.** Payments to Class Members shall be calculated by the Settlement Administrator pursuant to the Plan of Allocation as follows:

**6.4.1** **Step One:** For each Current Participant and Former Participant, the Settlement Administrator shall add together all of his or her quarter-end balances invested in the Global Opportunity Fund and that percentage of his or her quarter-end balances invested in any of the Verizon Target Date Funds equal to the percentage of each such Target Date Fund allocated to the Global Opportunity Fund during the period from April 1, 2010 to August 1, 2016, using each Class Member's March 31, 2010 account balances as the opening balance, to arrive at each Current Participant's and Former Participant's "Total Balance" for the period from April 1, 2010 to August 1, 2016. The Plan's recordkeeper(s) is to provide the Settlement Administrator with all information necessary for calculation of these balances, in Excel or CSV format, no later than twenty-one (21) days after the Settlement Effective Date.

**6.4.2** **Step Two:** The Settlement Administrator shall add together the Total Balance for all Current Participants and Former Participants who have a Total Balance greater than $0 to arrive at the "Total Balance For The Class." The Settlement Administrator will then divide the Total Balance for each Class Member who has a positive Total Balance by the Total Balance For The Class, with the quotient representing the Preliminary Entitlement Percentage for each such Class Member (*i.e.*, Preliminary Entitled Percentage = positive Total Balance for each Class Member ÷ Total Balance For The Class).

**6.4.3** **Step Three:** The Settlement Administrator will then, for each Current Participant and Former Participant with a Total Balance greater than $0, divide his or her Total Balance by the Total Balance For The Class, with the quotient representing the "Preliminary Entitlement Percentage" for each such Current Participant and Former Participant (*i.e.*, Preliminary Entitlement Percentage = Total Balance for each Class Member ÷ Total Balance For The Class). The Settlement Administrator shall multiply

each Class Member's Preliminary Entitlement Percentage by the Net Settlement Amount, with the product representing the Class Member's Preliminary Entitlement Amount (*i.e.*, Preliminary Entitlement = Preliminary Entitlement Percentage x Net Settlement Amount).

6.4.4  **Step Four:** The Settlement Administrator shall identify all Former Participants whose Preliminary Entitlement Amount is less than $50 (the "No Payment Group"). Next, the Settlement Administrator shall repeat Step Two above, this time excluding the Total Balances for the No Payment Group, to arrive at the Final Entitlement Percentage for each remaining Class Member (*i.e.*, Final Entitlement Percentage = [positive Total Balance for each Class Member not in the No Payment Group] ÷ [Total Balance For The Class minus the Total Balance for the No Payment Group]).

6.4.5  **Step Five:** Finally, the Settlement Administrator shall multiply the Final Entitlement Percentage for each Class Member not included in the No Payment Group by the Net Settlement Amount, with the product representing each such Class Member's "Final Entitlement Amount."

6.4.6  For each Current Participant and Eligible Former Participant (or their Beneficiaries), the Settlement Administrator will calculate the total amount due in accordance with Paragraphs 6.3.2-6.3.5 above.

6.4.7  The Settlement Administrator shall utilize the calculations required to be performed herein for (a) instructing the Plan Fiduciary as to the amounts to be allocated to the accounts of Current Participants and calculating the total amount to deposit in the Plan to fulfill this instruction; and (b) making the required distributions to Former Participants.

6.4.8  In the event the Settlement Administrator determines that the Plan of Allocation would otherwise require payments exceeding the Net Settlement Amount, the Settlement Administrator is authorized to make such changes as are necessary to the Plan of Allocation to ensure that payments to Current Participants and Former Participants (or their Beneficiaries) do not exceed the Net Settlement Amount.

6.4.9  The Settlement Administrator shall complete all payment calculations for all Current Participants and Eligible

Former Participants (or their Beneficiaries) as soon as reasonably practicable after the Settlement Effective Date and receipt of all data necessary to calculate the Final Entitlement Amounts.

**6.5**     **Distributions to Current Participants.**  Within two (2) business days after the Settlement Administrator has completed all payment calculations, the Settlement Administrator shall provide the Plan Fiduciary with an Excel spreadsheet (the "Settlement Allocation Spreadsheet for Current Participants") containing the name, corresponding Social Security number as provided by the Plan's recordkeeper, and the amount of the settlement payment for each of the Current Participants. Thereafter, within ten (10) business days' following the delivery of such spreadsheet, unless the Plan Fiduciary has notified the Settlement Administrator in writing of its objection to the accuracy of the calculations presented in the spreadsheet, the Settlement Administrator shall effect transfers from the Qualified Settlement Fund to the Plan of the aggregate amount of all settlement payments payable to Current Participants in each Plan. The Plan Fiduciary shall direct the Plan'' recordkeeper to credit the individual account of each Current Participant in an amount equal to that stated on the spreadsheet provided by the Settlement Administrator in relation to such Current Participant.

    **6.5.1**   The Final Entitlement Amount for each Current Participant will be invested in accordance with such Current Participant's investment election then on file for the investment of employer and employee contributions. If there is no investment election on file, then such Current Participant shall be deemed to have directed such payment to be invested in the Plan's Qualified Default Investment Alternative, as defined in 29 C.F.R. § 2550.404c-5.

    **6.5.2**   The settlement payment will be reflected in the Current Participant's Plan account as additional earnings.

    **6.5.3**   The Plan's recordkeeper shall process all Current Participant transactions within thirty days (30), or as soon as practicable, of receiving the transfer from the Qualified Settlement Fund and, in accordance as specified in the Settlement Allocation Spreadsheet for Current Participants.

    **6.5.4**   If, as of the date when distributions pursuant to this Settlement Agreement are made, a Current Participant no longer has an Active Account, he or she will be treated as a

Former Participant for purposes of settlement distribution only (and, therefore, will not be subject to the $50 minimum in Paragraph 6.2). Settlement payments that cannot be made by the Plan' recordkeeper within thirty (30) calendar days of receiving direction from the Plan's Fiduciary because the Class Member no longer has an Active Account shall be returned by the recordkeeper to the Settlement Administrator for distribution within ten (10) calendar days following the expiration of such 30-day period.

6.6     **Payments to Current Participants who No Longer Have an Active Account.**  For Current Participants who no longer have an Active Account as of the date Settlement Payments are made, such Participants will receive a distribution via the tax-qualified distribution process set forth Paragraph 6.7 below.

6.7     **Distributions to Eligible Former Participants**. For Former Participants, the distribution will be made via a tax-qualified distribution process employing procedures described in 29 C.F.R. § 2550.404a-2, Safe Harbor for Automatic Rollover to Individual Retirement Plans, and in Section 7.20 of the Plan, Automatic Cash Out of Account, with the assistance of Retirement Clearinghouse or such other provider of automatic rollover IRAs selected by the Plan Administrator ("Rollover IRA Provider").  The Settlement Administrator shall cause an amount equal to the portion of the Net Settlement Fund allocated under the Plan of Allocation to the Former Participants, along with data and other supporting information identifying the settlement share amount owed to each Former Participant, to be transferred to the Rollover IRA Provider in accordance with the Rollover IRA Provider's requirements for receiving same as safe-harbor automatic rollovers as described in 29 C.F.R § 2550.404a-2, to be administered in accordance with that regulation.  The Rollover IRA Provider will then notify each individual Former Participant of the establishment of the automatic rollover IRA and the methods and means by which to access and manage such account.  No Former Participant whose entitlement to payment pursuant to the Plan of Allocation would otherwise be less than fifty dollars ($50) shall receive any payment from the Net Settlement Fund.

6.7.1   All fees and expenses associated with the process set forth in this Paragraph 6.10 shall be paid from the Gross Settlement Amount as Administrative Expenses under this Settlement Agreement and/or by the individual Former Participants whose distributions are subject to this provision. Neither Defendants nor the Plan shall be subject to any

24

expense associated with this distribution process over and above the Gross Settlement Amount.

6.7.2   Neither the Released Parties nor Defendants' Counsel shall have any responsibility for the establishment, management, or any other conduct related to the rollover IRAs described in this Paragraph 6.10, nor shall they have any liability therefor.

6.8   **Distributions to Beneficiaries with No Active Account.** Beneficiaries who do not have an Active Account will receive settlement checks in the same manner described in Paragraph 6.5 and in amounts corresponding to their entitlement as beneficiaries of the Current Participant or Eligible Former Participant with respect to whom the payment is made. The Settlement Administrator shall have sole and final discretion to determine the amounts to be paid to Beneficiaries in accordance with the Plan of Allocation set forth in this Article 6.

6.9   This Plan of Allocation is based upon preliminary data regarding the Class Members who may be entitled to settlement payments. If the Settlement Administrator concludes that it is impracticable to implement any provision of this Plan of Allocation, the Settling Parties, if they agree, will modify promptly the terms of this Plan of Allocation and present such modified terms to the Court for approval. Direct mailed notice to Class Members of such proposed modification of the Plan of Allocation shall not be required. However, the Settlement Administrator shall post notice of such proposed modification on the Settlement Website. The Settlement Administrator shall be solely responsible for performing any calculations required by this Plan of Allocation.

6.10   Within twenty-one (21) calendar days of completing all aspects of this Plan of Allocation, the Settlement Administrator shall send to Class Counsel, Defense Counsel, and Defendants one or more affidavits stating the following: (a) the name of each Class Member to whom the Settlement Administrator sent the Settlement Notice, and the address of such mailing; (b) the date(s) upon which the Settlement Administrator sent the Settlement Notice; (c) the name of each Class Member whose Settlement Notice was returned as undeliverable; (d) the efforts made by the Settlement Administrator to find the correct address and to deliver the Settlement Notice for each such Class Member; and (e) the name of each Class Member to whom the Settlement Administrator made a distribution from the Net Settlement Amount, together with the amount and form of the distribution, the name of the payee, the date of distribution, the

amount of tax withholdings, if applicable, and the date of remittance of tax withholdings to the appropriate tax authority, if applicable.

6.11    The Settling Parties acknowledge that any payments to Class Members or their attorneys may be subject to applicable tax laws. Defendants, Defense Counsel, Class Counsel, and Class Representative will provide no tax advice to the Class Members and make no representation regarding the tax consequences of any of the settlement payments described in this Settlement Agreement. To the extent that any portion of any settlement payment is subject to income or other tax, the recipient of the payment shall be responsible for payment of such tax. Deductions will be made, and reporting will be performed by the Settlement Administrator, as required by law in respect of all payments made under the Settlement Agreement. Payments from the Qualified Settlement Fund shall not be treated as wages by the Settling Parties.

6.12    Each Class Member or Beneficiary who receives a payment under this Settlement Agreement shall be fully and ultimately responsible for payment of any and all federal, state, or local taxes resulting from or attributable to the payment received by such person. Each Class Member shall hold the Released Parties, Defense Counsel, Class Counsel, and the Settlement Administrator harmless from any tax liability, including penalties and interest, related in any way to payments under the Settlement Agreement, and shall hold the Released Parties, Defense Counsel, Class Counsel, and the Settlement Administrator harmless from the costs (including, for example, attorneys' fees and disbursements) of any proceedings (including, for example, investigation and suit), related to such tax liability.

6.13    Any checks issued in accordance with this Plan of Allocation shall expire no later than one hundred and twenty (120) calendar days after their issue date.  Any checks that are undelivered or are not cashed before their expiration date shall revert to the Qualified Settlement Fund.

6.14    No sooner than thirty (30) calendar days following the end of the Settlement Period, any Net Settlement Amount remaining in the Qualified Settlement Fund after distributions, including costs and taxes, shall be paid to the Plan to be used to offset administrative fees and expenses of the Plan that would otherwise be charged to the Plan's participants.

7.    **Article 7 - Attorneys' Fees and Costs and Class Representative's Case**

### Contribution Award

**7.1**    Class Counsel will seek approval from the Court of their attorneys' fees not to exceed one-third (33 1/3%) of the Gross Settlement Amount, or ten million dollars ($10,000,000), and will seek approval from the Court for reimbursement of the litigation costs and expenses advanced and carried by Class Counsel for the duration of this litigation, which will be reported in detail in Class Counsel's application to the Court. Any such award and/or reimbursement shall be paid from the Gross Settlement Amount.

**7.2**    Class Counsel will file a motion for an award of Attorneys' Fees and Costs, and Class Representative Service Awards, no later than twenty (20) days after Settlement Notice is mailed to the Class, which may be supplemented thereafter. Defendants will take no position with the Court regarding Class Counsel's request for Attorneys' Fees and Costs, to the extent it does not exceed the amounts set forth in Article 7.

**7.3**    Class Counsel intends to seek a Case Contribution Award not to exceed the amount of $30,000 for the Class Representative, which shall be subject to Court approval. Defendants agree not to oppose or object to any proposed Case Contribution Award up to that amount.  The Case Contribution Award shall be paid by the Settlement Administrator solely out of the Gross Settlement Amount and shall be deducted (to the extent approved by the Court) from the Gross Settlement Amount on or after the date of the Effective Approval Order and prior to the distribution to the Class Members. The Class Representative shall also be entitled to a distribution under this Settlement Agreement pursuant to the Plan of Allocation as a Class Member.

## 8.    Article 8 - Release and Covenant Not to Sue

**8.1**    As of the Settlement Effective Date, the Plan (subject to Independent Fiduciary approval as required by Paragraph 3.1) and all Class Members (and their respective heirs, beneficiaries, executors, administrators, estates, past and present partners, officers, directors, agents, attorneys, predecessors, successors, and assigns) shall be deemed to have fully, finally, and forever settled, released, relinquished, waived, and discharged the Released Parties from the Released Claims.

**8.2**    As of the Settlement Effective Date, all Class Members and the Plan are enjoined from instituting, maintaining, prosecuting, or asserting any cause of action, demand, or claim on the basis of, connected

with, or arising out of any of the Released Claims. Nothing herein shall preclude any action to enforce the terms of this Settlement Agreement pursuant to the procedures set forth in this Settlement Agreement.

8.3    Class Counsel and the Class Members may hereafter discover facts in addition to or different from those that they know or believe to be true with respect to the Released Claims. Such facts, if known by them, might have affected the decision to settle with Defendants or the decision to release, relinquish, waive, and discharge the Released Claims, or the decision of a Class Member not to object to the Settlement Agreement. Notwithstanding the foregoing, each Class Member and the Plan shall expressly, upon the Settlement Effective Date, be deemed to have, and by operation of the Effective Approval Order, shall have, fully, finally, and forever settled, released, relinquished, waived, and discharged any and all Released Claims. The Class Members and the Plan acknowledge and shall be deemed by operation of the Effective Approval Order to have acknowledged that the foregoing release was bargained for separately and is a key element of the settlement embodied in this Settlement Agreement.

8.4    Without admitting that California law applies to this Settlement Agreement, the Settling Parties agree that as of the Settlement Effective Date, the Class Members and the Plan shall be conclusively deemed to, and by operation of the Effective Approval Order shall, settle, release, relinquish, waive and discharge any and all rights or benefits they may now have, or in the future may have, under any law relating to the release of unknown claims pertaining specifically to Section 1542 of the California Civil Code, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

The Class Members and the Plan shall, with respect to the Released Claims, upon the Effective Approval Order, waive any and all provisions, rights and benefits conferred by any law or of any State or territory within the United States or any foreign country, or any principle of common law, which is similar, comparable or equivalent in substance

to Section 1542 of the California Civil Code.

9.    **Article 9 - Representations and Warranties**

    9.1    The Settling Parties represent:

        9.1.1    That they are voluntarily entering into this Settlement Agreement as a result of arm's length negotiations, and that in executing this Settlement Agreement they are relying solely upon their own judgment, belief, and knowledge, and upon the advice and recommendations of their own counsel, concerning the nature, extent, and duration of their rights and claims hereunder and regarding all matters that relate in any way to the subject matter hereof;

        9.1.2    That they assume the risk of mistake as to facts or law;

        9.1.3    That they recognize that additional evidence may have come to light, but that they nevertheless desire to avoid the expense and uncertainty of litigation by entering into the Settlement Agreement;

        9.1.4    That they have read carefully the contents of this Settlement Agreement, and this Settlement Agreement is signed freely by each individual executing this Settlement Agreement on behalf of each of the Settling Parties; and

        9.1.5    That they have made such investigation of the facts pertaining to the Settlement Agreement and all matters pertaining thereto, as they deem necessary.

    9.2    Each individual executing this Settlement Agreement on behalf of a Settling Party does hereby personally represent and warrant that he/she has the authority to execute this Settlement Agreement on behalf of, and fully bind, each principal that each such individual represents or purports to represent.

10.    **Article 10 - Termination, Conditions of Settlement, and Effect of Disapproval, Cancellation, or Termination**

    10.1    The Settlement Agreement shall automatically terminate, and thereby become null and void with no further force or effect if:

        10.1.1    Pursuant to Paragraph 3.1, (a) the Independent Fiduciary does not approve the release or the Settlement Agreement, or disapproves the release or the Settlement Agreement for

any reason whatsoever, and (b) the Settling Parties do not mutually agree to modify the terms of this Settlement Agreement to facilitate an approval by the Independent Fiduciary or the Independent Fiduciary's determinations required by PTE 2003-39;

**10.1.2** The Preliminary Order and the Final Approval Order are not entered by the Court in substantially the form submitted by the Settling Parties or in a form which is otherwise agreed to by the Settling Parties;

**10.1.3** This Settlement Agreement is disapproved by the Court or fails to become effective for any reason whatsoever; or

**10.1.4** The Preliminary Order or Final Approval Order is finally reversed on appeal, or is materially modified on appeal, and the Settling Parties do not mutually agree to any such material modifications.

**10.2** Notwithstanding Paragraph 10.1 above, in the event that the Court declines to grant final approval of the Settlement Agreement, Defendants agree that the Settlement Agreement is not terminated so long as Plaintiff chooses to appeal/petition the appropriate Court of Appeals and/or Supreme Court of the United States for review(s) of such denial(s) of approval.  The settlement will remain effective during the pendency of any such appeal, petition, or review. However, should the appropriate Court of Appeals and/or Supreme Court reject the appeal(s), the Settlement Agreement shall be terminated as outlined in Paragraph 10.1.

**10.3** If the Settlement Agreement is terminated, deemed null and void, or has no further force or effect, then (a) the Action and the Released Claims asserted by the Class Representative shall for all purposes with respect to the Settling Parties revert to their status as though the Settling Parties never executed the Settlement Agreement, and (b) all remaining funds deposited in the Qualified Settlement Fund, and any interest earned thereon, shall be returned to Defendants within thirty (30) calendar days after the Settlement Agreement is finally terminated or deemed null and void, except as provided for in Paragraph 10.5.

**10.4** Notwithstanding any other provision in this Settlement Agreement, it shall not be deemed a failure to approve the Settlement Agreement if the Court denies, in whole or in part, Class Counsel's request for Attorneys' Fees and Costs and/or the Class Representative's Case Contribution Award.

10.5    In the event that the Settlement Agreement is terminated, Administrative Expenses incurred prior to the termination shall be paid first from the interest earned, if any, on the Qualified Settlement Fund. Class Counsel shall be responsible for repaying 50% of Administrative Expenses in excess of the interest earned on the Qualified Settlement Fund.

## 11.    Article 11 - Public Comments Regarding the Action or Settlement Agreement

11.1    The Class Representative and Class Counsel agree that they will not at any time publicly disparage or encourage or induce others to publicly disparage any of the Released Parties.

11.2    The Settlement Administrator will establish a Settlement Website on which it will post the following documents or links to the following documents on or following the date of the Preliminary Order: the First Amended Complaint, the Settlement Agreement and its exhibits, the Settlement Notice, the Class Representative's Motion for Attorneys' Fees and Costs, any Court orders related to the Settlement Agreement, any amendments or revisions to these documents, and any other documents or information mutually agreed upon by the Settling Parties ("Settlement Website Information"). No other information or documents will be posted on the Settlement Website unless agreed to in advance by the Settling Parties in writing. The Settlement Administrator will take down the Settlement Website ninety (90) calendar days after the receipt of the affidavit(s) referenced in Paragraph 6.10.

11.3    Other than the Settlement Website Information and a description of the Settlement Agreement's terms and status on Class Counsel's individual websites, the Class Representative and Class Counsel agree that they will not issue any other public statement regarding the settlement, including press releases.

11.4    The Class Representative and Class Counsel agree that they will keep the terms of the settlement confidential and will not disclose the amount of the settlement to anyone until after the Motion for Preliminary Approval has been filed with the Court, other than as necessary for the   administration of the settlement including to the Settlement Administrator.

## 12.    Article 12 - General Provisions

12.1    This Settlement Agreement, whether or not consummated, and any

negotiations or proceedings hereunder are not, and shall not be construed as, deemed to be, or offered or received as evidence of an admission by or on the part of any of the Released Parties of any wrongdoing, fault, or liability whatsoever, or give rise to any inference of any wrongdoing, fault, or liability or admission of any wrongdoing, fault, or liability in the Action or any other proceeding. The Released Parties admit no wrongdoing or liability with respect to any of the allegations or claims in the Action.

12.2    The Class Representative, Released Parties, Class Counsel, and Defense Counsel shall have no responsibility for or liability whatsoever with respect to (a) any act, omission, or determination of the Settlement Administrator, or any of its respective designees or agents, in connection with the administration of the Gross Settlement Amount, Net Settlement Amount, or otherwise, (b) the determination of the Independent Fiduciary or the assessment of that determination for compliance with PTE 2003-39, (c) the management, investment, or distribution of the Qualified Settlement Fund, (d) the Plan of Allocation as approved by the Court, (e) the determination, administration, calculation, or payment of any claims asserted against the Qualified Settlement Fund, (f) any losses suffered by, or fluctuations in the value of, the Qualified Settlement Fund, or (g) the payment or withholding of any taxes, expenses, and/or costs incurred in connection with the taxation of the Qualified Settlement Fund or tax reporting, or the filing of any returns. Further, neither the Released Parties nor Defense Counsel shall have any responsibility for, or liability whatsoever with respect to, any act, omission, or determination of Class Counsel in connection with the administration of the Gross Settlement Amount or otherwise.

12.3    This Settlement Agreement shall be interpreted, construed, and enforced in accordance with applicable federal law and, to the extent that federal law does not govern, New York law.

12.4    Class Counsel, Defense Counsel, and the Settling Parties agree that any and all disputes concerning compliance with the Settlement Agreement, with the exception of any and all disputes concerning compliance with Article 8, shall be exclusively resolved as follows:

12.4.1    If Class Counsel, Defense Counsel, or a Settling Party has reason to believe that a legitimate dispute exists concerning the Settlement Agreement, the party raising the dispute shall first promptly give written notice under the Settlement Agreement to the other party including in such notice (a) a reference to all specific provisions of the Settlement Agreement that are involved, (b) a statement of

the alleged non- compliance, (c) a statement of the remedial action sought, and (d) a brief statement of the specific facts, circumstances, and any other arguments supporting the position of the party raising the dispute.

**12.4.2** Within twenty-one (21) calendar days after receiving the notice described in Paragraph 12.4.1, the receiving party shall respond in writing with its position and the facts and arguments it relies on in support of its position.

**12.4.3** For a period of not more than twenty-one (21) calendar days following mailing of the response described in Paragraph 12.4.2, the Parties shall undertake good-faith negotiations, which may include meeting in person or conferring by telephone, to attempt to resolve the dispute.

**12.4.4** If the dispute is not resolved during the period described in Paragraph 12.4.3, the parties shall conduct a mediation of the dispute with the Mediator on the earliest reasonably practicable date; provided, however, that the scope of such mediation shall be expressly limited to the dispute.

**12.4.5** Within thirty (30) calendar days after the conclusion of the Mediator's attempt to resolve the dispute (the date of the conclusion of the mediation shall be determined by agreement of the parties or by the Mediator), if the dispute persists, either party may request that the Court resolve the dispute.

**12.4.6** The Settling Parties will attempt to resolve any disputes quickly, expeditiously, inexpensively, and in good faith.

**12.4.7** In connection with any disputes concerning compliance with the Settlement Agreement, each party shall bear its own fees and costs.

**12.5** The Settling Parties agree that the Court has personal jurisdiction over the Class Members and Defendants and shall maintain that jurisdiction for purposes of resolving any disputes between the Settling Parties concerning compliance with the Settlement Agreement.

**12.6** The Settlement Agreement may be executed by exchange of executed signature pages, and any signature transmitted by facsimile or e-mail attachment of scanned signature pages for the purpose of executing this Settlement Agreement shall be deemed an original

33

signature for purposes of this Settlement Agreement. The Settlement Agreement may be executed in any number of counterparts, and each of such counterparts shall for all purposes be deemed an original, and all such counterparts shall together constitute the same instrument.

12.7    The Settling Parties hereby acknowledge that they have consulted with and obtained the advice of counsel prior to executing this Settlement Agreement.

12.8    Any headings included in this Settlement Agreement are for convenience only and do not in any way limit, alter, or affect the matters contained in this Settlement Agreement or the Articles or Paragraphs they caption. References to a person are also to the person's permitted successors and assigns, except as otherwise provided herein. Whenever the words "include," "includes" or "including" are used in this Settlement Agreement, they shall not be limiting but shall be deemed to be followed by the words "without limitation."

12.9    Before approval of the Independent Fiduciary, this Settlement Agreement may be modified or amended only by written agreement signed by or on behalf of all Settling Parties. Following approval by the Independent Fiduciary, this Settlement Agreement may be modified or amended only if such modification or amendment is set forth in a written agreement signed by or on behalf of all Settling Parties and only if the Independent Fiduciary approves such modification or amendment in writing. Following entry of the Final Approval Order, this Settlement Agreement may be modified or amended only by written agreement signed on behalf of all Settling Parties, and only if the modification or amendment is approved by the Independent Fiduciary in writing and approved by the Court.

12.10   This Settlement Agreement and the attached exhibits constitute the entire agreement among the Settling Parties and no representations, warranties, or inducements have been made to any party concerning the Settlement other than those contained in this Settlement Agreement and the attached exhibits.

12.11   The provisions of this Settlement Agreement may be waived only by an instrument in writing executed by the waiving party and specifically waiving such provisions. The waiver of any breach of this Settlement Agreement by any party shall not be deemed to be or construed as a waiver of any other breach or waiver by any other party, whether prior, subsequent, or contemporaneous, of this Settlement Agreement.

4873-1795-6457.1

**12.12**   The Settling Parties agree, without further consideration, and as part of finalizing the settlement hereunder, that they will in good faith execute and deliver such other documents and provide such data and information (as noted herein) and take such other actions as may be necessary to consummate and effectuate the subject matter of this Settlement Agreement.

**12.13**   All of the attached exhibits are incorporated by reference as though fully set forth herein. The exhibits shall be: Exhibit 1 - Preliminary Order; Exhibit 2 - Notice of Class Action Settlement and Fairness Hearing to Class Members; Exhibit 3 - Final Approval Order; and Exhibit 4 - CAFA Notice.

**12.14**   No provision of the Settlement Agreement or of the attached exhibits shall be construed against or interpreted to the disadvantage of any party to the Settlement Agreement because that party is deemed to have prepared, structured, drafted, or requested the provision.

**12.15**   To the extent that any deadline in this Settlement Agreement falls on a Saturday, Sunday, or legal holiday, that deadline shall be continued until the following business day.

**12.16**   Any notice, demand, or other communication under this Settlement Agreement (other than the Settlement Notice, or other notices given at the direction of the Court) shall be in writing and shall be deemed duly given upon receipt if it is addressed to each of the intended recipients as set forth below and personally delivered, sent by registered or certified mail postage prepaid, or delivered by reputable express overnight courier and email:


IF TO THE CLASS REPRESENTATIVE:

John J. Nestico, Esq.
James Bloom, Esq.
Schneider Wallace Cottrell Konecky LLP
2000 Powell St., Suite 1400
Emeryville, CA 94608
jnestico@schneiderwallace.com
Jbloom@schneiderwallace.com

Daniella Quitt, Esq.
Glancy Prongay & Murray LLP
745 Fifth Avenue, 5 FL

New York, NY 10151
Tel: (212)935-7400
Dquitt@glancylaw.com


IF TO DEFENDANTS:

Ian Taylor, Esq.
Jennifer Squillario, Esq.
Nixon Peabody LLP
799 9th Street NW, Suite 500
Washington, DC 20001
Tel: (202)585-8078
Itaylor@nixonpeabody.com
jsquillario@nixonpeabody.com


**12.17** The undersigned counsel, on behalf of themselves and the Settling Parties, agree to cooperate fully with each other in seeking Court approvals of the Preliminary Order and the Final Approval Order, and to do all things as may reasonably be required to effectuate preliminary and final approval and the implementation of this Settlement Agreement according to its terms.


Agreed to on behalf of Plaintiff, individually, as Class Representative on behalf of the Class, and on behalf of the Plan:


Dated:  August 18, 2023


/s/*John Nestico*
John J. Nestico
SCHNEIDER WALLACE
COTTRELL KONECKY LLP
6000 Fairview Rd.
Suite 1200
Charlotte, NC 28210
Tel: (510) 740-2946
jnestico@schneiderwallace.com

_/s/James Bloom_

James A. Bloom
Todd M. Schneider
SCHNEIDER WALLACE COTTRELL
KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
jbloom@schneiderwallace.com
tschneider@schneiderwallace.com

_/s/Daniella Quitt_

Daniella Quitt, Esq.
GLANCY PRONGAY &
MURRAY LLP
745 Fifth Avenue, 5th FL
New York, New York 10151
Telephone: (212) 935-7400
dquitt@glancylaw.com

_/s/John Edgar_

John F. Edgar, Esq.
EDGAR LAW FIRM LLC
2600 Grand Blvd., Suite 440
Kansas City, Missouri 64108
Telephone: (816) 531-0033
jfe@edgarlawfirm.com

_On behalf of Plaintiff and the Class_

_/s/Ian Taylor_

Ian Taylor, Esq.
Jennifer Squillario, Esq.
Nixon Peabody LLP
799 9th Street NW,
Suite 500
Washington, DC 20001
Tel: (202) 585-8078

_On Behalf of Defendants_

37