**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MELINA N. JACOBS, On Behalf of Herself and All Others Similarly Situated, | No.: 1:16-cv-1082 (PGG) (RWL) |
| Plaintiff, | |
| v. | |
| VERIZON COMMUNICATIONS, INC.; VERIZON INVESTMENT MANAGEMENT CORP.; THE VERIZON EMPLOYEE BENEFITS COMMITTEE; MARC C. REED; MARTHA DELEHANTY; ANDREW H. NEBENS; CONNIA NELSON; SHANE SANDERS; ROBERT J. BARISH; and DONNA C. CHIFFRILLER, | |
| Defendants. | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S**
**UNOPPOSED MOTION FOR APPROVAL OF CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. iii

I.     INTRODUCTION ........................................................................................................1

II.    FACTUAL AND PROCEDURAL BACKGROUND .......................................................1

       A.     Allegations ........................................................................................................1

       B.     Procedural History ............................................................................................2

       C.     The Proposed Settlement ...................................................................................3

       D.     Notice to the Class ............................................................................................4

III.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE
       AND SHOULD BE APPROVED BY THE COURT ......................................................5

       A.     Standard of Review ...........................................................................................5

       B.     Plaintiff Satisfies the Requirements of Fed. R. Civ. P. 23(e)(2) ............................6

              1.     Rule 23(e)(2)(A): Plaintiff and Class Counsel Have Adequately
                     Represented the Class ...............................................................................6

              2.     Rule 23(e)(2)(B): The Proposed Settlement Is the Result of
                     Good-Faith, Arm's-Length Negotiations ...................................................7

              3.     Rule 23(e)(2)(C)(i): The Relief Provided by the Settlement
                     Is Adequate Given The Costs, Risks, And Delay of Trial
                     And Appeal  ..............................................................................................8

              4.     Rule 23(e)(2)(C)(ii): Rule 23(e)(2)(C)(ii): The Proposed
                     Method for Distributing Relief Is Effective ................................................9

              5.     Rule 23(e)(2)(C)(iii): Class Counsel's Fee Request Is Fair
                     and Reasonable ......................................................................................10

              6.     Rule 23(e)(2)(D): All Class Members Are Treated Equitably
                     Relative to Each Other ............................................................................11

       C.     The Grinnell Factors Are Also Met.....................................................................12

  1. The Complexity, Expense, and Likely Duration of the Litigation.................12

  2. The Reaction of the Class to the Settlement ...................................14

  3. The Stage of the Proceedings and Discovery Completed..........................14

  4. The Risks of Establishing Liability ..............................................15

  5. The Risks of Establishing Damages .............................................17

  6. The Risks of Maintaining the Class Action through Trial .........................18

  7. The Ability of Defendants to Withstand a Greater Judgment ....................19

  8. The Reasonableness of the Settlement in Light of the
    Best Possible Recovery and the Attendant Risks of Litigation ..................19

IV. CONCLUSION.........................................................................22

# TABLE OF AUTHORITIES

Page(s)

Cases

*Bannerman v. Air-Sea Packing Group, Inc*.,
   No. 18-cv-06146-PGG,
   2020 WL 408350 (S.D.N.Y. Jan. 24, 2020) ...........................................................................10

*Beach v. JPMorgan Chase Bank, N.A.,*
   No. 17-CV-00563-JMF,
   2020 WL 6114545 (S.D.N.Y. Oct. 7, 2020)  ...........................................................................6

*Bonime v. Doyle*,
   416 F. Supp. 1372 (S.D.N.Y. 1976) .....................................................................................17

*Cates v. Trs. of Columbia Univ.,*
   No. 1:16-cv-06524-GBD,
   2021 WL 4839619 (S.D.N.Y. Sept. 28, 2021) ....................................................................20

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ......................................................................................... passim

*City of Providence v. Aeropostale, Inc*.,
   No. 11 Civ. 7132(CM)(GWG),
   2014 WL 1883494 (S.D.N.Y. May 9, 2014) ..........................................................................8

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001) ..................................................................................................19

*Donovan v. Bierwirth*,
   754 F.2d 1049 (2d Cir. 1985) ..............................................................................................17

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000) .............................................................................................6, 10

*In re Alloy, Inc. Sec. Litig.*,
   No. 03 Civ.1597 (WHP).,
   2004 WL 2750089 (S.D.N.Y. Dec. 2, 2004) ......................................................................12

*In re Am. Bank Note Holographics*,
   127 F. Supp. 2d 418 (S.D.N.Y. 2001) .................................................................................11

*In re AOL Time Warner, Inc. Sec. & ERISA Litig*.,
   No. MDL 1500, 02 Civ. 5575(SWK),
   2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) .........................................................................11

*In re Enron Corp. Sec., Deriv. & "ERISA" Litig.*,
   228 F.R.D. 541 (S.D. Tex. 2005) ....................................................................13, 22

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
   MDL No. 12–2389,
   2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015) ....................................................14

*In re Global Crossing Sec. & ERISA Litig*,
   225 F. R.D. 436 (S.D.N.Y. 2004) ............................................................... passim

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
   209 F.R.D. 94 (E.D. Pa. 2002) ..........................................................................13

*In re Indep. Energy Holdings PLC*,
   No. 00 Civ. 6689(SAS),
   2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ...............................................11

*In re Initial Pub. Offering Sec. Litig.*,
   671 F. Supp. 2d 467 (S.D.N.Y. 2009) ..............................................................21

*In re J.P. Morgan Stable Value Fund ERISA Litig.*,
   No. 12-CV-2548 (VSB),
   2019 WL 4734396 (S.D.N.Y. Sept. 23, 2019) .................................................20

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*,
   330 F.R.D. 11 (E.D.N.Y. 2019) ...........................................................................6

*In re Patriot Nat'l, Inc. Sec. Litig.*,
   828 F. App'x 760 (2d Cir. 2020)..........................................................................7

*In re Milken & Assocs. Sec. Litig.*,
   150 F.R.D. 46 (S.D.N.Y. 1993).....................................................................17, 19

*In re PaineWebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y)...........................................................................11, 19

*In re Prudential Sec. Inc. Ltd. P'Ships Litig.*,
   No. 1005, M–21–67 (MP),
   1995 WL 798907 (S.D.N.Y. Nov. 20, 1995) ...................................................21

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
   718 F. Supp. 1099 (S.D.N.Y. 1989) ..................................................................19

*In re Veeco Instruments Inc. Sec. Litig.*,
No. 05 MDL 01695(CM),
2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ........................................................19

*In re WorldCom, Inc. ERISA Litig.*,
2004 WL 2338151,
2004 WL 2338151 (S.D.N.Y. Oct. 18, 2004) ........................................................12

*Jacobs v. Verizon Comm's Inc.*,
16 Civ. 1082 (PGG) (RWL),
2023 WL 3027311 (S.D.N.Y. Apr. 20, 2023) ...................................................1, 3

*LaRue v. DeWolff, Boberg & Assocs., Inc.*,
552 U.S. 248 (2008) ...............................................................................................17

*McMahon v. Olivier Cheng Catering & Events LLC*,
No. 08 Civ. 8713(PGG),
2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010)........................................................10

*McReynolds v. Richards-Cantave*,
588 F.3d 790 (2d Cir. 2009) ....................................................................................6

*Millsap v. McDonnell Douglas Corp.*,
No. 94–CV–633–(HM),
2003 WL 21277124 (N.D. Okla. May 28, 2003) ...................................................9

*Milstein v. Huck*,
600 F. Supp. 254 (E.D.N.Y. 1984)........................................................................12

*Newman v. Stein*,
464 F.2d 689 (2d Cir. 1972) ............................................................................8, 19

*Richards-Donald v. Teachers Insurance & Annuity Ass'n of Am.*,
No. 15-cv-8040 (S.D.N.Y. Oct. 20, 2017) ...........................................................20

*RMED Int'l Inc. v. Sloan's Supermarkets, Inc.*,
No. 94 Civ. 5587(PKL)(RL),
2003 WL 21136726 (S.D.N.Y., May 15, 2003) ...................................................14

*Ross v. A.H. Robins*,
700 F. Supp. 682 (S.D.N.Y. 1988) .......................................................................14

*Robbins v. Koger Props., Inc.*,
116 F.3d 1441 (11th Cir. 1997) ..............................................................................9

v

*Schwartz v. Intimacy in New York LLC*,
  13 CV 5735 (PGG),
  2015 WL 1360777 (S.D.N.Y. Sept. 16, 2016) .......................................................10

*Silva v. Little Fish Corp.*,
  Index No. 10–CV–7801,
  2012 WL 2458214 (S.D.N.Y. May 1, 2012) .........................................................10

*Sims v. BB&T Corp.*,
  No. 1:15-cv-732,
  2019 WL 1993519 (M.D.N.C. May 6, 2019) ........................................................20

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
  258 F. Supp. 2d 254 (S.D.N.Y. 2003) ..............................................................8, 14

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
  No. 01–CV–11814(MP),
  2004 WL 1087261 (S.D.N.Y. May 14, 2004) .........................................................8

*Tibble v. Edison Int'l,*
  CV 07-5359 SVW (AGRx),
  2017 WL 3523737 (C.D. Cal. Aug. 16, 2017) ........................................................9

*Tussey v. ABB Inc.,*
  No. 06-4305 (W.D. Mo.) .......................................................................................9

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.,*
  No.: 8:15-cv-01614-JLS-JCG,
  2018 WL 8334858 (C.D. Cal. Jul. 30, 2018) .......................................................20

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005) ................................................................................6, 7

*Wilkerson v. Martin Marietta Corp.*,
  171 F.R.D. 273 (D. Colo. 1997) ...........................................................................9

Statutes

29 C.F.R. § 2520.104b-31 .........................................................................................4

Fed. R. Civ. P. 23 .....................................................................................................

Fed. R. Civ. P. 23(e)(2) .........................................................................................5, 6

Fed. R. Civ. P.  23(e)(2)(A) .......................................................................................6

Fed. R. Civ. P.  23(e)(2)(B) ........................................................................................7

Fed. R. Civ. P.  23(e)(2)(C)(i) ....................................................................................8

Fed. R. Civ. P.  23(e)(2)(C)(ii)....................................................................................9

Fed. R. Civ. P.  23(e)(2)(C)(iii) .................................................................................10

Fed. R. Civ. P.  23(e)(3).............................................................................................5

Other Authorities

4 Alba Conte & Herbert B. Newberg,
     NEWBERG ON CLASS ACTIONS § 11:45 (4th ed. 2002) ..................................14

MANUAL FOR COMPLEX LITIGATION, THIRD, § 30.42 (1995) ..........................................7

## I.      INTRODUCTION

The proposed settlement of this ERISA class action (the "Settlement"), detailed in Amended Class Action Settlement Agreement, dated August 22, 2023 (ECF Doc. No. 238) (the "Settlement Agreement"), is the culmination of over seven years of litigation resulting in a $30,000,000 benefit for the Class, which includes current and former participants in the Verizon Savings Plan for Management Employees (the "Plan") who had invested their Plan accounts in Verizon's Global Opportunity Fund (sometimes referred to herein as the "Fund"). The Settlement represents one of the largest ERISA settlements of 2023. Out of nearly 186,000 class members who received notice, to date we have not received any objections to the Settlement.[1] The reaction by the Class to the Settlement is overwhelmingly positive.

As discussed below, under the standards of the Federal Rules of Civil Procedure Rule 23 and the factors approved by the Second Circuit, the Settlement is fair, reasonable, and adequate. The Court should, accordingly, finally approve the Settlement.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.      Allegations

This litigation concerned the Global Opportunity Fund, a hedge fund "fund of funds" that "used the Global Tactical Asset Allocation investment strategy, which 'seeks to add value, relative to its benchmark, by investing in the most attractive markets on a global basis, while simultaneously underweighting, or shorting, markets that are viewed by the fund managers as overvalued.'" *Jacobs v. Verizon Commc'ns Inc.*, 1:16-cv-1082 (PGG)(RWL), 2023 WL 3027311, at *2 (S.D.N.Y. Apr. 20, 2023) (the "S.J. Order"). During the Relevant Period, the Fund severely underperformed its own benchmarks, including the "hurdle rate." Plaintiff claims that Defendants

---

[1]      The deadline to file objections is October 27, 2023.

1

violated their fiduciary duty of prudence under Section 404(a) of the Employee Retirement Income Security Act of 1974 ("ERISA") by failing to adequately monitor the performance of the Global Opportunity Fund.  Plaintiff alleges that Defendants failed to take any corrective action regarding the Fund despite obvious and long-term underperformance, including, failing to remove the Fund from the Plan.

### B.   Procedural History

On February 11, 2016, Plaintiff filed her complaint. (ECF Doc. No. 1.) On October 26, 2016, Defendants moved to dismiss the Complaint. (ECF Doc. No. 52.)  After briefing by the parties, on September 28, 2017, the Court denied, in relevant respects, Defendants' motion to dismiss. (ECF Doc. No. 70.) The parties then engaged in intensive fact and expert discovery. During fact and then expert discovery, 18 depositions were taken, including depositions of five expert witnesses, and Defendants produced more than 300,000 pages of documents, including numerous large, database-like spreadsheets.  Joint Declaration of James Bloom and Daniella Quitt dated October 19, 2023 submitted in support of the Settlement (hereinafter the "Joint Dec.") at ¶ 6.

On November 12, 2019, Plaintiff moved for class certification. This Court referred the motion to the Magistrate Judge Lehrburger. After briefing by the parties and the deposition of the plaintiff, Magistrate Judge Lehrburger recommended certification of the class. (ECF Doc. No. 158.) The Court also appointed the law firms of Schneider Wallace Cottrell Konecky LLP,[2] Glancy Prongay & Murray LLP, and Edgar Law Firm LLC as Class Counsel. Though Defendants objected to the Report and Recommendation, the Court agreed with Magistrate Lehrburger and certified the class on September 29, 2020. (ECF Doc. No. 163.)

---

[2]      Formerly Schneider Wallace Cottrell Konecky Wotkyns, LLP.

On March 26, 2021, Defendants moved for Summary Judgment (ECF Doc. No. 180), and also moved to strike Plaintiff's experts. (ECF Doc. No. 173.) On April 20, 2023, the Court denied Defendants' motion for summary judgment and Defendants' motion to exclude Plaintiff's experts' testimony. *See* S.J. Order, 2023 WL 3027311.  On April 26, 2023, the Court set the trial date for July 10, 2023. (ECF Doc. No. 219.)

On June 1 and 2, 2023, the Parties participated in a two-day formal mediation in San Diego, California before Hunter Hughes, a well credentialed neutral third-party mediator who has mediated many ERISA class actions in the recent past, including cases alleging breaches of fiduciary duty.  At the end of the second day, the Parties reached an agreement in principle to settle all claims in the action.

On June 5, 2023, Plaintiff filed a letter informing the Court that a settlement had been reached. (ECF Doc. No. 231).  On July 7, 2023, Plaintiff filed an Unopposed Motion for Preliminary Approval of the Settlement. (ECF Doc. No. 233.) On July 26, 2023, this Court issued the Order Preliminary Approving Class Action Settlement (the "Preliminary Approval Order"). (ECF Doc. No. 236.)  On August 22, 2023, Class Counsel filed a letter and Amended Settlement Agreement, reflecting the substitution of the Independent Fiduciary who had discovered a conflict. (ECF Doc. Nos. 237, 238.)

### C.    The Proposed Settlement

Under the Settlement, Defendants will make a total payment of $30,000,000 to the Class in cash that will be deposited at interest bearing account intended to meet the requirements of a Qualified Settlement Fund.  *See* Settlement Agreement at Articles 2.23, 5.4.

As detailed in Plaintiff's Memorandum in Support of an Award of Fees and Expenses (the "Fee Brief"), Class Counsel are also seeking approval from the Court of their attorneys' fees of

one-third of the $30 million Settlement amount, and approval from the Court for reimbursement of the litigation costs and expenses advanced and carried by Class Counsel for the duration of this litigation.  In addition, Plaintiff also requests a service award for the named plaintiff and Class Representative Melinda Jacobs of $30,000.  Any awards or reimbursement, if granted by the Court, would be paid from the Gross Settlement Amount, and the remaining Net Settlement Amount will be used to make settlement payments to the Class Members according to the Plan of Allocation, to pay the expenses of the Settlement Administrator, and to pay one-half of the fees charged by the Independent Fiduciary.

### D.      Notice to the Class

Pursuant to the Preliminary Approval Order, Angeion Group, the court-appointed settlement administrator in the case (the "Settlement Administrator"), provided Notice of the Settlement to the Class starting on September 11, 2023.  Notice was provided to Class Members in multiple ways.  First, the Settlement Administrator caused Notice to be delivered to Class Members who have an active account in the Plan by employing the methods and procedures established by the U.S. Department of Labor for delivery of important plan documents, including participant fee and expense disclosures, notification of important plan changes, reports of plan investment return and expense, and other legally required notifications, in accordance with the rules set forth in 29 C.F.R. § 2520.104b-31.  Settlement Agreement at Articles 3.4, 3.5.  Second, for Former Participants and those Class Members without a valid email address, or whose emailed Notice is returned as undeliverable, the Settlement Administrator delivered a hard copy of the Notice by first-class mail to the last known address of each such Class Member or Former Participant.  The Notice provided Class Members with a toll-free number for Class Counsel, an email   address   for   Settlement-related   inquiries,   and   the   settlement   website,

www.VerizonERISASettlement.com, where Class Members may receive further information.  *See* Declaration of Kay Ruvolo Regarding Implementation of Notice Plan and Settlement Administration annexed to Joint Dec. as Exhibit A  ("Administrator Dec.") ¶¶ 14-18.

In sum, 172,116 Notice packets emailed to Class Members, and 13,276 Notice packets were sent by first class mail resulting in 185,392 participants to be considered in the calculation of the Settlement award. Administrator Dec. ¶¶ 8,11.

Following the dissemination of the Notice, in addition to any inquiries received by the Settlement Administrator or defense counsel, Class counsel received 10 inquiries via email and telephone to which they promptly responded.  Joint Dec. ¶ 7.

## III.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT

### A.   Standard of Review

Fed. R. Civ. P. 23(e)(2), as revised in 2018, requires judicial approval of a class action settlement, and identifies factors that courts must consider in determining whether a class action settlement is "fair, reasonable, and adequate," including whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposed Settlement was negotiated at arm's length;

(C) the relief provided for the Class is adequate, taking into account:
  (i) the costs, risks, and delay of trial and appeal;
  (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing Class Member claims;
  (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
  (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposed Settlement treats Class Members equitably relative to each other.

In addition, the Second Circuit has set forth nine factors (known as the "*Grinnell* factors"), which overlap with those in Rule 23(e)(2), that a court should consider in deciding whether a proposed class action settlement is substantively fair, reasonable, and adequate:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974) *abrogated on separate grounds by Goldberger v. Integrated Res., Inc.,* 209 F.3d 43 (2d Cir. 2000) (citations omitted); *McReynolds v. Richards-Cantave*, 588 F.3d 790, 804 (2d Cir. 2009); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,* 396 F.3d 96, 117 (2d Cir. 2005); *see also Beach v. JPMorgan Chase Bank, N.A*., Civil Action 17-CV-00563-JMF, 2020 WL 6114545 (S.D.N.Y. Oct. 7, 2020) (evaluating settlement based on factors set forth in FED. R. CIV. P. 23(e)(2) and *Grinnell*); *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019) (the Rule 23(e)(2) factors "add to, rather than displace, the *Grinnell* factors").

As demonstrated below, the Settlement, which was preliminarily approved by the Court, satisfies both Rule 23(e)(2) and the *Grinnell* factors, and should be granted final approval.

**B.  Plaintiff Satisfies the Requirements of Fed. R. Civ. P. 23(e)(2)**

**1.  Rule 23(e)(2)(A): Plaintiff and Class Counsel
Have Adequately Represented the Class**

Plaintiff and Class Counsel have vigorously advocated for the Class's interests for the seven years this Action has been pending, and have obtained excellent results.  In assessing adequacy, "the primary factors are whether the class representatives have any 'interests

antagonistic to the interests of other class members' and whether the representatives 'have an interest in vigorously pursuing the claims of the class.'" *In re Patriot Nat'l, Inc. Sec. Litig.*, 828 F. App'x 760, 764 (2d Cir. 2020) (citing cases).  Plaintiff's and Class Counsel's decision to settle this case was informed by a thorough investigation of the relevant claims and defenses, extensive fact and expert discovery, motion practice, consultation with finance experts, and participation in settlement negotiations that led to the Settlement only one month before trial. Accordingly, this factor weighs in favor of final approval of the Settlement.

### 2.      Rule 23(e)(2)(B): The Proposed Settlement Is the Result of Good-Faith, Arm's-Length Negotiations

Courts presume that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations between counsel. *See Wal-Mart*, 396 F.3d at 116 (a "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery") (quoting MANUAL FOR COMPLEX LITIGATION, THIRD, § 30.42 (1995)). As described above, the proposed Settlement was reached only after extensive, arm's-length negotiations, Moreover, after seven years of litigation, Plaintiff and Class Counsel clearly had an adequate basis for assessing the strength of the Class's claims and Defendants' defenses thereto when they agreed to the proposed Settlement.  These circumstances confirm the presumption of fairness of the proposed Settlement, and thus support final approval of the Settlement.

**3.      Rule 23(e)(2)(C)(i): The Relief Provided by the Settlement Is Adequate Given The Costs, Risks, And Delay of Trial And Appeal**

In assessing a settlement, courts consider "not whether the settlement represents the best possible recovery, but how the settlement relates to the strengths and weaknesses of the case." *City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494, at *9 (S.D.N.Y. May 9, 2014), *aff'd*, 607 F. App'x 73 (2d Cir. 2015).  A court need only determine whether the settlement falls within a range of reasonableness that "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

Class Counsel, based on their combined, unique experience in complex ERISA actions (*see* Joint Dec. ¶ 9) are confident that they have "a clear view of the strengths and weaknesses of their case []," *Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, No. 01–CV–11814(MP), , 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004) (quotation omitted), and are well aware of the range of possible outcomes at trial.  In assessing the merits of the proposed Settlement, Class Counsel considered the risks and uncertainties of proceeding with the litigation and ultimately prevailing at trial in light of various factors, some of which were made clearer as the Action approached trial. *See* Joint Dec. at ¶ 10.  While Plaintiff survived a summary judgment motion, and the Action was headed to trial, Plaintiff still faced significant risks at trial, as discussed below in Sections 4 (discussing liability) and 5 (discussing damages).

Moreover, even if the Class were to receive a favorable judgment at trial, the additional delay through trial, post-trial motions, and the appellate process could deny the Class any actual recovery for years, further reducing the value of the judgment.  *See Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("[E]ven if a shareholder or Class Member was willing to assume all the risks of pursuing the actions through further litigation . . .

the passage of time would introduce yet more risks and would in light of the time value of money, make future recoveries less valuable than in this current recovery."). Furthermore, a winning verdict does not provide absolute assurance of recovery, where post-trial motions and appeals are likely. *See, e.g., Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1449 (11th Cir. 1997) (reversing on appeal $81 million jury verdict and dismissing case with prejudice in securities action.)[3] *See also Tussey v. ABB Inc*., No. 06-4305 (W.D. Mo.) (ERISA breach of fiduciary duty case where even though the court entered judgment for the class in 2010, there were multiple appeals to the Eighth Circuit Court of Appeals and U.S. Supreme Court, and the case ultimately settled after more than twelve years of litigation); *Tibble v. Edison Int'l*, , CV 07-5359 SVW (AGRx), 2017 WL 3523737, at *1 (C.D. Cal. Aug. 16, 2017) (ERISA breach of fiduciary case which included multiple appeals to the Ninth Circuit and the U.S. Supreme Court). Therefore, this Court should find that this factor also supports final approval of the Settlement.

### 4. Rule 23(e)(2)(C)(ii): Rule 23(e)(2)(C)(ii): The Proposed Method for Distributing Relief Is Effective

On September 11, 2023, the Settlement Administrator provided notice to 185,392 Class Members--172,116 by email and 13,276 by first class mail. This manner of notice and plan of allocation is straightforward and consistent with other similar notice programs involving ERISA settlements. Specifically, the entitlement of Class Members to an allocation of the Net Settlement

---

[3]      Delays, whether due to appeals or otherwise, impose a particular hardship to the Class here, where many of the Class Members have likely retired or are approaching retirement age, given that the retirement investments at issue here are tied to a class period that began seven years ago, in February 2016, and that many of the investors may have been closer to retirement age. *See Millsap v. McDonnell Douglas Corp*., No. 94–CV–633–(HM), 2003 WL 21277124, at *13 (N.D. Okla. May 28, 2003) ("Avoiding delay is particularly important in this case due to the length of the litigation to date and the presence of an aging class."); *Wilkerson v. Martin Marietta Corp*., 171 F.R.D. 273, 288 (D. Colo. 1997) (stating that the "ages of many Class Members also weigh heavily in favor of immediate recovery" and that "monetary provisions of the Consent Decree are more valuable if implemented now than if victims must wait an additional number of years").

Fund and the amount of that allocation will be determined through Plan records and no Class Members will be required to file a claim or provide evidence of their entitlement to an allocation. Allocations to Class Members currently participating in the Plan will be automatically deposited directly into their Plan accounts and enhance their retirement savings. See Settlement Agreement at Article 6.2.1. Other Class Members who do not have an active account will be able obtain their pro rata portion of the Settlement Fund through a direct rollover into an individual retirement account. *See id*. at Articles 6.2.2 and 6.2.3.

It is not surprising, therefore, that to date there have been no objections to the proposed plan of allocation. This factor supports final approval of the Settlement.

### 5.    Rule 23(e)(2)(C)(iii): Class Counsel's Fee Request Is Fair and Reasonable

As discussed in the Plaintiff's Fee Brief, submitted herewith, it is clear that a one-third fee award here would be reasonable and well-deserved, as well as consistent with "a jealous regard to the rights of those who are interested in the fund…." *Goldberger*, 209 F.3d at 53.[4]

### 6.    Rule 23(e)(2)(D): All Class Members Are Treated Equitably Relative to Each Other

As per the Plan of Allocation, each Class Member shall be treated equitably relative to one another. Review of a plan of allocation falls within this Court's broad supervisory power over the

---

[4]    As this Court has specifically noted, a fee of one-third is reasonable. *Schwartz v. Intimacy in New York LLC*, 13 CV 5735 (PGG), 2015 WL 1360777, at *5-6 (S.D.N.Y. Sept. 16, 2016) ("[a]fter Goldberger, when reviewing attorneys' fees under the percentage-of-the-fund method, courts in this district have found attorneys' fees of one-third of the settlement amount to be reasonable"). This Court has frequently award fees of one-third in class action settlements. *See Bannerman v. Air-Sea Packing Group, Inc*., No. 18-cv-06146-PGG, 2020 WL 408350, at *1 (S.D.N.Y. Jan. 24, 2020); *Silva v. Little Fish Corp*., 2012 WL 2458214, at *2-3 (S.D.N.Y. May 1, 2012); *McMahon v. Olivier Cheng Catering & Events LLC*, No. 08 Civ. 8713(PGG), , 2010 WL 2399328, at *7 (S.D.N.Y. Mar. 3, 2010) (citing cases noting that "Class Counsel's request for 33% of the Fund is reasonable under the circumstances of this case and is consistent with the norms of class litigation in this circuit").

settlement, its proceeds, and their ultimate disposition. *In re PaineWebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 132 (S.D.N.Y) ("The review of the plan of allocation is squarely within the discretion of the district court"), *aff'd*, 117 F.3d 721 (2d Cir. 1997). The standard for reviewing a proposed plan of allocation is the same as the standards of fairness and reasonableness that apply to review of proposed settlements. "[T]he adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information." *PaineWebber*, 171 F.R.D. at 133.

As with the Settlement, the opinion of experienced and informed counsel carries considerable weight. *In re Indep. Energy Holdings PLC*, No. 00 Civ. 6689(SAS), 2003 WL 22244676, at *4-5 (S.D.N.Y. Sept. 29, 2003). An allocation formula need only have a reasonable basis, particularly if recommended by experienced class counsel. *In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 429-30 (S.D.N.Y. 2001); *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. MDL 1500, 02 Civ. 5575(SWK), 2006 WL 903236, at *17 (S.D.N.Y. Apr. 6, 2006) (noting class counsel's "experience and competency" in approving a plan of allocation that provided "recovery to damaged investors on a *pro rata* basis according to their recognized claims of damages.")

The goal of a distribution plan is fairness to the class as a whole, taking into consideration the strength of claims based on available evidence. *In re Am. Bank Note Holographics*, 127 F. Supp. 2d at 430. Here, experienced and informed counsel formulated the Plan of Allocation. The Settlement Agreement sets forth a five-step process to provide each Class Member with their *pro rata* share recovery based on each Class Member's actual direct investment in the Global Opportunity Fund or indirect investment through the series of Verizon Target Date Funds, and is similar to the plans of allocation used in other ERISA class action settlements. *See* Settlement

Agreement at Article 6.4.  The Plan of Allocations calculates each Class Member's "Preliminary Entitlement Percentage", which is determined by dividing the Class members "Total Balance" by the total balance for the entire class. *Id*. at Article 6.4.2.  This Preliminary Entitlement Percentage is then multiplied by the Net Settlement Amount; this is the "Preliminary Entitlement Amount." *Id*. at Article 6.4.3.  All Former Participants whose Preliminary Entitlement Amount is less than $50 will be excluded, and calculations above will be repeated, which will then determine the Final Entitlement Amount for each non-excluded Class Member. *Id*. at Articles 6.4.4, 6.4.5.

After payment of costs, taxes, attorneys' fees and expenses, the Net Settlement Amount will be proportionally allocated by the Settlement Administrator to qualifying Class Members based on the Plan of Allocation set forth in the Settlement Agreement and in the mailed Notice of Class Action Settlement and the examples therein.  As a result, the Plan of Allocation clearly has a "reasonable, rational basis" and should be approved by the Court. *In re Global Crossing Sec. & ERISA Litig*, 225 F. R.D. 436, 462 (S.D.N.Y. 2004) (citation omitted).

### C.    The *Grinnell* Factors Are Also Met

#### 1.    The Complexity, Expense, and Likely Duration of the Litigation

"The expense and possible duration of the litigation are major factors to be considered in evaluating the reasonableness of [a] settlement." *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984); *see also In re Alloy, Inc. Sec. Litig.*, 2004 WL 2750089, at *2 (S.D.N.Y. Dec. 2, 2004). Many courts have noted the complexity of ERISA breach of fiduciary duty claims such as those asserted in this Action.  Indeed, in *In re WorldCom, Inc. ERISA Litig.*, an ERISA company stock case, the Court expressly recognized the "general risk inherent in litigating complex claims such as these to their conclusion." 2004 WL 2338151, at *6 (S.D.N.Y. Oct. 18, 2004) (approving settlement). Similarly, in *In re Global Crossing*, the Court explained that ERISA "[f]iduciary

status, the scope of fiduciary responsibility . . . and numerous legal issues concerning fiduciary liability . . . substantially increase the ERISA cases' complexity, duration, and expense – and thus militate in favor of settlement approval."  225 F. R.D. at 456; *see also In re Enron Corp. Sec., Deriv. & "ERISA" Litig.*, 228 F.R.D. 541, 565 (S.D. Tex. 2005) (finding that "complexity, expense and likely duration of the litigation . . . are self-evident and exceptional"); *In re Ikon Office Solutions, Inc. Sec. Litig.*, 209 F.R.D. 94, 104-07 (E.D. Pa. 2002) (same).

This case is no exception. Plaintiff's claims raise numerous complex legal and factual issues under ERISA that would require comprehensive evidentiary support and testimony at trial. The complexity and expense of the case has also been borne out by the time and effort that the Parties and their counsel have put into litigating this matter over the past seven years.  The docket for this case contains over 238 entries.  The Parties were preparing for trial when they agreed to the Settlement after arm's length negotiations before an experienced mediator.  This Settlement eliminates the additional time and expense of litigating this Action at trial and any subsequent appeals. It therefore conserves judicial resources.

There would be considerable additional work left to complete before this Action could be ready for trial.  While trial preparation was underway, there was a month of work ahead to complete the pretrial order, finalize trial exhibits and designation deposition testimony, prepare for cross-examination of witnesses, and draft findings of fact and conclusions of law.

Instead, under the Settlement, $30 million will be deposited in an interest-bearing account, which will benefit the Class if the Settlement is finally approved.

Together, these factors of complexity, expense and duration weigh heavily in favor of final approval of the Settlement.

### 2.    The Reaction of the Class to the Settlement

The reaction the Settlement has been overwhelmingly positive.  While nearly 186,000 Class Members have received notice of the Settlement, to date, there have been no objections. The lack of objections "'may itself be taken as evidencing the fairness of a settlement.'" *RMED Int'l Inc. v. Sloan's Supermarkets, Inc*., No. 94 Civ. 5587(PKL)(RL, 2003 WL 21136726, at *1 (S.D.N.Y., May 15, 2003) (quoting *Ross v. A.H. Robins*, 700 F. Supp. 682, 684 (S.D.N.Y. 1988)). *See also In re Facebook, Inc. IPO Sec. & Derivative Litig*., MDL No. 12–2389, 2015 WL 6971424, at *4 (S.D.N.Y. Nov. 9, 2015) ("It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." (internal citation omitted)); *Strougo v. Bassini*, 258 F. Supp. 2d at 257 (absent a substantial number of objectors or "evidence of fraud or overreaching, courts have consistently refused to act as Monday morning quarterbacks in evaluating the judgment of counsel." (internal citations omitted)).

### 3.    The Stage of the Proceedings and Discovery Completed

For a class action settlement to be found reasonable and appropriate based on the status of discovery, the court does not need to decide the merits of the litigation, but it does need something above "mere conjecture." 4 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 11:45 (4th ed. 2002).  Although there is no litmus test for determining how much work on the case is sufficient to make this determination, whatever the measure, it is easily satisfied here. *See In re Global Crossing*, 225 F.R.D. at 458 ("The question is whether the parties had adequate information about their claims.").

Plaintiff has developed a comprehensive understanding of the key legal issues in this Action based on the late stage of litigation and are therefore in a good position to evaluate the fairness of the Settlement.  The Parties have been litigating this Action vigorously for more than seven years. Plaintiff has conducted an extensive legal and factual investigation and evaluation of

their claims and have engaged in extensive fact and expert discovery practice with Defendants. The Parties exchanged numerous discovery requests; produced and reviewed more than 300,000 pages of documents (including numerous database-like spreadsheets); and took 18 fact and expert depositions. Joint Dec. ¶ 6.  In addition, Plaintiff also served several document subpoenas on non-party witnesses, received numerous documents in response to those subpoenas, and prosecuted a subpoena enforcement action against a non-party who steadfastly refused to produce documents. That subpoena enforcement action was filed in the District of Columbia, transferred to this Court, consolidated with this case and culminated in a contested hearing in front of Magistrate Judge Lehrburger, after which Judge Lehrburger ordered the non-party to produce numerous documents. *See Jacobs v. Verizon Communications, Inc., et al.*, (S.D.N.Y.) 2018-md-537. Accordingly, this factor weighs in favor of final approval of the Settlement.

### 4.      The Risks of Establishing Liability

In assessing the Settlement, the Court should balance the benefits afforded the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation.  *See Grinnell*, 495 F.2d at 436. Certain types of ERISA claims similar to those asserted by Plaintiff here have been described as implicating "a rapidly developing, and somewhat esoteric, area of law."  *In re Global Crossing*, 225 F.R.D. at 459 n.13 (finding plaintiffs' significant legal and factual obstacles to proving their case, when viewed against the substantial and certain benefits of settlement, supported settlement approval).  In Class Counsel's view, the allegations of the complaint would ultimately be borne out by the evidence, but there are, nonetheless, significant hurdles in establishing liability and damages at trial.

15

The Court is fully familiar with Defendants' defenses from the summary judgment motion, and Defendants would have likely re-argued at trial that liability could not be established for two main reasons.

First, Plaintiff and the vast majority of Class members did not invest in the fund directly, but invested indirectly through TDFs. The TDFs were managed, not by Defendants, but by non-parties Russell Investments and J.P. Morgan.  Defendants would argue that these managers were independent fiduciaries who were able to make independent investment decisions for the TDFs, and thus Verizon had no liability as to losses related to the TDFs.  While Plaintiff submits that the record establishes that Russell did not act independently of defendant Verizon Investment Management Corp. ("VIMCO"), Defendants would have remained intent on pursuing this issue in the absence of a settlement.

Second, Defendants would argue that they acted prudently in the design, monitoring, and periodic modification of the Fund.  Defendants would introduce documents, as well as testimony from Defendants and other personnel, which they would argue demonstrate that they fulfilled their fiduciary duties by (1) examining the Fund's performance, and (2) relying on the oversight of investment professionals such as Russell, J.P. Morgan, and others.  Defendants also would proffer the testimony of their expert, Marcia Wagner, who opined that Defendants demonstrated "a very high degree of diligence" that "is consistent with the highest standards observed by the best management retirement plans."  *See* Memorandum of Law In Support of Defendants' Motion for Summary Judgment, at 3. (ECF Doc. No. 181.)  Plaintiff submits that the record refuted these defenses but there is never any assurance that the fact finder would at trial find Plaintiff's position compelling to render a Plaintiff's verdict.

In order to obtain a liability verdict in this case, each of these defenses to Plaintiff's claims would have to be overcome at trial. In light of these obstacles and precedents, the $30 million Settlement is significant. Although Class Counsel is confident in its ability to ultimately prove liability of Defendants on the claims asserted, the risks of a verdict in favor of Defendants at trial, when weighed against the immediate benefits of Settlement, confirm that the Settlement is in the best interest of the Class and therefore should be finally approved.

### 5. The Risks of Establishing Damages

The relevant law on ERISA damages is found in the Second Circuit's influential opinion, *Donovan v. Bierwirth*, 754 F.2d 1049, 1056 (2d Cir. 1985). The Second Circuit stated "[w]here several alternative investment strategies were equally plausible, the court should presume that the funds would have been used in the most profitable of these." *Id. See also LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 253 n.4 (2008) ("[Section] 502(a)(2) encompasses appropriate claims for 'lost profits.'"). Plaintiff maintains that the risk in proving damages resides primarily in the complexity of the calculation. Damages calculations in ERISA cases like this are expert-intensive. In calculating damages, Plaintiff's expert first determined what would have occurred and the economic impact but-for the alleged improper investment strategy.

While Plaintiff is confident in their ability to establish substantial damages, they are also aware that the presentation of such complex testimony might lead to a "battle of the experts" which involves risks that Settlement avoids. *In re Milken & Assocs. Sec. Litig.*, 150 F.R.D. 46, 54 (S.D.N.Y. 1993) (approving settlement of small percentage of the total damages sought because the magnitude of damages often becomes a "battle of experts . . . with no guarantee of the outcome"); *Bonime v. Doyle*, 416 F. Supp. 1372 (S.D.N.Y. 1976), *aff'd*, 556 F.2d 554 (2d Cir.

1977), and *aff'd*, 556 F.2d 555 (2d Cir. 1977) (difficulty in determining damages is a factor supporting settlement).

Defendants would likely argue at trial that Plaintiff's damages expert, Cynthia Jones, failed to properly apply the standard put forth in *Bierwith*, and used improper methodologies to compare what the Plan actually earned with what the Plan would have earned had the Fund's investments been invested in a plausible alternative investment. Defendants would argue, among other things, that Ms. Jones's "Equity Benchmark" did not represent a realistic alternative investment strategy, and should not be used in calculating damages. Similarly, while the Fund underperformed its hurdle rate almost every year since 2007, it may not have underperformed compared to other metrics, including the HFRX Absolute Return Index and the HFRI Weighted Composite Index. Comparing the Fund to these and/or other alternative investments, Defendants would argue that damages would be much smaller than what Plaintiff claimed, if not zero.

Furthermore, Defendants would argue that, for reasons set forth in Section III.C.4 above, only direct investments in the Fund should be included in any damages calculation, and any investments through TDFs should be excluded. If the Court excluded such investments, Plaintiff's damages calculation would be reduced significantly.

The complexities in establishing ERISA damages here are similar to those the court explained in *In re Global Crossing*:

> aside from difficulties involved in calculating the ERISA damages, the parties disagree on the law bearing on ERISA damages, including whether loss causation . . . apply to the ERISA 401(k) Actions. These legal disagreements would no doubt lead to motions that would introduce additional time, expenses, uncertainty. In short, the legal and factual complexities and uncertainties of the ERISA damages case also militate in favor of settlement.

225 F.R.D. at 460. This factor, like the others, weighs in favor of the sum-certain Settlement proposed here, and thus the Settlement should be finally approved.

18

### 6.    The Risks of Maintaining the Class Action through Trial

The Court granted class certification on September 29, 2020 (ECF Doc. No. 163), and the Action has proceeded as a class action since that decision.   From a practical standpoint, certification provides procedural advantages that have enabled the efficient litigation of the claims asserted by Plaintiff in this Action and Plaintiff does not anticipate that the Class would be decertified at any point prior to trial, particularly at this stage in the litigation.   However, class certification can be reviewed and modified by the Court at any time before trial, or on appeal, so there is always a risk that this Action or particular claims in this Action, may not be maintained for the Class through trial.   Thus, the risk of failing to maintain the Class through trial – albeit small – also weighs in favor of the Court giving final approval to the Settlement.

### 7.    The Ability of Defendants to Withstand a Greater Judgment

Plaintiff does not believe that this factor is an issue due to the financial stability of Defendants and their resultant ability to satisfy a judgment in this case, but that factor standing alone is insufficient to defeat approval of the Settlement.   *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001) (the ability to withstand higher judgment "standing alone, does not suggest that the settlement is unfair."); *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695(CM), 2007 WL 4115809, at *11 (S.D.N.Y. Nov. 7, 2007) (defendant's substantial net worth "alone does not prevent the Court from approving the Settlement where the other *Grinnell* factors are satisfied").

### 8.    The Reasonableness of the Settlement in Light of the
### Best Possible Recovery and the Attendant Risks of Litigation

In evaluating a proposed settlement, a court is not required to engage in a trial on the merits to determine the prospects of success.   *In re Milken & Assocs. Sec. Litig.*, 150 F.R.D. at 54.   The adequacy of the amount offered in settlement must be judged "not in comparison with the possible

recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989) (citation omitted).   The Court thus need only determine whether the Settlement falls within a "range of reasonableness." *PaineWebber*, 171 F.R.D. at 130 (citations omitted).   The Second Circuit has said that "a range of reasonableness" is a range which "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman*, 464 F.2d at 693.

Here the $30 million Settlement—which is large and substantial in its own right—represents a meaningful percentage of the potentially provable losses that Plaintiff believes she could show if liability were established, and depending on how many of the numerous issues concerning their damage calculation were resolved in favor of the Class by the Court. Plaintiff's damages calculations have varied and evolved with this case.

Based on comparing the performance of the Global Opportunity Fund to an Equity Investment Benchmark, Plaintiff's expert Cynthia Jones estimated damages, for the period between April 30, 2010 and January 31, 2017, to be between $102.6 and $231 million.  Joint Dec. ¶ 10.  Therefore, the Settlement Amount represents a range of recovery, approximately 13 to 29.2 percent, that is appropriate, given the wide range of potential damage outcomes at trial—as well as the possibility of a verdict in favor of Defendant that would result in zero recovery for the Class. This range is similar to the range in other approved ERISA class action settlements.[5]  For example,

---

[5]     *See Cates v. Trs. of Columbia Univ.*, 1:16-cv-06524 (GBD) (SDA), 2021 WL 4839619 (S.D.N.Y. Sept. 28, 2021) and ECF Doc. No. 457 at 12 (approving $13 million ERISA settlement which represented 2% of as much as $626 million maximum damages); *In re J.P. Morgan Stable Value Fund ERISA Litig.,* 12-cv-2548 (VSB), 2019 WL 4734396 (S.D.N.Y. Sept. 23, 2019) and ECF No. 457 at 28 (approving $75 million ERISA settlement which represented 13.5% to 18.29% of maximum damages);  *Sims v. BB&T Corp.*, No. 1:15-CV-732, 2019 WL 1993519, at *2 (M.D.N.C. May 6, 2019) ($24 million ERISA settlement representing 19% of alleged damages);

in 2021, a $30 million settlement would have been tied for the fifth largest ERISA class action settlement that year. *See Seyfarth Shaw's Annual Workplace Class Action Reports for 2022*, at 33.[6]

It is also noteworthy that in *Grinnell* itself, the court approved a settlement totaling approximately 3% of provable damages.  Then on appeal the Second Circuit stated "there is no reason at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell*, 495 F.2d at 455 n.2.

The $30 million cash Settlement, representing a meaningful percentage of the estimated damages as discussed above, is also well in excess of the approximate 2 to 3 percent threshold typically approved in class action settlements involving complex litigation by courts in the Second Circuit.  For example, a survey of approved class action securities settlements looked at settlements between $25 and $74 million and reported a 7.4% median settlement as a percentage of estimated damages for cases between 2013 and 2022, and 8.5% for 2022 cases. See Securities Class Action Settlements, 2022 Review and analysis, Cornerstone Research, at 6.[7]  *See, e.g., In re Initial Pub.*

---

*Urakchin v. Allianz Asset Mgmt. of Am., L.P.,* 8:15-cv-01614-JLS-JCG, 2018 WL 8334858, at *4 (C.D. Cal. Jul. 30, 2018) ($12 million ERISA settlement representing as little as 17.7% of maximum alleged damages); *In re Am. Int'l Group, INC. ERISA Litig. II*, No. 1:08-cv- 05722-LTF-DCF (S.D.N.Y.), ECF Doc. No. 254 at 14-15 and ECF Doc. No. 266 at 6 (approving $40 million settlement or 13.25% of $302.4 million maximum exposure); *In re Textron, Inc. ERISA Litig.*, No. 09-cv-00383 (D.R.I.), ECF Doc. No. 109-1 at 13 and ECF Doc. No. 117 (approving $4.4 million settlement or approximately 5.5% to 11% of maximum damages ranging between $40 million to $80 million); *Otte v. Life Ins. Co. of N. Am.*, No 1:09-cv-11537-RGS (D. Mass.), ECF Doc. No. 107 at 17 and ECF Doc. No. 116 (approving $8.1 million settlement or approximately 15% of $55 million exposure); *see also* ERISA CLASS ACTION SETTLEMENTS AND ATTORNEY FEES, FIDUCIARY COUNSELORS INC., available at http://www.erisasettlements.com/press/ERISA-Chart.pdf (last visited October 19, 2023).

[6]     https://www.content.seyfarth.com/publications/Workplace-Class-Action-Report-2022/14/.

[7]     https://www.cornerstone.com/wp-content/uploads/2023/03/Securities-Class-Action-Settlements-2022-Review-and-Analysis.pdf

*Offering Sec. Litig.*, 671 F. Supp. 2d 467, 483-85 (S.D.N.Y. 2009) (approving settlement that represented 2% of defendants' maximum liability and noting, "the Second Circuit has held that a settlement amount of even a fraction of the potential recovery does not render a proposed settlement inadequate"); *In re Prudential Sec. Inc. Ltd. P'Ships Litig.*, No. 1005, M–21–67 (MP), 1995 WL 798907 (S.D.N.Y. Nov. 20, 1995) (approving settlement of between 1.6 and 5% of claimed damages).

Considering the present and time-value of money, the probability of a lengthy and involved trial in the absence of a settlement, the risk that the Class would not succeed in proving liability against Defendant and the range of possible recovery at trial, the Settlement is well within the range of reasonableness. As Judge Harmon aptly put it when approving of the settlements in *In re Enron*, "The settlement at this point would save great expense and would give the Plaintiffs hard cash, a bird in the hand." 228 F.R.D. at 566*; see also In re Global Crossing*, 225 F.R.D. at 461 ("The prompt, guaranteed payment of the settlement money increases the settlement's value in comparison to some speculative payment of a hypothetically larger amount years down the road.") (citation omitted).

***

Based upon extensive legal research, all fact and expert discovery, analysis of the risks inherent in continued litigation, the risks of establishing liability and damages at trial, and the likelihood of appeals regardless of which side prevailed at trial, Class Counsel unequivocally support the Settlement and the immediate and definite benefit it provides to Class Members, and submit that this court should grant final approval to the Settlement.

## IV.    CONCLUSION

For the reasons discussed herein, the Settlement is a fair, reasonable, and adequate resolution of the claims against Defendants in this complex class action brought under ERISA. Thus, Plaintiff and Co-Lead Class Counsel respectfully request that the Court grant their motion for final approval of the Settlement and (1) enter the Proposed Final Order Approving Class Action Settlement; (2) enter the separate Proposed Findings of Fact and Conclusions of Law Granting Plaintiff's Motion for an Award of Attorney's Fees, Costs, and Service Payment; and (3) direct the clerk to enter the Proposed Judgment.

Dated: October 19, 2023

Respectfully submitted,

By: /s/ *Daniella Quitt*
    Daniella Quitt
    Gregory B. Linkh
    745 Fifth Avenue, 5th FL
    New York, New York 10151
    Telephone: (212) 935-7400
    dquitt@glancylaw.com
    glinkh@glancylaw.com


**SCHNEIDER WALLACE COTTRELL KONECKY LLP**

By: /s/ *James A. Bloom*
James A. Bloom (admitted *pro hac vice*)
Todd M. Schneider (admitted *pro hac vice*)
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
jbloom@schneiderwallace.com
tschneider@schneiderwallace.com

John F. Edgar
**EDGAR LAW FIRM LLC**
1032 Pennsylvania Avenue
Kansas City, Missouri 64105
Telephone: (816) 531-0033
jfe@edgarlawfirm.com

*Class Counsel*