**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MELINA N. JACOBS, On Behalf of Herself and All Others Similarly Situated,<br><br>    Plaintiff,<br><br>  v.<br><br>VERIZON COMMUNICATIONS, INC.; VERIZON INVESTMENT MANAGEMENT CORP.; THE VERIZON EMPLOYEE BENEFITS COMMITTEE; MARC C. REED; MARTHA DELEHANTY; ANDREW H. NEBENS; CONNIA NELSON; SHANE SANDERS; ROBERT J. BARISH; and DONNA C. CHIFFRILLER,<br><br>    Defendants. | Civil Action No.: 1:16-cv-01082-PGG-RWL |

**PLANTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEY'S FEES, COSTS, AND SERVICE PAYMENT**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................... iv

I.     INTRODUCTION ...................................................................................................1

II.    THE REQUESTED ATTORNEYS' FEES ARE REASONABLE AND
APPROPRIATE...........................................................................................................2

      A.    Plaintiff's Requested Attorneys' Fees Are Reasonable as a Percentage
of Recovery ........................................................................................................ 3

      B.    The Goldberger Factors Also Show That the Requested Attorneys' Fee
Award is Reasonable.........................................................................................7

            1.   Class Counsel Dedicated Significant Time and Labor to  ...............................7

            2.   The Litigation was of Great Magnitude and Extremely Complex..................10

            3.   The Risk of Litigation Was Substantial ..........................................................11

            4.   Counsel for Both Parties are Highly Competent and Qualified......................12

            5.   The Requested Attorneys' Fee is Reasonable Compared to the
Substantial Benefits the Settlement Confers on the Class ...............................13

            6.   Public Policy Considerations Favor the Attorneys' Fee Request ...................14

      C.    The Lodestar Cross-Check Confirms the Reasonableness of the
Requested Fee ...................................................................................................15

III.   CLASS COUNSEL ARE ENTITLED TO REIMBURSEMENT OF THEIR
LITIGATION EXPENSES ...................................................................................17

IV.   THE CLASS REPRESENTATIVE IS ENTITLED TO A SERVICE PAYMENT
IN THE AMOUNTS REQUESTED ....................................................................19

      A.    Courts Routinely Award Service Payments to Representative Plaintiffs
Who Provide Substantial Assistance, Especially in Employment Cases............. 19

      B.    The Proposed Awards are Reasonable and Appropriate in Proportion to
the Class Fund as Well as to the Individual Settlement Benefits to the
Class Members.....................................................................................................21

V.      CONCLUSION...................................................................................................22

# TABLE OF AUTHORITIES

**Cases**                                                                       **Page**

*Abbott et al. v. Lockheed Martin Corp.*
  Case 06-cv-701-MJR-DGW (S.D. Ill. Sept. 17, 2015) ............................................. 6

*Abbott v. Lockheed Martin Corp.,*
  No. 06-cv-701 MJR-DGW,
  2015 WL 4398475 (S.D. Ill. July 17, 2015) ........................................................... 22

*Amara v. Cigna Corp.*,
  2018 U.S. Dist. LEXIS 202717 (D. Conn. Nov. 29, 2018) .................................... 21

*Beckman v. KeyBank, N.A.*,
  293 F.R.D. 467 (S.D.N.Y. 2013) ..................................................................... 6, 10

*Bekker v. Neuberger Berman Grp. 401(k) Plan Inv. Comm.*,
  504 F. Supp. 3d 265 (S.D.N.Y. 2020) .................................................................. 11

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ............................................................................................. 3

*Carver vs. Bank of New York Mellon, et al.*,
  No. 17-cv-10231 JPO (S.D.N.Y. May 23, 2019) .................................................... 5

*Cates v. Trs. of Columbia Univ.*,
  No. 1:16-cv-06524-GBD,
  2021 U.S. Dist. LEXIS 200890 (S.D.N.Y. Oct. 18, 2021) ............................... 1, 4, 6

*Fleisher v. Phoenix Life Ins. Co.,*
  No. 11-cv-8405 CM,
  2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) ......................................... 10, 16, 17

*deMunecas v. Bold Food, LLC*,
  No. 09-cv-440 DAB,
  2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010) .................................................. 6, 16

*Fastener Dimensions, Inc. v. Mass Mutual Life Ins. Co.*,
  Nos. 12-cv-8919 (DLC), 13-cv-4782 (DLC),
   2014 WL 5455473 (S.D.N.Y. Oct. 28, 2014) ..................................................... 15

*Goldberger v. Integrated Resources, Inc.*,
  209 F.3d 43, 50 (2d Cir. 2000) ................................................................... passim

*Gordan v. Mass. Illfut. Life Ins. Co.*,
   No. 13-30184,
   2016 WL 11272004 (D. Mass. Nov. 3, 2016) ........................................................... 5

*Grice v. Pepsi Beverages Co.*,
   363 F. Supp. 3d 401 (S.D.N.Y. 2019) ................................................................ 16

*Hall v. Children's Place Retail Stores Inc.*,
   669 F. Supp. 2d 399 (S.D.N.Y. 2009) ................................................................. 4

*In re Colgate-Palmolive Co. ERISA Litig.*,
   36 F. Supp. 3d 344 (S.D.N.Y. 2014) ....................................................... 14, 15, 17

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
   2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015) ..................................................... 7, 14

*In re Giant Interactive Group, Inc.*,
   279 F.R.D. 151 (S.D.N.Y. 2011) ...................................................................... 17

*In re Hi-Crush Partners L.P. Sec. Litig.*,
   No. 12-cv-8557 CM,
   2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ....................................................... 7

*In re J.P. Morgan Stable Value Fund ERISA Litig.*,
   No. 12-CV-2548 (VSB),
   2019 U.S. Dist. LEXIS 163884 (S.D.N.Y. Sept. 23, 2019) ............................... 1-2, 4, 14

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010) ................................................................ passim

*In re Northrup Grumman Corp. ERISA Litig.*,
   No. 06-6213,
   2017 WL 9614818 (C.D. Cal. Oct. 24, 2017) ....................................................... 5

*In re Tremont Securities Law, State Law and Insurance Litig.*,
   No. 08 Civ. 112117 (CM)(GWG),
   2019 WL 516148 (S.D.N.Y. Feb. 11, 2019) ....................................................... 16

*In re: Libor-Based Financial Instruments Antitrust Litig.*,
   No. 11 MD 2262 (NRB),
   2018 WL 3863445 (S.D.N.Y. Aug. 14, 2018) ............................................... 2, 3, 18

*Kelly v. Johns Hopkins Univ.*,
   No. 1:16-cv-2835-GLR,
   2020 U.S. Dist. LEXIS 14772 (D. Md. Jan. 28, 2020) ...................................... 5, 11

*Kirby v FIC Restaurants, Inc.*,
  No. 19-1306,
  2020 WL 5791582 (N.D.N.Y. Sept. 28, 2020) ........................................................ 3

*Krueger v. Ameriprise Fin. Inc.*,
  No. 11-2781,
  2015 WL 4246879 (D. Minn. July 13, 2015) ......................................................... 6

*Leber v. The Citigroup 401(k) Pension Plan Investment Committee, et al.*,
  No. 07-cv-09329 (S.D.N.Y. Jan. 3, 2019) ............................................................. 5

*Maley v. Del Glob. Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) .................................................................. 12

*Masters v. Wilhelmina Model Agency, Inc.*,
  473 F.3d 423 (2d Cir. 2007) .............................................................................. 20

*Matheson v. T-Bone Rest., LLC*,
  No. 09-cv-4214 DAB,
  2011 WL 6268216 (S.D.N.Y. Dec. 13, 2011) ................................................. 20, 21

*Meredith Corp. v. SESAC, LLC*,
  87 F. Supp. 3d 650 (S.D.N.Y. 2015) .................................................................. 12

*Meza v. 317 Amsterdam Corp.*,
  No. 14-cv-9007 VSB,
  2015 WL 9161791 (S.D.N.Y. Dec. 14, 2015) ......................................................... 6

*Mills v. Capital One, N.A.*,
  No. 14-cv-1937 HBP,
  2015 WL 5730008 (S.D.N.Y. Sept. 30, 2015) ..................................................... 19

*Morris v. Affinity Health Plan, Inc.*,
  859 F. Supp. 2d 611 (S.D.N.Y. 2012) .................................................................. 7

*Osberg v. Foot Locker, Inc.*,
  No. 07-cv-1358 (S.D.N.Y. June 8, 2018) .............................................................. 5

*Pu v. Russell Publ'g Group, Ltd.*,
  No. 15-cv-3936 VSB,
  2017 WL 4402544 (S.D.N.Y. Sept. 30, 2017) ..................................................... 17

*Reyes v. Altamarea Grp., LLC*,
  No. 10-cv-6451 RLE,
  2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011) ..................................................... 20

*RMED Int'l Inc. v. Sloan's Supermarkets, Inc.*,
   No. 94 Civ. 5587,
   2003 WL 21136726 (S.D.N.Y., May 15, 2003) ..................................................... 13

*Roberts v. Texaco, Inc.*,
   979 F. Supp. 185 (S.D.N.Y. 1997) ........................................................................ 20

*Ross v. A.H. Robins*,
   700 F. Supp. 682 (S.D.N.Y. 1988) ........................................................................ 13

*Sacerdote v. N.Y. Univ.*,
   328 F. Supp. 3d 273 (S.D.N.Y. 2018) ................................................................... 11

*Sewell v. Bovis Lend Lease, Inc.*,
   No. 09-cv-6548 RLE,
   2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012) ....................................................... 15

*Shapiro v. JPMorgan Chase & Co.*,
   No. 11-cv-7961 CM,
   2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014). ...................................................... 14

*Spano v. The Boeing Co.*,
   Case 3:06-CV-00743-MJR-DGW,
   2016 U.S. Dist. LEXIS 161078 (S.D. Ill. March 31, 2016) ................................ 5, 21

*Strougo v. Bassini*,
   258 F. Supp. 2d 254 (S.D.N.Y. 2003) ............................................................... 3, 13

*Tiro v. Pub. House Invs., LLC*,
   No. 11-cv-7679,
   2013 WL 4830949 (S.D.N.Y. Sept. 10, 2013) ...................................................... 11

*Vellali, et al., v. Yale Univ., et al.*,
   No. 16-cv-1345 (June 28, 2023 D. Conn.) ............................................................ 11

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) ..................................................................................... 3

*Wright v. Stern*,
   553 F. Supp. 2d 337 (S.D.N.Y. 2008) ............................................................. 12, 20

*Yuzary v. HSBC Bank USA, N.A.*,
   2013 U.S. Dist. LEXIS 144327 (S.D.N.Y. Oct. 2, 2013) ........................................ 3

**Rules**

Fed. R. Civ. P. 23(h) ...................................................................................................... 3

## I.      INTRODUCTION

After seven years of hard-fought litigation, Plaintiff and her counsel have achieved one of the largest settlements for an ERISA breach of fiduciary duty claim over the last several years. Having secured a monumental $30 million settlement on behalf of retirees and employees—while their counsel worked on contingency for seven years, without any guarantee of recovery—Plaintiff, on behalf of the class certified in this matter, seeks an award of $10 million in attorneys' fees, $550,361.80 in litigation costs, and a $30,000 class representative service award.

The requested attorneys' fee award represents one-third of the $30 million common fund created for the benefit of the class. Under this Court's precedent, this fee is reasonable, both as a percentage of the common fund and when compared to Class Counsels'[1] cumulative lodestar, which conservatively totals $6.6 million. Class Counsel achieved great success for the class in exceedingly risky and complex litigation. To do so, they invested close to $7.2 million in attorney time and litigation costs over seven years with no guarantee that this investment would ever be repaid. An attorneys' fee award of one-third of the fund is supported by (1) comparable ERISA cases in this district and others; (2) this district's established practice in other types of litigation that advances important public interests, including employment-related litigation; and (3) the guidelines set forth in *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). *See In re Marsh ERISA Litig.*, 265 F.R.D. 128, 147-50 (S.D.N.Y. 2010) (awarding 33.3 percent of the common fund as attorneys' fees in ERISA action); *Cates v. Trs. of Columbia Univ.*, No. 1:16-cv-06524-GBD, 2021 U.S. Dist. LEXIS 200890, at *6 (S.D.N.Y. Oct. 18, 2021) (same); *In re J.P.*

---

[1]      On September 29, 2020, the Court approved Magistrate Judge Lehrburger's Report and Recommendation (ECF Doc. No.  152) and appointed as class counsel the firms of Schneider Wallace Cottrell Konecky LLP, Edgar Law Firm LLC, and Glancy Prongay & Murray LLP (collectively, "Class Counsel"). ECF Doc. No.  163.

*Morgan Stable Value Fund ERISA Litig.*, No. 12-CV-2548 (VSB), 2019 U.S. Dist. LEXIS 163884, at *14 (S.D.N.Y. Sep. 23, 2019) (same).

Class Counsel are also entitled to reimbursement of reasonable litigation costs. The litigation costs here amount to less than two percent of the common fund. This is more than reasonable in complex litigation such as this, which necessarily involved substantial expert and discovery costs. *See In re: Libor-Based Financial Instruments Antitrust Litig.*, No. 11 MD 2262 (NRB), 2018 WL 3863445, *1 (S.D.N.Y. Aug. 14, 2018) (approving reimbursement of litigation expenses that were close to six percent of the total settlement amount "given the complexities of this case and the necessity of extensive expert involvement").

Finally, Plaintiff seeks a service award of $30,000. The service award is justified by Plaintiff's contribution to this matter, which included sitting for depositions and producing significant numbers of documents reflecting her private financial records, actively monitoring the litigation, and participating in the settlement process.

## II. THE REQUESTED ATTORNEYS' FEES ARE REASONABLE AND APPROPRIATE

The $30 million settlement in this case is notable for being one of the largest ERISA settlements in recent years, according to data compiled by Seyfarth Shaw LLP in its Annual Workplace Class Action Litigation Reports, the Settlement in this case would have been among the five largest private-plaintiff ERISA settlements in 2020 and 2021, the most recent years for which data is available. Joint Declaration of James A. Bloom and Daniella Quitt in Support of Plaintiff's Motion for an Award of Attorney's Fees, Costs and Service Payment ("Joint Dec.") ¶ 27. To obtain this settlement and in turn provide a meaningful recovery to hundreds of thousands of class members, Class Counsel effectively and diligently litigated this matter for over seven years without compensation and are now entitled to a reasonable attorneys' fee.

Courts in this circuit have discretion to award attorneys' fees in class actions under either the "percentage-of-the-fund" method or the "lodestar" method. *Goldberger*, 209 F.3d at 50. The trend in the Second Circuit, however, is to use the percentage-of-the-fund method with a lodestar cross-check. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) ("The trend in this Circuit is towards the percentage method . . . ."); *In re: Libor-Based Financial Instruments Antitrust Litig.*, 2018 WL 3863445, at *3; *Yuzary v. HSBC Bank USA, N.A.*, 2013 U.S. Dist. LEXIS 144327, at *24-25 (S.D.N.Y. Oct. 2, 2013). Regardless of which method is used, however, the reasonableness of the fee is determined by the so-called *Goldberger* factors: (1) the time and labor expended by counsel, (2) the magnitude and complexities of the litigation, (3) the risk of the litigation, (4) the quality of representation, (5) the requested fee in relation to the settlement, and (6) public policy considerations. *Goldberger*, 209 F.3d at 50. As set forth below, precedent from this and other courts, guided by the *Goldberger* factors, support the fee award sought by Plaintiff here.

### A. Plaintiff's Requested Attorneys' Fees Are Reasonable as a Percentage of Recovery

Class Counsel is entitled to a reasonable fee award from the common fund. Fed. R. Civ. P. 23(h); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). The "trend in the Circuit is towards the percentage method" because it "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) (internal citations omitted); *see also Strougo*, 258 F. Supp. 2d at 261. Further, "[t]he percentage method also 'mimics the compensation system actually used by individual clients to compensate their attorneys,'" *Kirby v FIC Restaurants, Inc.*, No. 19-1306, 2020 WL 5791582, at *5 (N.D.N.Y. Sept. 28, 2020) (internal citations omitted), and "aligns

the interests of the class and its counsel" while incentivizing "the efficient prosecution and early resolution of litigation." *Hall v. Children's Place Retail Stores Inc.,* 669 F. Supp. 2d 399, 401 (S.D.N.Y. 2009) (citation omitted).

Plaintiff requests one-third of the common fund for attorneys' fees.  This percentage is well within the range of reasonable attorneys' fees approved in other complex class actions in this Circuit. The most comparable precedent is *In re Marsh ERISA Litigation,* where this Court found a fee of over $11 million, or one-third of the recovery, was "fair and reasonable in relation to the recovery and compares favorably to fee awards in other risky common fund cases in this Circuit and elsewhere." 265 F.R.D. at 149.  Like this case, *In re Marsh* was litigated over several years. Indeed, *In re Marsh* involved five years of litigation while this case took seven years.  Also, like this case, *In re Marsh* involved a complex and unsettled ERISA issue.  *In re Marsh* was a company stock drop case.  This case involves a hedge fund "fund of funds," a complex and little-understood financial product that has not been the subject of much ERISA litigation.   Other similarities between *In re March* and this case are discussed below in connection with the *Goldberger* factors.

Another comparable ERISA precedent is *In re J.P. Morgan Stable Value Fund ERISA Litig.*, No. 12-CV-2548 (VSB), 2019 U.S. Dist. LEXIS 163884 (S.D.N.Y. Sep. 23, 2019). Like this case, which involved hedge funds, *In re J.P. Morgan Stable Value Fund ERISA Litig.* involved unusual financial products held by retirement plans called "stable value" funds, which like hedge funds have complex capital, investment and fee structures.  *In re J.P. Morgan Stable Value Fund ERISA Litig.* was also litigated over seven years. In that case, the Court awarded attorneys' fees of $25 million, representing one-third of the common fund settlement of $75 million.

This Court has also awarded attorneys' fees of one-third of the settlement fund in other ERISA cases including: *Cates*, 2021 U.S. Dist. LEXIS 200890, at *6 (S.D.N.Y. Oct. 18, 2021) (in

ERISA breach of fiduciary duty case, awarding attorneys' fees in the amount of $4,333,333.33, equal to one-third of the $13 million settlement); *Carver v. Bank of New York Mellon, et al*., No. 17-cv-10231 JPO, Dkt. 222, (S.D.N.Y. May 23, 2019[2]) (in ERISA breach of fiduciary duty case, awarding attorneys' fees in the amount of $4,166,250, equal to 33.33% of the $12.5 million settlement); *Leber v. The Citigroup 401(k) Pension Plan Inv. Comm., et al.,* No. 07-cv-09329, Dkt. 294 (S.D.N.Y. Jan. 3, 2019) (where class alleged, among other things, that the fiduciaries responsible for overseeing the plan breached their duties under ERISA by allowing the plan to invest in certain funds managed by, and paying allegedly high fees to, Citigroup affiliated entities, awarding attorneys' fees of $2.3 million, equal to one-third of the monetary fund, and $15,000 for each named plaintiff); *see also Osberg v. Foot Locker, Inc.*, No. 07-cv-1358, Doc. 423 (S.D.N.Y. June 8, 2018) (in ERISA breach of fiduciary duty case, awarding a common fund attorneys' fee award of $95,198,381, equal to 33% of the common fund of $288,479,943).

*In re Marsh* and *In re JPM Stable Value Fund ERISA Litig.* are also consistent with ERISA cases from other districts that have awarded attorneys' fees of around one-third of a settlement fund, even where the fund is substantial. *See, e.g., Kelly v. Johns Hopkins Univ.*, No. 1:16-cv-2835-GLR, 2020 U.S. Dist. LEXIS 14772, at *8 (D. Md. Jan. 28, 2020) (remarking that "a one-third fee is the market rate" in ERISA fiduciary breach cases involving fees); *In re Northrup Grumman Corp. ERISA Litig.,* No. 06-6213, 2017 WL 9614818 (C.D. Cal. Oct. 24, 2017) (awarding attorneys' fees of one-third of a $16.75 million common fund recovery); *Gordan v. Mass. Mut. Life Ins. Co.,* No. 13-30184, 2016 WL 11272004 (D. Mass. Nov. 3, 2016) (awarding attorneys' fees of one-third of a $30.9 million common fund recovery); *Spano v. The Boeing Co.,*

---

[2]     All slip opinions not reported in Westlaw or LEXIS are included as Exhibit D to the Joint Dec.

Case 3:06-CV-00743-MJR-DGW, 2016 U.S. Dist. LEXIS 161078, at *3-5 (S.D. Ill. March 31, 2016) (awarding $19 million in attorneys' fees, one-third of a $57 million recovery); *Abbott et al. v. Lockheed Martin Corp.* Case 06-cv-701-MJR-DGW, Doc. 525 (S.D. Ill. Sept. 17, 2015) (awarding $20 million in attorneys' fees, nearly one-third of a $62 million recovery); *Krueger v. Ameriprise Fin. Inc.,* No. 11-2781, 2015 WL 4246879 (D. Minn. July 13, 2015) (awarding attorneys' fees of one-third of a $27.5 million common fund recovery).

Furthermore, as the Court noted in *In re Marsh*, the requested one-third fee award "compares favorably to fee awards in other risky common fund cases in this Circuit and elsewhere" and is "well within the range of awards made by district courts in this Circuit." 265 F.R.D. at 149. *See also Cates*, 2021 U.S. Dist. LEXIS 200890, at *19 (S.D.N.Y. Oct. 18, 2021) ("Courts in this District routinely approve fee awards of one-third of the common fund or more…."); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 477 (S.D.N.Y. 2013) ("Class Counsel's request for 33% of the Fund is reasonable and consistent with the norms of class litigation in this circuit.") This Court has acknowledged as much, albeit on a smaller recovery. *Meza v. 317 Amsterdam Corp.*, No. 14-cv-9007 VSB, 2015 WL 9161791, at *2 (S.D.N.Y. Dec. 14, 2015) ("[C]ourts regularly approve attorney's fees of one-third of the settlement amount in FLSA cases."). Significantly, *Meza* arose in the context of the Fair Labor Standards Act, a law that, like ERISA, seeks to protect rights of employees and is designed to allow the litigation of relatively small individual claims via aggregation and statutory attorneys' fees awards to deter violations of the law. *See also deMunecas v. Bold Food, LLC*, No. 09-cv-440 DAB, 2010 WL 3322580, at *9 (S.D.N.Y. Aug. 23, 2010) (collecting several FLSA and other employment-related cases where attorneys' fees of one-third of the recovery were approved).

A fee of one-third of the settlement fund is also in line with class settlements in non-employment cases in this district. *In re Facebook, Inc. IPO Sec. & Derivative Litig.,* No. MDL 12-2389, 2015 WL 6971424, at *11 (S.D.N.Y. Nov. 9, 2015) ("A fee award of one-third of the Settlement Fund is well within the range accepted by courts in this circuit.") (internal quotations omitted); *In re Hi-Crush Partners L.P. Sec. Litig.,* No. 12-cv-8557 CM, 2014 WL 7323417, at *18 (S.D.N.Y. Dec. 19, 2014) (same).

This is because, among other reasons, an award of one-third of the recovery is consistent with (and often less than) what clients typically pay under private contingent agreements. *See, e.g., Morris v. Affinity Health Plan, Inc.,* 859 F. Supp. 2d 611, 623 (S.D.N.Y. 2012) (supporting class counsel's request for one-third of the fund as attorneys' fees because "reasonable, paying client[s] typically pay one-third of their recoveries under private retainer agreements") (citation omitted).

In summary, ERISA cases from this and other districts, as well as cases from this district arising from employment and other types of litigation, support an attorneys' fee award of one-third of the total settlement fund under the arduous and risky circumstances of this case.

**B.      The *Goldberger* Factors Also Show That the Requested Attorneys' Fee Award is Reasonable**

All the *Goldberger* factors strongly support the requested fee award.  Class Counsel have invested a vast amount of time and resources in a difficult litigation undertaken purely on a contingency basis. Despite the high degree of risk involved, Class Counsel were able to achieve a highly favorable result for the Class.

**1.      Class Counsel Dedicated Significant Time and Labor to This Case**

As set forth in the attached declarations of Class Counsel and the supporting exhibits, Class Counsel have dedicated significant time and labor to this case, with a cumulative lodestar of more than $6.6 million. Joint Dec. ¶ 4. Since Class Counsel began investigating this matter

approximately eight years ago, Class Counsel have devoted more than 7,200 hours to the successful pursuit of this matter. Joint Dec. ¶ 5. The lodestar by firm is summarized below:

| FIRM | HOURS | LODESTAR |
|---|---|---|
| Schneider Wallace Cottrell Konecky LLP | 4,170.5 | $ 4,046,489.00 |
| Glancy Prongay & Murray LLP | 2,158.3 | $ 1,907,997.50 |
| Edgar Law Firm LLC | 892.50 | $ 718,312.50 |
| **TOTAL** | **7,221.30** | **$ 6,672,799.00** |

*See* Declaration of James A. Bloom, ¶¶ 8, 15-16 (and Exhibit B thereto), attached as Exhibit A to the Joint Dec.; Declaration of Daniella Quitt, ¶¶ 9-10 (and Exhibit B thereto), attached as Exhibit B to the Joint Dec., and Declaration of John F. Edgar, ¶ 5, attached as Exhibit C to the Joint Dec.

The settlement, reached just a few weeks before trial and after substantial trial preparation work had been undertaken, is the culmination of years of vigorous litigation. Over the course of the litigation, Class Counsel extensively investigated the claims; briefed and prevailed on motions to dismiss, motions for class certification, Defendants' motion for summary judgment, and Defendants' motion to exclude Plaintiff's experts. Class Counsel also defended Plaintiff's deposition, took the depositions of twelve fact witnesses, including current and former Verizon employees and non-party witnesses, prepared expert reports, took or defended five expert depositions; and produced and reviewed approximately more than 300,000 pages of documents (including many voluminous, database-like spreadsheet files), including both custodial and non-custodial material from Defendants and non-party witnesses and experts. Joint Dec. ¶ 6.

Class Counsel also served several document subpoenas on non-party witnesses, received numerous documents in response to those subpoenas, deposed two non-party witnesses, and prosecuted a subpoena enforcement action against a non-party who steadfastly refused to produce

documents. That subpoena enforcement action was filed in the District of Columbia, transferred to this Court, consolidated with this case and culminated in a contested hearing in front of Magistrate Judge Lehrburger, after which Judge Lehrburger ordered the non-party to produce numerous documents. *See Jacobs v. Verizon Communications, Inc., et al.*, (S.D.N.Y.) 2018-md-537. Joint Dec. ¶ 7.

At the time the Settlement was reached, significant amounts of trial preparation work had been completed – including identifying joint, Plaintiff and Defendant trial exhibits (which together included more than 1,500 exhibits), compiling deposition designations, drafting witness examinations, and work on opening arguments and demonstrative exhibits was well underway. Joint Dec. ¶ 8.

The settlement negotiations in this action were also hard-fought. Informal negotiations started as early as June 2018 when the parties met in person to discuss a possible settlement. From time to time thereafter, the parties participated in additional settlement discussions that were not successful. On June 1 and 2, 2023, just 38 days before the scheduled start of trial in this matter, the parties participated in a two-day formal mediation session in San Diego, California, before experienced mediator Hunter Hughes. At the mediation, the Settling Parties reached an agreement in principle to settle all claims in the action. Joint Dec. ¶ 9. Since that time, Class Counsel obtained preliminary approval of the settlement. They have also spent numerous hours communicating with potential class members and collecting and reviewing data for hundreds of thousands of the Plan's participants and working with the Plan's third-party recordkeeper and the settlement administrator to identify class members and ensure class members received notice of the settlement, ultimately providing notice to over 180,000 individuals. Joint Dec. at ¶ 10.

## 2.    The Litigation was of Great Magnitude and Extremely Complex

The prosecution of this action has required a high level of experience and expertise in a very complex class action litigation. *Cf. Fleisher v. Phoenix Life Ins. Co.,* No. 11-cv-8405 CM, 2015 WL 10847814, at *20 (S.D.N.Y. Sept. 9, 2015) (approving fee where, *inter alia*, "These complex claims were bitterly fought, as Defendants developed defenses to liability, damages, and class certification, and offered their own expert opinions on actuaries issues for key questions …"). Plaintiff's claims raised numerous complex legal and factual issues under ERISA, an infamously difficult statutory scheme.  This Court is well aware of the case's complexities, as illustrated in its 19-page order approving Magistrate Judge Lehrburger's 31-page Report and Recommendation granting class certification on September 29, 2020, ECF Doc. Nos.  157, 163, as well as the Court's 51-page Memordanum Opinion and Order denying Defendants' motion for summary judgment and motion to exclude Plaintiff's experts. ECF Doc. No. 217.  The complexity and expense of the case has been borne out by the time and effort that the parties and their counsel have put into litigating this matter over the past seven years. As set forth in greater detail above, the parties to this action exchanged multiple rounds of written and document discovery; produced and reviewed more than 300,000 pages of documents; took the depositions of thirteen fact witnesses; engaged in extensive expert discovery from five experts; and conducted five expert depositions. Joint Dec.. ¶ 11.

This case also involved hedge fund "fund of funds," complex financial products that are not well-understood and have been subject to little ERISA litigation. Class Counsel were required to develop substantial expertise in this esoteric field in order to prepare and litigate this case. Joint Dec. ¶ 12.

### 3.     The Risk of Litigation Was Substantial

The most significant factor in determining the reasonableness of attorneys' fees is the risk of litigation.  *Tiro v. Pub. House Invs., LLC,* No. 11-cv-7679, 2013 WL 4830949, at *13 (S.D.N.Y. Sept. 10, 2013). This factor weighs heavily in favor of the fee award requested in this case.

The risks that Class Counsel assumed in this litigation were extraordinarily high. Class Counsel has been pursuing this matter for over seven years on a contingency basis, without any assurance of being compensated for more than $6.6 million worth of legal services or recovering $550,361.80 of out-of-pocket expenses. Joint Dec. ¶¶ 4-5.

Were the litigation to continue, Plaintiff would be faced with substantial challenges on liability and damages.  There was a very real possibility of an unsuccessful outcome.  *Beckman v. KeyBank, N.A.,* 293 F.R.D. 467, 479 (S.D.N.Y. 2013) ("Contingency risk is the principal, though not exclusive, factor courts should consider in their determination of attorneys' fees.") (internal quotation and citation omitted). This litigation could have failed at numerous stages, including a reconsideration of class certification, at trial or on appeal.

As the Court pointed out in *In re Marsh*, ERISA actions are as a general matter riskier than securities fraud or antitrust matters because of the relative newness of litigation involving 401(k) plans under ERISA and the corresponding lack of precedent. 265 F.R.D. at 148 ("The unsettled nature of the law applicable to Plaintiffs' claims—especially as it existed more than five years ago when this case was filed—increases the risks for Plaintiffs' counsel."). "ERISA 401(k) fiduciary breach class actions," such as this case, "are extremely complex and require a willingness to risk significant resources in time and money, given the uncertainty of recovery and the protracted and sharply-contested nature of ERISA litigation." *Bekker v. Neuberger Berman Grp. 401(k) Plan Inv. Comm.*, 504 F. Supp. 3d 265, 269 (S.D.N.Y. 2020); *see also Kelly v. Johns Hopkins Univ.*, No.

11

1:16-cv-2835-GLR, 2020 U.S. Dist. LEXIS 14772, at *13 (D. Md. Jan. 28, 2020) (the "risk of nonpayment in this complex area of the law [ERISA] is tremendous").

Underscoring the risks inherent in ERISA fiduciary breach cases, two recent, high-profile trials in ERISA fiduciary breach cases in this circuit both resulted in defense verdicts. *Vellali, et al., v. Yale Univ., et al.*, No. 16-cv-1345 (June 28, 2023 D. Conn.); *Sacerdote v. N.Y. Univ.*, 328 F. Supp. 3d 273, 279 (S.D.N.Y. 2018).  Trial in this matter could have yielded a similar result.  And, compounding the particular risks in this matter, no other recent ERISA cases have gone to trial or resulted in appellate opinions regarding hedge funds as plan investment options.

### 4.    Counsel for Both Parties are Highly Competent and Qualified

As set forth in the accompanying declarations, Class Counsel collectively have enormous experience in ERISA and other complex federal litigation. *See* Joint Dec. Ex. A at ¶¶ 5-7 (and Exhibit A thereto), Ex. B at ¶ 3 (and Exhibit A thereto), and Ex. C at ¶ 2. Relatively few attorneys would have been qualified to litigate this matter to a successful conclusion. *See In re Marsh*, 265 F.R.D. at 148 ("Lead Counsel are national leaders in this type of litigation."). Fewer still would have the commitment and resources to persevere in this long-standing litigation. *See Wright v. Stern,* 553 F. Supp. 2d 337, 347 (S.D.N.Y. 2008) (approving fee given "the quality of the representation provided by class counsel and the depth of their commitment").

Another consideration for assessing the quality of the representation is "[t]he quality of opposing counsel" in the case. *Maley v. Del Glob. Techs. Corp.,* 186 F. Supp. 2d 358, 373 (S.D.N.Y. 2002); *see also Meredith Corp. v. SESAC, LLC,* 87 F. Supp. 3d 650, 670 (S.D.N.Y. 2015) (noting that counsel's achievement in "obtaining valuable recompense . . . for its clients is particularly noteworthy given the caliber and vigor of its adversaries")). Defendants' counsel, first at DLA Piper and then at Nixon Peabody, are among the largest law firms in the world and both

have leading ERISA and litigation practices. Class Counsel's achievement in obtaining a substantial settlement cannot be understated given the caliber of defense counsel in this action. *See In re Marsh*, 265 F.R.D. at 149 (where defense counsel was "an unquestioned national leader in ERISA fiduciary breach litigation," the "ability of Class Counsel to obtain a favorable settlement for the Class in the face of such formidable opposition confirms the quality of their representation of the Class.").

     **5.**    **The Requested Attorneys' Fee is Reasonable Compared to the Substantial Benefits the Settlement Confers on the Class**

As discussed above, the amount of the requested attorneys' fee compares favorably to the total settlement amount. *See* Part II.A above. The percentage of the settlement fund sought by Class Counsel is squarely within the mainstream of ERISA cases, large employment matters, and other class actions in this Court. Also, as stated above, the $30 million settlement in this case would have been among the five largest ERISA settlements in claims brought by private plaintiffs in 2020 or 2021. Joint Dec. ¶ 27.

To date, the Class also appears to agree with the terms of the settlement. The Settlement Administrator sent notice to 185,392 class members as of September 20, 2023, and to date no objections have been received. Joint Dec. at ¶ 13. The fact that no plan participants to date have objected to the settlement, or to the fee and expense request, which was detailed in the Settlement Notice as one-third of the settlement fund plus expenses, is evidence that the fee request is reasonable and appropriate. Joint Dec. at ¶ 13. The lack of objections "'may itself be taken as evidencing the fairness of a settlement.'" *RMED Int'l Inc. v. Sloan's Supermarkets, Inc.*, No. 94 Civ. 5587, 2003 WL 21136726, at *1 (S.D.N.Y., May 15, 2003), *quoting Ross v. A.H. Robins*, 700 F.Supp. 682, 684 (S.D.N.Y. 1988). *See also In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 2015 WL 6971424, at *4 ("It is well settled that the reaction of the class to the settlement is perhaps

the most significant factor to be weighed in considering its adequacy.") (citations omitted); *Strougo v. Bassini*, 258 F. Supp. 2d 254, 257 (S.D.N.Y. 2003) (absent a substantial number of objectors or "evidence of fraud or overreaching, courts have consistently refused to act as Monday morning quarterbacks in evaluating the judgment of counsel.") (citations omitted).

Finally, the Settlement substantially benefits the Class by providing for monetary compensation much sooner than the alternative path through trial and appeal, which is very protracted, expensive, and would result in delayed compensation and substantially greater expense for the Class. Joint Dec. ¶ 14.

### 6.    Public Policy Considerations Favor the Attorneys' Fee Request

Public policy considerations weigh in favor of granting the requested fees. When "awarding attorneys' fees in common fund cases 'the Second Circuit and courts in this district . . . also have taken into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation.'" *In re J.P. Morgan Stable Value Fund ERISA Litig.*, No. 12-2548-VSB, 2019 WL 4734396, at *3 (S.D.N.Y. Sept. 23, 2019) (internal citation omitted). Attorneys' fees should "reflect the important public policy goal of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest." *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 352 (S.D.N.Y. 2014). "[S]etting fees too low or randomly will create poor incentives to bringing large class action cases." *Id.* Fee awards "should also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future alleged misconduct of a similar nature." *Shapiro v. JPMorgan Chase & Co.,* No. 11-cv-7961 CM, 2014 WL 1224666, at *18 (S.D.N.Y. Mar. 24, 2014).

This is especially true of ERISA class actions. As the court recognized in *In re Marsh*, "Congress passed ERISA to promote the important goals of protecting and preserving the retirement savings of American workers" and "[t]he ERISA statute specifically encourages private enforcement." 265 F.R.D. at 149-50. *See also Fastener Dimensions, Inc. v. Mass Mutual Life Ins. Co.*, Nos. 12-cv-8919 (DLC), 13-cv-4782 (DLC), 2014 WL 5455473, at *9 (S.D.N.Y. Oct. 28, 2014) ("[T]he protection of retirement funds is a great public interest" and "private attorneys general have a major role to play in ERISA litigation.")

## C.    The Lodestar Cross-Check Confirms the Reasonableness of the Requested Fee

Plaintiff's fee request is also reasonable when compared to the lodestar calculation. The lodestar method has "fallen out of favor particularly because it encourages bill-padding and discourages early settlements," and thus it "works best as a sanity check to ensure that an otherwise reasonable percentage fee would not lead to a windfall," for example, if the multiplier is too large and "grossly disproportionate to the percentage fee award . . . ." *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d at 353 (approving lodestar multiplier of 5). There is no windfall here.

Here, the multiplier of 1.499 is at the lower end of the range of multipliers found reasonable by federal courts. In a thorough review of the academic literature compiling data about attorneys' fee awards, the Court in *In re Colgate-Palmolive Co.* noted that the mean lodestar multiplier in ERISA cases was 2.1, with a standard deviation of 1.6. 36 F. Supp. 3d at 353.[3] Thus, the multiplier

---

[3]      In that case, this Court awarded attorneys' fee of only 25 percent of the $45.9 million settlement fund in an ERISA class action where class counsel faced much less risk than Class Counsel here faced. As the court reasoned, because little discovery had taken place before settlement and defendants had withdrawn their motion to dismiss as the parties engaged in mediation, "Class Counsel did not take on the high risk that they would work a large numbers of hours only to see little or no recovery." *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d at 351. More importantly, the 25 percent fee award represented a lodestar multiplier of *five*. *Id.* at 353. Here, Class Counsel seek a far lower lodestar multiplier, and the settlement in this case was

sought by Class Counsel is substantially smaller than the median in ERISA actions, despite the unusual risks and favorable results in this action. When applying a lodestar as a cross-check, courts routinely approve fee awards from two to six times the lodestar. *See, e.g., Fleisher*, 2015 WL 10847814, at *18 ("Courts regularly award lodestar multipliers from two to six times lodestar in this Circuit, and have been known to award lodestar multipliers significantly greater than the 4.87 multiplier sought here.") (citations omitted); *Sewell v. Bovis Lend Lease, Inc.,* No. 09-cv-6548 RLE, 2012 WL 1320124, at *14 (S.D.N.Y. Apr. 16, 2012) (noting that courts commonly award lodestar multipliers from two to six, and approving a multiplier of three).

Indeed, the requested fee award overstates the multiplier Class Counsel will obtain, as they will be required to devote additional hours over the next few months to implement the settlement. Joint Dec. ¶ 15. *See deMunecas*, 2010 WL 3322580, at *10 ("The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward also supports their fee request.").

As set forth in the attached declarations of Class Counsel and the supporting exhibits, Class Counsel have devoted more than 7,200 hours to prosecute this litigation. (This is *after* counsel decreased their hours in the exercise of billing judgment and excluded time spent working on this

---

reached after the close of years of discovery, after Defendants' summary judgment motion and motion to exclude Plaintiff's experts had been denied, and less than six weeks before trial.

motion.)[4]  Calculated quite conservatively, the lodestar value of Class Counsel's time in these cases to date exceeds $6.6 million.[5]

The hourly rates sought by Class Counsel are also reasonable, as set forth in the Declarations of Class Counsel annexed to the Joint Declaration. *See* Joint Dec. Ex. A at ¶¶ 8-17, and Ex. B at ¶¶ 11-12 (describing market rates for ERISA and other complex cases). In sum, Class Counsel's request is consistent with fee awards in ERISA matters in this district and nationwide, as well as fee awards in similar matters in this district. It is also reasonable when evaluated by the *Goldberger* factors and the lodestar cross-check. Thus, the Court should approve an attorneys' fee award of $10 million.

## III.   CLASS COUNSEL ARE ENTITLED TO REIMBURSEMENT OF THEIR LITIGATION EXPENSES

Plaintiff seeks reimbursement of $550,361.80 of litigation expenses. "It is well established that counsel who create a common fund are entitled to the reimbursement of expenses that they advance to a class." *In re Giant Interactive Group, Inc.,* 279 F.R.D. 151, 165 (S.D.N.Y. 2011). *See also In re Colgate-Palmolive Co. ERISA Litig.,* 36 F. Supp. 3d at 354; *Pu v. Russell Publ'g Group, Ltd.*, No. 15-cv-3936 VSB, 2017 WL 4402544, at *3 (S.D.N.Y. Sept. 30, 2017) ("Attorneys' fees

---

[4]     As the lodestar calculation is used only as a cross-check, and given the extraordinary volume of individual billing entries generated by three law firms working on this litigation for seven years, billing detail has not been provided but will be provided at the Court's request  *See In re Tremont Securities Law, State Law and Insurance Litig.*, 08 Civ. 112117 (CM)(GWG), 2019 WL 516148 (S.D.N.Y. Feb. 11, 2019) ("[W]here a lodestar is acting as a 'cross-check' to determine the appropriateness of a percentage fee award, 'the hours documented by counsel need not be exhaustively scrutinized by the district court.'"), *quoting Goldberger*, 209 F.3d at 50; *Grice v. Pepsi Beverages Co.*, 363 F. Supp. 3d 401 (S.D.N.Y. 2019) (accepting counsels' representations about hours worked without timesheets where the lodestar was used only as a cross-check).

[5]     Current hourly rates were used for class counsel in determining lodestar value for crosscheck, as is customary for this Court.  *See Fleisher*, 2015 WL 10847814, at *18 ("This lodestar is calculated at current hourly rates, which has been endorsed repeatedly by the Supreme Court, the Second Circuit and district courts within the Second Circuit as a means of accounting for the delay in payment inherent in class actions and for inflation.")

awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients."). As set forth in the declarations of Class Counsel, the litigation expenses incurred and paid in this case by each firm were reasonable and of the type normally charged to clients apart from attorneys' fees. *See* Joint Dec. Ex. A at ¶¶ 18-19, Ex. B at ¶ 14, and Ex. C at ¶¶ 7-8. Class Counsel have closely reviewed their costs and eliminated those that are even arguably inappropriate or excessive.

The total amount of litigation fees is exceedingly reasonable as compared to the settlement amount. As the Court noted in *In re: Libor-Based Financial Instruments Antitrust Litig.*, 2018 WL 3863445, *1 (S.D.N.Y. Aug. 14, 2018), litigation expenses are typically two to three percent of the settlement fund. Here, the total litigation expenses are less than two percent of the fund. This low percentage is especially reasonable "given the complexities of this case and the necessity of extensive expert involvement." *Id.* (awarding costs of six percent of the settlement fund).

Costs were incurred and paid in the following categories. Detailed descriptions of each cost item and receipts are available at the Court's request, although the relatively small amount of the costs as compared to the total recovery should render such detailed scrutiny unnecessary.

| CATEGORY | Glancy Prongay | Edgar Law Firm | Schneider Wallace | Total by Category |
|---|---|---|---|---|
| Direct and indirect court costs – filing fees, service fees, and courier fees for court filings | 165.36 | 1,010.28 | 3,400.14 | **$ 4,575.78** |
| Transcripts of court hearings & Depositions (including video) | 16,059.79 | 15,036.59 | 19,111.12 | **$ 50,207.50** |
| Travel, including associated meals and lodging | 4,928.70 | 24,674.02 | 66,932.17 | **$ 96,534.89** |
| Experts & Consultants | 79,269.94 | 53,659.16 | 103,131.31 | **$ 236,060.41** |
| Electronic document hosting and processing | 1,954.76 | 1,345.04 | 118,205.10 | **$ 121,504.90** |
| Research – Westlaw, Lexis, and Pacer & Publications and reference materials | 3,408.64 | 205.30 | 8,046.36 | **$ 11,660.30** |
| Printing and copying – inhouse and external & Postage and other (not to court) courier fees | 3,829.47 | 206.26 | 5,589.62 | **$ 9,625.35** |
| Mediation services | 10,000.00 | | 10,000.00 | **$ 20,000.00** |

18

| | | | | |
|---|---|---|---|---|
| Estimated future costs | | | | **$ 0.00** |
| Miscellaneous | 99.59 | 13.08 | 80.00 | **$ 192.67** |
| **Total by Firm** | **$ 119,716.25** | **$ 96,149.73** | **$ 334,495.82** | **Grand Total:**<br>**$ 550,361.80** |

*See* Joint Dec. Ex. A at ¶¶ 18-19 (and Exhibit C thereto), Ex. B at ¶ 14 (and Exhibit C thereto), and Ex. C at ¶ 7-8.

## IV.   THE CLASS REPRESENTATIVE IS ENTITLED TO A SERVICE PAYMENT IN THE AMOUNTS REQUESTED

Pursuant to the Settlement, Class Representative Melina Jacobs seeks a service award of $30,000.

Service payments of this type are commonly awarded to named plaintiffs who actively assist in prosecuting a class case. Here, Plaintiff Jacobs has, from the very beginning of the case, expended considerable time, effort, and resources on behalf of the Class. She also incurred significant risk in lending her name to the action, revealing her private financial information, and consulting with Class Counsel for the benefit of their fellow Class Members throughout the litigation and was on standby for the trial. Joint Dec. ¶ 21. The investigation that gave rise to the complaint in this matter was conducted by Class Counsel as a result of concerns identified by the Plaintiff herself. Joint Dec. ¶ 22. Without the efforts of Ms. Jacobs, the settlement could not have been achieved.

### A.   Courts Routinely Award Service Payments to Representative Plaintiffs Who Provide Substantial Assistance, Especially in Employment Cases

"Service awards, also called enhancement or incentive awards, are common in class actions." *Mills v. Capital One, N.A.,* No. 14-cv-1937 HBP, 2015 WL 5730008, at *17 (S.D.N.Y. Sept. 30, 2015). Such payments "serve the dual functions of recognizing the risks incurred by named plaintiffs and compensating them for their additional efforts." *Id.*, at *17; *see also Masters*

*v. Wilhelmina Model Agency, Inc.,* 473 F.3d 423, 430 (2d Cir. 2007) (upholding incentive awards, including $25,000 for each of two named plaintiffs who were deposed because they "were related to the individual's personal risk and additional efforts to benefit the lawsuit").

As courts within this Circuit have noted, plaintiffs in employment class actions, including ERISA cases, are particularly deserving of incentive awards:

> …[T]he plaintiff is frequently a present or past employee whose present position or employment credentials or recommendation may be at risk by reason of having prosecuted the suit, who therefore lends his or her name and efforts to the prosecution of litigation at some personal peril.

*Roberts v. Texaco, Inc.,* 979 F. Supp. 185, 201 (S.D.N.Y. 1997).

Under this precedent, the requested award is more than justified. Plaintiff devoted substantial time and effort to the prosecution of this case. She stepped forward on behalf of their fellow plan participants to prosecute this suit. Joint Dec. ¶ 23. Plaintiff produced over 1,400 pages of documents to Class Counsel and in turn to Defendants. In addition, with the assistance of counsel, she responded to Defendants' interrogatory requests. Plaintiff spent time with Class Counsel preparing for her deposition, traveling to and from the locations where her deposition was held, and answering Defendants' counsel's questions. Plaintiff's deposition was conducted on a weekday, resulting in her having to take time off from work for preparation and the deposition itself. Plaintiff also had to ask her employer for more than a week off of work to prepare for and attend trial. Joint Dec. ¶ 24. During the course of the litigation, there have been dozens of emails, letters and telephone calls between Class Counsel and Ms. Jacobs and numerous meetings, requesting information, requesting that she review copies of the complaint, providing various updates with copies of the Court's orders including its class certification and summary judgment, requesting verification of her responses to interrogatories, participating in negotiation of the

Settlement, and keeping her informed about the status of the case generally and the Court's consideration and approval of the Settlement. Joint Dec. ¶ 25.

The service payment sought is necessary, not only to recognize the significant role the plaintiff played in the prosecution of this matter, but also to encourage similar individuals to play an active role in the private enforcement of public rights.

**B.    The Proposed Awards are Reasonable and Appropriate in Proportion to the Class Fund as Well as to the Individual Settlement Benefits to the Class Members**

The requested award represents 0.1% of the settlement and is reasonable under the facts of this case. *Reyes v. Altamarea Grp., LLC,* No. 10-cv-6451 RLE, 2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011) (approving three service awards totaling $50,000 of $300,000 settlement, or 16.67%); *Matheson v. T-Bone Rest., LLC,* No. 09-cv-4214 DAB, 2011 WL 6268216, at *9 (S.D.N.Y. Dec. 13, 2011) (awarding $45,000 from $495,000 fund, or 9.1%, with total awards equaling 10.1%).

Furthermore, the $30,000 amount for the service award sought here is well within or below the general range of awards approved as reasonable. *See, e.g., Wright,* 553 F. Supp. 2d at 345 (awarding $50,000 to each of eleven named plaintiffs in employment discrimination class action); *Matheson v. T-Bone Rest., LLC,* No. 09-cv-4214 DAB, 2011 WL 6268216, at *9 (S.D.N.Y. Dec. 13, 2011) (approving $45,000 award from $495,000 fund).

Service awards in ERISA class settlements are similar, including *Amara v. Cigna Corp.*, 2018 U.S. Dist. LEXIS 202717 (D. Conn. Nov. 29, 2018) (approving $50,000 incentive awards for the named plaintiffs and collecting authorities); *Spano v. Boeing Co.*, Case No. 06-cv-743, 2016 U.S. Dist. LEXIS 161078 (S.D. Ill. Mar. 31, 2016) (awarding $25,000 to three of five class representatives from $57 million fund); *Abbott v. Lockheed Martin Corp.,* No. 06-cv-701 MJR-

DGW, 2015 WL 4398475, at *4 (S.D. Ill. July 17, 2015) (awarding $25,000 to each of the six class representatives from $62 million fund).

Finally, the Court-approved Notice advised Class Members of the proposed service award, and to date there have been no objections to the award. Joint Dec. ¶ 26.

## V.      CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that, pursuant to the Settlement Agreement, the Court should award Class Counsel $10 million in attorneys' fees and $550,361.80 in litigation expenses. The Court should also award Class Representative Melina Jacobs $30,000 as a service award.

Dated: October 19, 2023                           Respectfully submitted,

**SCHNEIDER WALLACE
COTTRELL KONECKY LLP**

By: */s/ James A. Bloom*
James A. Bloom (*pro hac vice*)
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
jbloom@schneiderwallace.com

Jason H. Kim (*pro hac vice*)
300 S. Grand Avenue, Suite 2700
Los Angeles, California 90071
Telephone: (415) 421-7100
jkim@schneiderwallace.com

**GLANCY PRONGAY & MURRAY LLP**

By: */s/ Daniella Quitt*
Daniella Quitt
Greg Linkh
745 Fifth Avenue, 5th Fl
New York, New York 10151
Telephone: (212) 935-7400
dquitt@glancylaw.com

John F. Edgar (pro hac vice)
**EDGAR LAW FIRM LLC**
1032 Pennsylvania Avenue
Kansas City, Missouri 64105
Telephone: (816) 531-0033
jfe@edgarlawfirm.com

*Counsel for Plaintiff*